FILED

Jan 6    : AM '04

U.S.

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------x

BRIAN CLARK,
    Plaintiff,

v.

VERMONT PURE HOLDINGS, LTD., ET AL.
    Defendants.

-------------------------------------x

CIVIL ACTION NO.
3:02 CV 2278 (MRK)

JANUARY 2, 2004

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Brian Clark files this memorandum in opposition to defendants' Motion to Dismiss dated October 9, 2003.

## I.    INTRODUCTION

Plaintiff brings this action, *inter alia*, to redress violations of ERISA committed by his former employer, Vermont Pure Holdings, Ltd. d/b/a Crystal Rock Bottled Water and Vermont Pure and Crystal Rock Spring Water Company, in administering and terminating the company's Long Term Disability [LTD] Plan, terminating plaintiff's employment and failing to pay plaintiff severance benefits under the company's Severance Plan.[1]  Plaintiff's Amended Complaint

---

[1] Plaintiff, who is over the age of 40 and has been diagnosed with Parkinson's disease, also seeks redress against defendants for disability and/or age discrimination, retaliation and wrongful discharge in violation of the Age Discrimination in Employment Act [ADEA], 29 U.S.C. §621 *et seq.*, the Americans with Disabilities Act [ADA], 42 U.S.C. §12101 *et seq.*, and Connecticut's Fair Employment Practices Act [CFEPA], C.G.S. §46a-51 *et seq.* and for compelled self-defamation under the common law of the State of Connecticut.  Defendants have not moved to dismiss these claims.

contains six claims for relief under the Employee Retirement Income Security Act [ERISA], 29

U.S.C. §1001 *et seq.*: 1) breach of fiduciary duties under 29 U.S.C. §1104 *et seq.*, 2)

administration and/or termination of defendants' LTD Plan in violation of ERISA's technical

requirements, 3) promissory estoppel, 4) termination of plaintiff's employment in violation of 29

U.S.C. §1140, 5) failure to pay severance benefits under defendants' Severance Plan, and 6)

refusal to provide plaintiff with requested documents concerning the LTD Plan in violation of 29

U.S.C. §§1022, 1024 and 1132.

Defendants move, pursuant to F.R.C.P. §12(b)(6), to dismiss all ERISA claims in

plaintiff's Amended Complaint for purported failure to state a claim. As set forth below, the

ERISA claims are viable and, therefore, defendants' motion to dismiss under Rule 12(b)(6) must

be denied.

## II.    FACTUAL BACKGROUND[2]

Plaintiff became a full-time employee of defendant Crystal Rock Spring Water Company

[Crystal Rock] in 1973. See Amended Complaint at ¶14. In October 2000, Crystal Rock merged

with Vermont Pure to become defendant Vermont Pure Holdings, Ltd. [Vermont Pure Holdings].

See id. at ¶¶14, 32. Defendants Vermont Pure Holdings and/or Crystal Rock are sponsors for and

administrators of employee benefit plans including the Crystal Rock LTD Plan and the Crystal

Rock Severance Plan and as such are fiduciaries under 29 U.S.C. §1002. See id. at ¶12.

In 1985, Crystal Rock announced to its employees, including plaintiff, that it had

---

[2] Although the court is required to "accept the material facts alleged in the complaint as
true" in deciding a motion to dismiss under Rule 12(b)(6) [Staron v. McDonald's Corp., 51 F.3d
353, 355 (2d Cir. 1995) (citation and quotations omitted)], defendants repeatedly misstate and/or
mischaracterize the factual allegations in plaintiff's complaint, as set forth herein.

2

instituted a company-funded LTD Plan. See id. at ¶ 15. The announcement stated that the Plan

would provide income in the amount of 60% of salary to a maximum of $5,000 per month in the

event an employee became disabled from work. See id. at ¶15. See also Ex. 1, attached hereto

(LTD coverage announcement referenced in plaintiff's complaint).[3]  Crystal Rock did not inform

the employees that it could modify or terminate the LTD Plan if it chose to do so; nor did Crystal

Rock establish whether or under what circumstances it could modify or terminate the LTD Plan.

See Amended Complaint at ¶16.[4]

---

[3]  Consideration of documents attached to the complaint or incorporated by reference is proper in ruling on a motion to dismiss and does not convert the motion to one for summary judgment. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

[4]  In connection with their motion, defendants attach and refer to two documents with effective dates of September 1, 1991, identifying them as the "LTD Plan" documents referenced in plaintiff's Amended Complaint – 1) a document that appears to be a Paul Revere Life Insurance Company LTD policy with Crystal Rock covering the "Officers and Controller" and "All Other Employees" and 2) a document that appears to be a Benefit Summary for the "Officers and Controller" only.  As set forth in plaintiff's Motion to Strike submitted herewith, plaintiff moves to strike these documents pursuant to F.R.C.P. §12(f) because, contrary to defendants representation, they are not the LTD Plan referenced in the Amended Complaint and were not in plaintiff's "possession" or "relied on" by plaintiff "in bringing the suit."  The two documents were *not even in effect* at the time the LTD Plan referenced in the complaint was adopted in 1985. See Def.Mem., Ex. C at JL0012; Ex. D at JL 0055.  Under these circumstances, the documents do not constitute the Plan. See Feifer v. Prudential Life Insurance Company of America, 306 F.3d 1202, 1208-10 (2d Cir. 2002) (treating program summary distributed to employees as the "plan" under ERISA because it was the only written document that *existed* describing the employee benefits at the time).  Furthermore, Exhibit D, the Benefit Summary, on its face does not apply to plaintiff who was not an Officer or Controller of the company. See Ex. D at JL0055-56.  Also, contrary to defendants' claim, the Paul Revere policy does *not* provide that Crystal Rock had the right to terminate the LTD Plan covering its employees at any time. Rather, the 1991 policy appears to be a contract of insurance between Paul Revere Life Insurance Company and Crystal Rock that provides only that Crystal Rock may cancel the contract with Paul Revere at any time. See Ex. C at JL0048.  The policy does not provide that Crystal Rock may cancel the LTD Plan for its employees at any time.
       Despite the fact that plaintiff requested the LTD Plan documents while he was still employed by defendants and brought a claim for penalties to be imposed under ERISA in this action for failure to provide the Plan documents, defendants have never provided plaintiff with

3

In 1995, plaintiff purchased an individual LTD policy to supplement his coverage under the Crystal Rock LTD Plan. See id. at ¶17. Plaintiff bought supplemental coverage only, rather than full coverage, because he relied on the information Crystal Rock provided which led him to believe that his coverage under the Crystal Rock LTD Plan would not be terminated. See id. at ¶¶17, 29.

In December 1999, plaintiff was diagnosed with Parkinson's disease and immediately informed defendants of his diagnosis. See id. at ¶19.

In May 2000, Crystal Rock announced that it would be merging with Vermont Pure. See id. at ¶21.

In or about July 2000, plaintiff, who had recently transferred from Sales Manager to HR Manager,[5] inadvertently learned that the LTD Plan had been terminated when his predecessor in the HR position informed him that he did not need to have new employees fill out the enrollment form because the LTD Plan had been terminated. See id. at ¶¶19, 23 and 24.

When plaintiff learned that Defendants had terminated the LTD Plan, he was no longer able to purchase individual LTD coverage because of his Parkinson's diagnosis. See id. at ¶28. Defendants had not and did not at any time inform the LTD Plan participants either that the company could or that it was terminating or had terminated the LTD Plan. See id. at ¶¶25-27. Defendants, plaintiff alleges, acted in bad faith – especially toward plaintiff who had been

_____

the Plan documents in response to his request. The logical implication is that defendants do not have copies of the Plan documents and/or no such documents exist.

[5] Contrary to defendants' representation that plaintiff "voluntarily transferred to the position of Human Resources Manager," plaintiff alleges that he opted to transfer to the HR position after he was advised that he was going to be replaced as Sales Manager and would likely be out of a job if he did not do so. See id. at ¶¶22-23.

4

diagnosed with a disabling disease – by concealing the fact that the company was terminating the

LTD Plan from the plan participants while the defendants were in the process of negotiating a

merger because they did not want to risk alienating the workforce. See id. at ¶¶ 25, 26 and 30.

Defendants' failure to inform the plan participants that the LTD Plan was being cancelled

deprived their employees, including plaintiff, of the ability to convert to individual coverage.

See id. at ¶¶ 25, 27 and 30.

As plaintiff alleges, defendants administered and terminated the LTD Plan in violation of

multiple requirements established for employee benefit plans under ERISA:

- The LTD Plan did not specify whether or under what circumstances the LTD coverage could be modified or terminated as required by 29 U.S.C. § 1102(b)(3).

- Defendants failed to provide a summary plan description [SPD] that clearly set forth the circumstances under which plaintiff could be denied or lose benefits under the Plan [29 U.S.C. §§1021 and 1022].

- Defendants failed to make plan changes in writing [29 U.S.C. § 1102(a)(1)].

- Defendants failed to provide a summary of any material modifications to the LTD Plan [29 U.S.C. § 1022(a)].

- Defendants terminated the Plan without following the amendment procedures, if any, that were provided in the Plan [29 U.S.C. § 1102(b)(3)].

- Defendants failed to notify plan participants of a material reduction in benefits [29 U.S.C. § 1024(1)(B)].

- Defendants modified and/or terminated the LTD Plan without authority under the terms of the Plan [29 U.S.C. § 1102(a)(1)].

See id., Second Claim for Relief, ¶64.

After learning of plaintiff's Parkinson's diagnosis, management increasingly expressed

dissatisfaction with plaintiff and indicated in various ways that they wanted him to leave the

5

company. See id. at ¶¶33-46. In or about November 2001, Peter Baker, defendants' President, suggested that the company might be able "to make his dreams come true" if he would retire. See id. at ¶¶38-39. Plaintiff informed Baker that he did not want to retire. See id. at ¶41. In January 2002, however, when plaintiff became unable to withstand the hostile treatment he was experiencing, he told Baker that he would consider leaving because Baker did not want him there but that he needed to know what severance terms Baker was offering to "make [his] dreams come true." See id. at ¶47. Baker informed plaintiff that he was proposing to give him the company's standard severance of one week of salary for each year of service and help with obtaining private medical insurance. See id. at ¶¶48-49. Plaintiff responded that defendants' offer of standard severance was unfair because defendants, not he, wanted him to retire at that time. See id. at ¶50.

Plaintiff did not accept defendants' offer and, when the hostile treatment continued, he wrote on August 2, 2002, through his attorney, to Peter Baker to express his concerns, *inter alia*, that he was being subjected to age and disability discrimination in violation of ADEA and ADA and that the LTD Plan had been cancelled in violation of ERISA. See id. at ¶51. See also Ex. 2 (August 2, 2002 letter referenced in complaint). On September 6, 2002, plaintiff's attorney wrote to defendants' attorney to request copies of the SPDs and notices concerning modification and/or termination of the LTD Plan. See Amended Complaint at ¶53. See also Ex. 3 (September 6, 2002 letter referenced in complaint). On September 19, 2002, defendants' attorney wrote to plaintiff's attorney terminating plaintiff's employment. See id. at ¶54. In the letter, defendants stated that plaintiff was being terminated because he had "falsely claimed discrimination in an effort to coerce increased compensation and/or severance benefits." Ex. 4 (September 19, 2002

6

letter referenced in complaint). Defendants also responded to plaintiff's September 6, 2002 request to be provided with LTD Plan documents, stating that because plaintiff was, according to the letter, a "fiduciary" under ERISA, defendants were purportedly not obligated to give him the information he had requested. See Amended Complaint at ¶¶55; Ex. 4.

After plaintiff received the September 19, 2002 letter, Peter Baker spoke with plaintiff and informed him that he could continue working for Crystal Rock, even though he had ostensibly been terminated for cause, if he would rescind the August 2, 2002 letter in which he had complained about defendants' violations of ERISA, ADA and ADEA. See Amended Complaint at ¶56. Plaintiff informed defendants that he would not rescind the letter because it accurately reflected his perception of defendants' actions and treatment of him and, therefore, his employment was terminated effective the end of September 2002. See id. at ¶¶57-58.[6]

Despite the fact that all terminated management employees, even those terminated for cause, had been paid severance in an amount equal to at least one week of salary for each year of service pursuant to defendants' Severance Plan, defendants did not pay plaintiff the severance benefits that were due him under the Severance Plan when they terminated his employment. See id. at ¶¶ 49 and 60.

---

[6] Defendants' representations in the memorandum in support of their motion to dismiss that plaintiff was terminated "for cause" are improper and spurious. Plaintiff does not allege in his Amended Complaint that he was terminated for cause. Plaintiff alleges that he was terminated in retaliation for complaining about defendants' wrongful conduct, including their violations of ERISA, the Americans with Disabilities Act, the Age Discrimination in Employment Act and the Connecticut Fair Employment Practices Act. See Amended Complaint at ¶¶51-52, 54, 56-59 and Fourth, Seventh, Eighth, Ninth and Tenth Claims for Relief. Plaintiff vehemently disputes defendants' suggestion in their memorandum that he was terminated for performance problems. See Amended Complaint generally.

## III.   ARGUMENT

### A.   STANDARDS APPLICABLE TO THE MOTION TO DISMISS

"When deciding a motion to dismiss an action for failure to state a claim upon which

relief may be granted, the court 'must accept the material facts alleged in the complaint as true.'"

Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Staron v. McDonald's Corp., 51

F.3d 353, 355 (2d Cir. 1995)). "For the purposes of a motion to dismiss, the material allegations

of the complaint are taken as admitted . . . And, the complaint is to be liberally construed in favor

of the plaintiff." Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969) (citations omitted). The

allegations must either be sufficient to "outline the elements of the claim or to permit inferences

to be drawn that these elements exist." Vorvis v. Southern New England Telephone Co., 821 F.

Supp. 851, 853  (D. Conn. 1993). Dismissal may not be granted unless "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957);  Clay v. Martin, 509 F.2d 109, 112 (2d

Cir. 1975).

To defeat a motion to dismiss, plaintiff must only have alleged facts which, along with

allowable inferences, present a viable claim.  See Bennett v. Beiersdorf, Inc., 889 F. Supp. 46, 49

(D. Conn. 1995).

### B.   FIRST CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTIES

In the First Claim for Relief, plaintiff alleges that defendants breached their fiduciary duty

to him under 29 U.S.C. §1104 *et seq.* by modifying and/or terminating the LTD Plan without

warning or notice, modifying and/or terminating the Plan without authority under the terms of the

Plan, failing to communicate to plaintiff material facts affecting his interest which they knew or

8

should have known he did not know and which he needed to know for his protection, and failing

to meet their statutory duty to provide a summary plan description which clearly set forth the

"circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."

See Amended Complaint, First Claim for Relief.

Defendants argue that plaintiff fails to state a valid claim for breach of fiduciary duties on

the grounds that: 1) ERISA does not provide the remedy plaintiff seeks in this action; 2)

defendants' conduct is not actionable under ERISA; and 3) plaintiff has not suffered any damage

as a result of the breach. Contrary to defendants' arguments, as set forth below, plaintiff seeks

only appropriate equitable relief under ERISA. Furthermore, plaintiff's complaint sets forth a

valid claim for breach of fiduciary duties, and plaintiff suffered damages as a result of

defendants' breach.

1.    <u>Plaintiff seeks only appropriate equitable relief under ERISA.</u>

Defendants argue that plaintiff "has and seeks no essentially equitable remedy" as relief

for their breach of fiduciary duties, but rather only monetary damages, impermissible under

ERISA. Defendants' argument completely mischaracterizes the relief sought by plaintiff for

defendants' breach of fiduciary duties. Plaintiff seeks relief which is equitable in nature and

entirely appropriate under ERISA.

29 U.S.C. §1132(a)(1) authorizes suit by a plan participant, *inter alia*:

(3) . . . (A) to enjoin any act or practice which violates any provisions of this subchapter
or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress
such violations or (ii) to enforce any provisions of this subchapter under the terms of the
plan.

29 U.S.C. §1132(a)(1).

9

As set forth in the complaint, plaintiff seeks relief under 29 U.S.C. § 1132(a)(3) for defendants' failure to provide complete and clear information concerning the LTD Plan, including an order voiding the termination of and/or reinstating the LTD Plan and reinstatement of plaintiff's employment and coverage under the plan.

The relief sought by plaintiff constitutes "appropriate equitable relief" available under ERISA for breach of fiduciary duties. See, e.g., Lettrich v. J.C. Penney Company, Inc., 213 F.3d 765, 771-72 (3d Cir. 2000) (court may void a rescission of employee benefit plan for inadequate notice of change in plan to employees); Ackerman v. Warnaco, Inc., 55 F.3d 117, 125 (3d Cir. 1995) (where facts could reasonably support inference that company concealed plan amendment in order to prevent employees at plant from leaving, court concluded it would be "inappropriate to deprive plaintiffs of the remedy of voiding [the company's] rescission of the [plan]"). See also Varity Corporation v. Howe, 516 U.S. 489, 515 (1996) (remedy of reinstatement of employees in benefit plan constituted "appropriate equitable relief" under ERISA); Griggs v. E.I. DuPont De Nemours & Company, 237 F.3d 371, 385 (4th Cir. 2001) (reinstatement of employment may constitute appropriate equitable relief for breach of fiduciary duties).

In addition or alternatively, plaintiff seeks an order allowing him to exercise any individual conversion rights that existed under the LTD Plan at the time of its termination[7] – also "appropriate equitable relief" under ERISA. See Iwans v. Aetna Life Insurance Corp., 855 F.Supp. 579, 584-86 (D.Conn. 1994) (employee stated valid claim for breach of fiduciary duties where defendant employer failed to inform him of relevant information concerning conversion

---

[7] The documents attached to defendants' Motion to Dismiss, which plaintiff moves to strike, suggest that plaintiff may have had a conversion right under the policy of which plaintiff was never informed by defendants. See Def.Mem., Ex. D at JL0088.

10

rights under life insurance policy).  <u>See also</u> <u>Eddy v. Colonial Life Insurance Company of America</u>, 919 F.2d 747 (D.C. Cir. 1990) (fiduciary breached duty to employee by failing to provide complete and accurate information concerning conversion rights).[8]

> 2.  <u>Plaintiff's complaint states a valid claim for breach of fiduciary duties against defendants.</u>

Defendants present a confusing and misleading argument in support of dismissal of plaintiff's claim for breach of fiduciary duties under ERISA.  Defendants claim that: 1) they were not obligated to inform plaintiff that they had a right to amend or terminate the LTD Plan; 2) they were not acting in a fiduciary capacity when they amended or terminated the plan; and 3) because plaintiff's benefits were not vested, defendants had the right to terminate the plan.  As set forth below, these arguments misrepresent the basis for plaintiff's claim for breach of fiduciary duties and, plaintiff has, in fact, alleged a viable claim.

ERISA requires that a fiduciary:

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. §1104(a).  The Second Circuit has restated these fiduciary requirements as follows:

> A fiduciary must discharge his duties solely in the interests of the participants and beneficiaries.  He must do this for the exclusive purpose of providing benefits to them.

---

[8]  Unlike the plaintiff in <u>Sampson v. Rubin</u>, 2002 WL 31432701 (D.Mass. 2002), cited by defendants in support of their argument, plaintiff here seeks equitable relief only for defendants' breach of fiduciary duties and does not seek impermissible compensatory damages – *i.e.*, "the benefits he would have received had the [long term disability policy] not been cancelled" by defendant.  <u>Sampson</u> at *6.

11

And he must comply with the care, skill, prudence, and diligence under the circumstances then prevailing of the traditional prudent man. . . . An employer has a duty to deal fairly and honestly with its beneficiaries.

Abbruscato v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 102 (2d Cir. 2001) (citations and quotations omitted).

As set forth in the complaint, plaintiff's breach of fiduciary duties claim is based on the fact that defendants: 1) modified and/or terminated the LTD Plan without authority under the terms of the plan; 2) failed to communicate to plaintiff material facts affecting his interest which they knew or should have known he did not know and which he needed to know for his protection; and 3) failed to meet their statutory duty to provide a summary plan description which clearly set forth the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Defendants also failed to notify the plan participants, including plaintiff, concerning any conversion rights available under the policy once it had been terminated.

While "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," [Abbruscato at 96-97], an employer may not do so when it has promised vested benefits and may not materially mislead plan participants about the terms of the plan including its ability to amend or modify the plan. See id.; see also In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 57 F.3d 1255, 1263-64 (3d Cir. 1995).

Defendants' failures in this case, as set forth above, constitute a breach of fiduciary duties under ERISA. See Abbruscato at 103 (claim for breach of fiduciary duties under ERISA upheld where fiduciary promised lifetime benefits but failed to note that employer could reduce or terminate the benefits at any time . . . "[w]hen a plan administrator . . . fails to provide

12

information when it knows that its failure to do so might cause harm, the plan administrator has

breached its fiduciary duty to individual plan participants and beneficiaries"); Devlin v. Empire

Blue Cross and Blue Shield, 274 F.3d 76, 88-89 (2d Cir. 2001) (also referred to as Kunkel v.

Empire Blue Cross and Blue Shield) (summary judgment reversed on breach of fiduciary claim;

employer may have violated fiduciary duties to employees by promising lifetime benefits and

then subsequently terminating benefits and, even if benefits were not vested, employer may have

violated fiduciary duties because its communications to employees failed to inform them that it

could terminate benefits at any time); Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 10 (2d

Cir. 1997) (failure to completely and accurately inform an employee of circumstances under

which death benefits can be lost constitutes an actionable breach of fiduciary duty under ERISA);

Unisys at 1264 (employees could maintain claim for breach of fiduciary duties where employer

reserved legal right to terminate plans, but misinformed or misled employees about that right by

providing "incomplete, inconsistent or contradictory disclosures"); Curcio v. John Hancock Mut.

Life Ins. Co., 33 F.3d 226, 238-39 (3d Cir. 1994) (employer who made material

misrepresentations concerning availability of accidental death coverage upon which decedent

relied in failing to purchase independent insurance coverage breached fiduciary duties under

ERISA); Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d

Cir. 1993) ("fiduciary has an obligation to convey complete and accurate information material to

the beneficiary's circumstance"; "[the duty to inform] entails not only a negative duty not to

misinform, but also an affirmative duty to inform when the [fiduciary] knows that silence may be

harmful"; failure to advise deceased plan participant's widow, even though she had not asked,

that she could obtain reimbursement for her husband's hospitalization by returning COBRA

13

election form after her husband's death may constitute actionable breach of fiduciary duty under

ERISA).  See also Iwans v. Aetna Life Insurance Corp., 855 F.Supp. 579, 585-87 (D.Conn. 1994)

(employee stated valid claim for breach of fiduciary duties based on employer's failure to

correctly inform employee of conversion rights under policy); Eddy v. Colonial Life Insurance

Company of America, 919 F.2d 747, 752 (D.C. Cir. 1990) (fiduciary "bore [] duty under ERISA

to convey to [plaintiff] complete and correct material information as to his status and his

conversion options" under health insurance policy).

Furthermore, plaintiff alleges, on information and belief, that defendants terminated the

LTD Plan when Crystal Rock was negotiating to merge with Vermont Pure and did not inform

the employees either that the coverage would be or had been terminated because of its desire to

keep the workforce intact while the merger was taking place.  See Amended Complaint at ¶¶25-

26.  See also id. at ¶30 ("Defendants acted in bad faith to conceal the termination of the LTD

policy from the plan participants, especially plaintiff who had been diagnosed with a disabling

disease, because defendants were in the process of negotiating a merger and did not want to risk

alienating or losing any employees.").  Under these circumstances, where an employer materially

misleads employees as to the security of benefits in the employer's interest, but at the employees'

expense, a valid claim for breach of fiduciary duties exists.  See Varity Corporation v. Howe, 516

U.S. 489, 506 (1996).

Defendants' arguments in support of their claim that plaintiff has not stated an actionable

claim for breach of fiduciary duties are confusing and misleading.

*Obligation to inform of amendment or termination rights*

First, defendants argue that they had no fiduciary obligation to inform plaintiff of their

14

purported right to amend or terminate the LTD Plan, citing <u>Adams v. Avondale Industries</u>, 905

F.2d 943 (6th Cir. 1990) for the principle that "[a]n ERISA fiduciary is <u>not</u> obligated to disclose

to participants, via plan documents, its inherent right to amend or modify ERISA-governed

welfare benefit plans." Emphasis in original. <u>Adams</u> does not hold that a fiduciary has *no*

obligation to disclose a right to amend or terminate an employee benefit plan. Rather, the court

in <u>Adams</u> merely declined to impose the remedy of prohibiting the termination of an unwritten

severance plan based *solely* on the fact that the employer had not explicitly reserved the right to

amend the plan because the employees failed to show any "detrimental reliance" based on the

employer's failure to comply with ERISA's reporting and disclosure requirements in that case.

<u>See</u> <u>Adams</u> at 949. The court found the employer's failure to explicitly reserve the right to

amend "particularly troubling when one considers ERISA's admonition . . . that: 'Every

employee benefit plan shall . . . (3) provide a procedure for amending such plan . . .' 29 U.S.C.

§1102(b)," but indicated that failure to comply with 1102(b) *alone* would not make a plan

unamendable, making it clear that where an employee can establish "detrimental reliance," a

breach of fiduciary duties claim exists. <u>Id.</u>[9]

---

[9] Defendants also cite <u>Pocchia v. NYNEX Corp.</u>, 81 F.3d 275 (2d Cir. 1996) for the
principle that an employer has no duty to disclose a future plan termination. <u>Pocchia</u> is
inapposite to the instant case. The issue in <u>Pocchia</u> was whether the employer had a fiduciary
duty to notify a retiring employee that it had decided to implement or was considering
implementing an early retirement plan that would have been beneficial to the employee. <u>See</u>
<u>Pocchia</u> at 277. The court held only that "a fiduciary is not required to voluntarily disclose
changes in a benefit plan before they are adopted." <u>Id.</u> at 278. <u>But see</u> <u>Hudson v. General
Dynamics Corporation</u>, 118 F.Supp.2d 226, 244 (D.Conn. 2000) (declining to extend <u>Pocchia</u>
holding that employer has no affirmative duty to disclose future plan changes to circumstances
where an employee inquires about changes in benefits and employer provides materially
misleading information in response, noting that a "multitude of cases hold[] that a fiduciary can
violate its duty by remaining silent as well as by speaking"); <u>Bins v. Exxon Company U.S.A.</u>,
189 F.3d 929, 939 (9th Cir. 1999) (holding, contrary to <u>Pocchia</u>, that "once an employer-fiduciary

15

*Fiduciary functions under ERISA*

Defendants' argument that amending or terminating an ERISA plan is not a fiduciary function misconstrues the basis for plaintiff's claim for breach of fiduciary duties. Plaintiff does not disagree that amendment and modification of ERISA plans where that right is reserved by an employer are "settlor" not "fiduciary" functions and cannot serve as the basis for a breach of fiduciary duties claim. Plaintiff's claim here, however, is not based on the termination of a benefit plan under a reserved right to do so. Rather, plaintiff's claim is based on the fact that defendants did *not* reserve the right to amend or terminate the LTD Plan under ERISA, failed to notify the plan participants that the Plan could be amended or terminated in violation of ERISA's reporting and disclosure requirements, failed to notify the plan participants that the Plan had been terminated and failed to inform the plan participants of any conversion rights under the policy, all to plaintiff's detriment. These actions or failures to act constitute fiduciary functions under ERISA. See Varity, 516 U.S. at 503-505 (upholding district court decision that employer acted as fiduciary when it relayed materially misleading information about likely future of plan benefits to employees); Abbruscato, 274 F.3d at 102 (rejecting employer's argument that it was not acting in a fiduciary capacity when it communicated contents of plan to employees); Devlin (a/k/a Kunkel), 274 F.3d at 87-88 (holding that employer may have been acting in fiduciary capacity when it communicated with employees concerning contents of benefit plan); Hudson v. General Dynamics Corporation, 118 F.Supp.2d 226, 242-43 (as in Varity, plaintiffs challenged information provided about plan changes rather than substantive decision to amend plan, and,

---

seriously considers a proposal to implement a change in ERISA benefits, it has an affirmative duty to disclose information about the proposal to all plan participants and beneficiaries to whom the employer knows, or has reason to know, that the information is material.").

16

thus, claims involved fiduciary not settlor functions). See also Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 351 (5th Cir. 2003) (defendants acted in fiduciary capacity in failing to fulfill duties under ERISA including disclosure and reporting obligations), Unisys, 57 F.3d at 1261 n. 10 (stating that Unisys was acting in fiduciary capacity when it misled employees about terms of plan, noting: "Our decisions firmly establish that when a plan administrator explains benefits to its employees, it acts in a fiduciary capacity."); Curcio, 33 F.3d at 234 (employer, who was identified as plan administrator and announced new plan to employees through literature and meetings acted in fiduciary capacity under ERISA).

### Vesting of benefits

Defendants also argue that plaintiff's benefits were not vested and that they, therefore, had a right to terminate the LTD Plan. Contrary to defendants' argument, defendants did not have the right to terminate the plan in this case and are not entitled to dismissal on this basis.

As stated in Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72 (2d Cir. 1996), "[n]othing in ERISA [] forbids or prevents an employer from agreeing to vest employee welfare benefits or from waiving its ability to terminate or amend unilaterally a plan, and several of our sister circuits have held that such agreements or waivers will be enforced." Schonholz at 76. Thus, while employers are generally free under ERISA to terminate an employee welfare plan at any time, an employer may not do so when it has promised vested benefits and may not materially mislead plan participants about the terms of the plan including its ability to amend or modify the plan. See Abbruscato, 274 F.3d at 96-97; In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 57 F.3d 1255, 1263-64 (3d Cir. 1995). See also Inter-Modal Rail Employees Association v. Atchison, Topeka and Santa Fe Railway Company, 520 U.S. 510, 515-

17

16 (1997) ("An employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan."); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 82 (1995) (in finding reservation of rights clause in welfare benefit plan sufficient to comply with ERISA's requirement that every plan contain a procedure for amending the plan, Court noted: "[F]or a plan *not* to have such a procedure would risk rendering the plan forever unamendable under standard trust law principles.") (Emphasis in original).[10]

Plaintiff alleges that defendants failed to reserve the right to amend the LTD Plan in this case and, therefore, promised vested benefits to the plan participants and did not have the right to amend or terminate the plan. See Curtiss-Wright at 82. See also Feifer v. Prudential Insurance Company of America, 306 F.3d 1202, 1211 (2d Cir. 2002) (where disability benefit plan summary contains "no explicit language that either promises vested disability benefits or reserves [employer's] right to amend or revoke such benefits, benefits vest with respect to an employee "no later than the time that employee becomes disabled" or, depending on the facts, sooner).

Furthermore, plaintiff alleges that defendants failed to provide any plan documents other than the plan announcement to their employees, and the plan announcement can be reasonably interpreted as promising vested benefits. See Devlin (a/k/a Kunkel) 274 F.3d at 83, 88-89 (indicating that in the Second Circuit, where plaintiff can point to "written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] . . . benefits," summary judgment must be denied); Schonholz at 77-78 (indicating

---

[10] In Curtiss-Wright, the Supreme Court discussed the importance of compliance with ERISA's reporting and disclosure requirements in order to "enable plan beneficiaries to learn their rights and obligations at any time," including the importance of a written plan, and summary plan descriptions, and summaries of any plan amendments "written in a manner calculated to be understood by the average plan participant." Id. at 1230-31.

18

that commitment to vest need not be in "precise language denying the right to withdraw benefits" and that it is sufficient that employee can "point to written language capable of reasonably being interpreted as creating a promise"). Even assuming *arguendo* that plaintiff's benefits under the LTD Plan were not vested, plaintiff alleges that defendants made material misrepresentations concerning plaintiff's coverage under the plan on which he relied to his detriment in not obtaining independent coverage. See Devlin at 88-89 (in reversing summary judgment on breach of fiduciary duties claim, court noted that even if employer's promise did not vest benefits, employer may have violated fiduciary duties because its communications to employees failed to inform them that it could terminate benefits at any time).

As set forth above, defendants' arguments are without merit, and plaintiff has stated an actionable claim for breach of fiduciary duties.

### 3.    Plaintiff suffered damage as a result of defendants' breach.

Finally, defendants argue that plaintiff cannot establish that defendants' breach of fiduciary duties caused him damages in this case because the LTD Plan at issue only pays benefits to participants who are disabled and plaintiff has not alleged that he is disabled. Defendants' argument, once again, misrepresents the basis for plaintiff's claim and the relief plaintiff seeks for defendants' breach of fiduciary duties.

As set forth above, plaintiff claims that defendants did not reserve the right to amend or terminate the LTD Plan and failed to notify the plan participants that the plan could be amended or terminated, that the plan had been terminated, and concerning any conversion rights employees had under the policy once it had been terminated. The materially misleading information defendants provided (or the information defendants failed to provide) caused

19

plaintiff to rely to his detriment on the coverage and led to his not purchasing adequate

independent LTD insurance coverage. As a result, plaintiff is now left without and unable to

purchase adequate LTD coverage. <u>See</u> Amended Complaint at ¶28. Thus, plaintiff's damage is

that he has a progressively disabling health condition but, because of defendants' material

misrepresentations, lacks adequate LTD insurance coverage. To remedy this damage, plaintiff

seeks equitable relief including an order voiding the termination of and/or reinstating the LTD

Plan, plaintiff's employment and plaintiff's coverage under the plan.

     As set forth above, plaintiff has alleged causation and damages. The fact that plaintiff has

not alleged that he was or is currently disabled is irrelevant to his claim and does not provide a

basis for dismissal.

     In sum, defendants' arguments that plaintiff has failed to state a valid claim for breach of

fiduciary duties are without merit and their motion to dismiss the claim must be denied.

## C.     SECOND CLAIM FOR RELIEF – TECHNICAL VIOLATIONS OF ERISA

     In the Second Claim for Relief, plaintiff alleges numerous technical violations of ERISA

by defendants including that they: 1) failed to provide a summary plan description of the LTD

Plan to the participants which clearly set forth the "circumstances which may result in

disqualification, ineligibility, or denial or loss of benefits" in violation of 29 U.S.C. §§1021 and

1022; 2) failed to make changes in writing to the Plan in violation of 29 U.S.C. §1102(a)(1); 3)

failed to provide a summary of material modifications to the Plan written in a manner calculated

to be understood by the average participant in violation of 29 U.S.C. §1022(a); 4) failed to

provide a procedure for amending the Plan in violation of 29 U.S.C. § 1102(b)(3); 5) modified

and/or terminated the Plan without authority under the terms of the Plan in violation of 29 U.S.C.

§ 1102(a)(1); 6) failed to follow the amendment procedures, if any, in the plan for modifying

and/or terminating the plan in violation of 29 U.S.C. § 1102(b)(3); and 7) failed to notify plan

participants of a material reduction in benefits by methods reasonably calculated to ensure receipt

of the information in violation of 29 U.S.C. § 1024(1)(B).

Defendants argue for dismissal of this claim on the grounds that "'ERISA does not

remedy procedural violations with a damage award' except for in the 'most egregious of

circumstances'" and that egregious circumstances are not present in this case. Defendants then

claim, incongruously, that they are entitled to dismissal of plaintiff's Second Claim for Relief on

the basis that technical violations are not remediable by an award of damages *in any case.*

Technical violations of ERISA may be remedied where "extraordinary circumstances"

exist, including, for example, "situations where the employer has acted in bad faith, or has

actively concealed a change in the benefit plan, and the covered employees have been

substantively harmed by virtue of the employers' actions." Ackerman v. Warnaco, Inc., 55 F.3d

117, 124 (3d Cir. 1995); Watson v. Deaconess Waltham Hospital, 298 F.3d 102, 113 (1st Cir.

2002) (substantive remedies available for technical violations of ERISA where evidence of "bad

faith, active concealment, or fraud" exists). Thus, in Ackerman, the Third Circuit concluded that

voiding a severance plan termination was the appropriate remedy for an employer's technical

violations of ERISA where there was evidence to support that the employer actively concealed

the plan termination in order to prevent employees at the plant from leaving. See id. at 125. See

also Lettrich v. J.C. Penney Company, Inc., 213 F.3d 765, (3d Cir. 2000) (in reversing summary

judgment based on evidence that employer may have actively concealed severance plan

termination in order to keep employee staff intact, court notes that its holding is "consistent with

21

Congress's intent that the ERISA notice and disclosure provisions guarantee that 'the individual participant knows exactly where he [or she] stands with respect to the plan.'") (Citations omitted).

As in <u>Ackerman</u> and <u>Lettrich</u>, plaintiff here alleges that defendants acted in bad faith in concealing the plan termination because of their desire to keep the workplace intact while the merger was taking place. <u>See</u> Complaint at ¶¶25-26, 30.  Furthermore, the allegations in plaintiff's complaint support that defendants completely disregarded ERISA's reporting and disclosure requirements, repeatedly failing to comply with the requirements in any respect, to the detriment of the plan participants including plaintiff.  Under these circumstances, dismissal of plaintiff's claim for technical violations of ERISA would be inappropriate.  <u>See Watson</u> at 113 (in finding that no extraordinary circumstances existed to warrant substantive remedy for employer's technical violations in that case, court noted that employer "did not actively conceal its policy" and that there were "no allegations that it regularly failed to comply with notice requirements.").  <u>See also Veilleux v. Attochem North America, Inc.</u>, 929 F.2d 74, 76 (2d Cir. 1991) (indicating that relief may be granted where "violations of ERISA disclosure provisions work a 'substantive harm' on plaintiffs"); <u>Gilbert v. Burlington Industries, Inc.</u>, 765 F.2d 320, 328-39 (2d Cir. 1985), <u>aff'd</u>, 477 U.S. 901 (1986) (same).

### D.     THIRD CLAIM FOR RELIEF – PROMISSORY ESTOPPEL

In the Third Claim for Relief, plaintiff alleges that defendants are estopped from denying him benefits under the LTD Plan because: 1) they materially misrepresented the terms of the LTD Plan by failing to inform plaintiff that the LTD coverage could be terminated and, if so, under what circumstances; 2) plaintiff relied on these misrepresentations in determining the

22

amount of private LTD coverage to purchase; and 3) plaintiff has been damaged by the misrepresentations because he does not have and cannot now purchase adequate and/or equivalent LTD coverage.

Defendants move to dismiss plaintiff's claim for promissory estoppel on the grounds that: 1) the allegations are insufficient to support that defendants made a "promise" to plaintiff; 2) plaintiff has not alleged "extraordinary circumstances"; and 3) ERISA does not provide the relief plaintiff seeks for claims of estoppel. As set forth below, defendants are not entitled to dismissal of plaintiff's claim on these grounds, and plaintiff has stated a valid claim.

In order to state a claim for promissory estoppel, plaintiff must allege: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999); Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72, 79 (2d Cir. 1996). In the Second Circuit, a plaintiff need not prove a "clear and unambiguous promise" in order to establish the first element of promissory estoppel. Rather, plaintiff need only demonstrate a promise that defendant "reasonably should have expected to induce action or forebearance on [plaintiff's] part." Schonholz at 79. As set forth in Section B.2., *supra*, plaintiff's allegations are sufficient to state that defendants promised vested benefits in this case.

Plaintiff also must allege facts sufficient to state "extraordinary circumstances." Aramony at 151-52. The "extraordinary circumstances" requirement may be satisfied by allegations that the promise was made to induce certain behavior on the part of plaintiff or by some other allegations of circumstances "beyond the ordinary." Aramony at 152. See also Abbruscato v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 101 (2d Cir. 2001) (summary

23

judgment on promissory estoppel claim denied where evidence supported that Empire promised early retirement incentive programs as an inducement to persuade employees to retire"); Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 85-86 (2d Cir. 2001) (noting that the Schonholz decision did not "explicitly define 'extraordinary circumstances' or limit it to circumstances of inducement"). For example, in Devlin (a/k/a Kunkel), the Second Circuit denied summary judgment on plaintiffs' promissory estoppel claim where sufficient evidence existed to support that the employees had "dedicated much of their working lives to Empire" and that the employer "intentionally promised lifetime life insurance benefits to lure (and retain) employees away from other firms paying higher salaries and then denied those benefits after the employees were of an age where they could neither make up the salary difference or obtain alternative benefits at a reasonable cost." Devlin at 86-87.

In DePace v. Matsushita Electric Corporation of America, 257 F.Supp.2d 543 (E.D.N.Y. 2003), plaintiffs alleged that Matsushita "fraudulently induced them to participate in a voluntary resignation program by furnishing them with misleading information as to the pension benefits they could expect" under the program. DePace at 547. Plaintiffs were provided with incorrect estimates of pension benefits overvaluing the amount of their pensions under the company's pension plan based on years of service with both Matsushita and a former employer, Panafax, that merged with Matsushita. See id. at 549-52. The pension benefit estimates "clearly stated that '[w]hile every effort has been made to provide accurate figures, this statement is subject to correction for any errors in data accumulation or benefit calculations'" and that "'[t]he availability and amount of all benefits is governed by the plan documents and not by this statement.'" Id. at 549-52.

24

Defendant moved to dismiss plaintiffs' claims for promissory estoppel in DePace on the grounds that there could be no "reasonable reliance" on the pension estimates and that plaintiffs had not adequately alleged "extraordinary circumstances." Id. at 552. The court denied Matsushita's motion to dismiss because, despite the disclaimers, the statements were misleading and there were no subsequent indications from the company that the statements were erroneous until after the period for rescinding participation had lapsed. See id. at 553. The court stated:

> While plaintiffs may reasonably have expected that the actual monetary calculations would diverge slightly from the estimates, there was nothing that might indicate to plaintiffs that the entire basis for calculating their benefits would change. Most importantly, the plan documents are ambiguous on this issue. Neither the summary plan description nor any of the additional materials sent to the plaintiffs clearly define "years of service" or the accrual of benefits with respect to successor companies. Certainly these documents do not contain any information that would put employees on notice that, contrary to the written estimates they received, their benefits would not include service accumulated at a successor company that was acquired by Matsushita. In the absence of any clear documented information to rely on, I cannot conclude that plaintiffs' reliance on the statements sent by Matsushita was unreasonable as a matter of law. This is especially true if it is assumed, as it must be on a motion to dismiss, that the allegations of intentional misrepresentations in the complaint are true.

Id. at 553-54. The court also found that the "extraordinary circumstances" requirement was met on the basis that:

> Matsushita sent statements to the plaintiffs which gave the clear impression that their benefit calculations would include years of service accrued while employed by Panafax. Since Matsushita did not clarify this "mistake" or distribute to plaintiffs any materials purporting to explain the calculation of years of service, the company should have expected plaintiffs to rely on its statements. As alleged in the complaint, Matsushita even delayed its response to plaintiffs' inquiries on the issue until after their ability to withdraw participation in the VRP was lost. Taken as a whole, the allegations in the complaint sufficiently state a claim for fraudulent inducement such that the "extraordinary circumstances" requirement is met.

Id. at 554.

Contrary to defendants' argument in this case, plaintiff's complaint sufficiently alleges a promise by defendants to provide LTD coverage and "extraordinary circumstances." Plaintiff alleges that defendants announced that it would be providing LTD coverage to its employees, but

25

failed to notify them that the LTD Plan could be modified or terminated and, furthermore, failed to specify whether and under what circumstances the plan could be modified or terminated in violation of ERISA. See Amended Complaint at ¶ 15-16. Plaintiff alleges that he relied on the announced benefits and the fact that defendants did not indicate that the benefits could be terminated in purchasing only a supplemental LTD insurance policy to provide for himself and his family in the event he were to become disabled. See id. at ¶17, 29. Plaintiff alleges that he was diagnosed with Parkinson's disease in December 1999 and immediately informed defendants of his diagnosis and that he subsequently learned, inadvertently, that defendants had terminated the LTD Plan. See id. at ¶18, 24. Plaintiff alleges that defendants failed to notify the plan participants that they could or had terminated the plan at any time and that they modified or terminated the plan without authority to do so under the terms of the plan. See id. at ¶26-27, 64. Furthermore, plaintiff alleges that defendants failed to notify the plan participants of the plan termination because of their desire to keep the Crystal Rock workforce intact while merging with Vermont Pure and that defendants "acted in bad faith to conceal the termination of the LTD policy from the plan participants, especially plaintiff who had been diagnosed with a disabling disease, because defendants were in the process of negotiating a merger and did not want to risk alienating or losing any employees." Id. at ¶26, 30.

Thus, as in DePace, plaintiff has sufficiently alleged both a promise and extraordinary circumstances to state a valid claim for promissory estoppel under ERISA. Plaintiff alleges misleading statements upon which he relied to his detriment. Plaintiff alleges extraordinary circumstances in that defendants made misrepresentations concerning the LTD coverage and acted in bad faith to conceal the termination of the LTD Plan in order to induce certain behavior on the part of their employees to benefit the company – i.e., in order to induce the employees, including plaintiff, to remain with the company so that they could negotiate a merger.

Finally, contrary to defendants' argument, plaintiff does not seek improper remedies for

26

promissory estoppel under ERISA. As set forth in detail in Section B.1. *supra*, plaintiff seeks equitable relief only that is entirely proper under ERISA.

## E.    FOURTH CLAIM FOR RELIEF – WRONGFUL TERMINATION

In the Fourth Claim for Relief, plaintiff asserts that defendants "terminated [his] employment in violation of 29 U.S.C. §1140 in order, *inter alia*, to avoid providing plaintiff with the LTD coverage to which he was entitled, to interfere with and/or defeat his claim for reinstatement of the LTD Plan and/or to interfere with his assertion of rights under ERISA." Amended Complaint, Fourth Claim for Relief at ¶64.

29 U.S.C. §1140 [ERISA §510] provides, in pertinent part, that:

> It shall be unlawful for any person to discharge . . . .a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter . . . , or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter. . . . The provisions of section 1132 of this title shall be applicable to the enforcement of this section.

§510 is intended to protect employees from being terminated so that an employer can avoid providing benefits that it has promised:

> By its terms §510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits.

Ingersoll-Rand Company v. McClendon, 498 U.S. 133, 143 (1990) (ERISA preempted employee's state law claim that he was wrongfully discharged because employer wanted to avoid making contributions to his pension fund; claim "prototypical of the kind Congress intended to cover under §510.").

§510 protects employees' rights to welfare benefit plans as well as pensions. See Inter-Modal Rail Employees Association v. Atchison, Topeka and Santa Fe Railway Company, 520 U.S. 510 (1997) (former railroad employees stated cognizable claim under §510 based on

27

allegation that that they lost their jobs as the result of their employer's actions that were motivated, in part, by a desire to deprive them of welfare benefits). As the Supreme Court noted in Inter-Modal, welfare benefit rights although not generally viewed as vested under ERISA are explicitly protected under §510 which "makes it unlawful to 'discharge . . . a [plan] participant or beneficiary . . . for the purpose of interfering with the *attainment of any right* to which such participant may become entitled under *the plan*. 29 U.S.C. §1140 (emphasis added).'" Id. at 514. The Court explained that while an employer has the right in some circumstances unilaterally to terminate or amend a welfare benefit plan, the plain language of §510 "draws no distinction between those rights that "vest" under ERISA and those that do not." Id. at 515.[11] The Court's analysis of §510 in Inter-Modal is especially instructive in this case:

> It is true that ERISA itself "does not regulate the substantive content of welfare benefit plans." . . . Thus, unless an employer contractually cedes its freedom. . . , it is "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [its] welfare pla[n]." . . . Section 510 counterbalances this flexibility by ensuring that employers do not "circumvent the provision of promised benefits." . . . In short, "§510 helps to make promises credible." . . . An employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan. See 29 U.S.C. §1102(b)(3) (requiring plan to "provide a procedure for amending such plan") . . . Adherence to these formal procedures "increases the likelihood that proposed plan amendments, which are fairly serious events, are recognized as such and given the special consideration they deserve." . . . The formal amendment process would be undermined if §510 did not apply because employers could "informally" amend their plans [by firing the participants] . . . To be sure, when an employer acts without this purpose, as could be the case when making fundamental business decisions, such actions are not barred by §510. But in the case where an employer acts with a purpose that triggers the protection of §510, any tension that might exist between an employer's power to amend the plan and a participant's rights under §510 is the product of a careful balance of competing interests . . .

Id. at 515-516 (citations omitted).

In this case, plaintiff alleges, *inter alia*, that defendants, acting in bad faith, impermissibly terminated the LTD Plan in violation of ERISA and that, when plaintiff raised this issue with

---

[11] As discussed above, under certain circumstances, welfare benefit plans may become vested as well. See Section B.2. *supra.*