**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRIAN CLARK, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03 CV 2278 (MRK) |
| | : | |
| v. | : | |
| | : | |
| VERMONT PURE HOLDINGS, LTD., CRYSTAL | : | |
| ROCK SPRING WATER COMPANY, CRYSTAL | : | |
| ROCK LONG TERM DISABILITY PLAN, and | : | |
| CRYSTAL ROCK SEVERANCE PLAN, | : | |
| Defendants. | : | APRIL 22, 2004 |

**THIRD AMENDED COMPLAINT**

## I.     PRELIMINARY STATEMENT

1.     The plaintiff, Brian Clark, who is over the age of 40 and has been diagnosed with Parkinson's disease, brings this action against his former employer, Vermont Pure Holdings, Ltd. d/b/a Crystal Rock Bottled Water and Vermont Pure and Crystal Rock Spring Water Company, to seek redress for disability and/or age discrimination in the terms and conditions of his employment and retaliation for complaining about the same including wrongful discharge in violation of the Age Discrimination in Employment Act [ADEA], 29 U.S.C. §621 *et seq.*, the Americans with Disabilities Act [ADA], 42 U.S.C. §12101 *et seq.*, and Connecticut's Fair Employment Practices Act [CFEPA], C.G.S. §46a-51 *et seq.* Plaintiff also seeks relief under the Employee Retirement Income Security Act [ERISA], 29 U.S.C. § 1001 *et seq.*, in connection with defendants' administration and cancellation of the long term disability insurance coverage provided to defendants' employees including plaintiff, termination of plaintiff's employment and failure to pay severance benefits to plaintiff.

II.     **JURISDICTION**

2.     Jurisdiction in conferred on this Court by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), 28 U.S.C. §1367, and 29 U.S.C. §1132.

3.     Jurisdiction is also conferred by 28 U.S.C. §1332.  The parties to this action are diverse and the amount in controversy exceeds $75,000.

III.    **PARTIES**

4.     The plaintiff Brian Clark is a citizen of the United States and a citizen and resident of the State of Florida.

5.     Plaintiff has a disability within the meaning of 42 U.S.C. §12102(2)(A), (B) and/or (C) and C.G.S. § 46a-51(15) in that he suffers from Parkinson's disease which substantially limits one or more of his major life activities and/or in that he was regarded as having a disability by defendants Vermont Pure Holdings, Ltd. and Crystal Rock Spring Water Company.  At all times relevant hereto, plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

6.     The defendant Vermont Pure Holdings, Ltd. [Vermont Pure Holdings] is a corporation organized under the laws of the State of Delaware, with its headquarters located in the State of Vermont and its principal place of business located in the State of Connecticut. Defendant Vermont Pure Holdings is sued individually and in its capacity as administrator and fiduciary of the Crystal Rock Long Term Disability Plan and the Crystal Rock Severance Plan.

7.     Vermont Pure Holdings is an employer that is and was, at all times relevant

2

hereto, a covered entity under 29 U.S.C. §630, 42 U.S.C. §12111(2) and (5)(A) and C.G.S. § 46a-51(10).

8.    The defendant Crystal Rock Spring Water Company [Crystal Rock] is a corporation organized and existing under the laws of the State of Connecticut, with its headquarters and principal place of business located in the State of Connecticut.  Defendant Crystal Rock is sued individually and in its capacity as administrator and fiduciary of the Crystal Rock Long Term Disability Plan and the Crystal Rock Severance Plan.

9.    Crystal Rock is an employer that is and was, at all times relevant hereto, a covered entity under 29 U.S.C. §630, 42 U.S.C. §12111(2) and (5)(A) and C.G.S. § 46a-51(10).

10.    The defendant Crystal Rock Long Term Disability Plan [LTD Plan] is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3).

11.    The defendant Crystal Rock Severance Plan [Severance Plan] is an employee benefit plan within the meaning of  29 U.S.C. § 1002(3).

12.    Defendants Vermont Pure Holdings and Crystal Rock are sponsors for and administrators of the LTD Plan and Severance Plan and as such are fiduciaries under 29 U.S.C. §1002.

## IV.    STATEMENT OF THE FACTS

13.    Plaintiff was born April 26, 1952.

14.    On or about August 3, 1973, plaintiff became a full-time employee of defendant

Crystal Rock which later merged with Vermont Pure to become defendant Vermont Pure Holdings.

15.     In or about April 1985, Crystal Rock announced that it would be providing, at company expense, long term disability [LTD] insurance coverage for its employees.  The announcement stated that Crystal Rock would provide long term disability benefits in the amount of 60% of a disabled employee's salary up to a maximum of $5,000 per month, commencing on the 180th day of the employee's absence from work due to disability and continuing until the employee was able to return to work or until age 65.   All existing Crystal Rock employees were provided with the aforesaid LTD coverage at the time the LTD Plan was adopted in 1985.

16.     On information and belief, defendant Crystal Rock did not inform its employees, the plan participants, at any time that the LTD Plan could be modified or terminated, or establish, when it adopted the LTD Plan, whether or under what circumstances the LTD coverage could be modified or terminated.

17.     In or about 1995, plaintiff, in reliance on the information communicated to him by defendant Crystal Rock about the LTD insurance coverage provided to its employees, purchased a supplemental LTD insurance policy to provide for himself and his family in the event he were to become disabled.  The amount of the policy he purchased was based upon the information he was provided concerning the benefits to which he was entitled under the LTD Plan and was designed to supplement such coverage.

4

18.    In December 1999, plaintiff was diagnosed with Parkinson's disease and immediately informed the President of Crystal Rock, Peter Baker, of his diagnosis.

19.    When plaintiff was diagnosed with Parkinson's, he held the position of Sales Manager reporting to the Vice President at Crystal Rock, a position he had held since 1992.

20.    Even though plaintiff's job performance and the sales results of his department had been consistently good in previous years and continued to be so in 2000, Mr. Baker communicated to plaintiff in the first several months of 2000 that the company was dissatisfied with his management of the sales department.

21.    In May 2000, Crystal Rock announced that it would merge with Vermont Pure.

22.    In June 2000, plaintiff was led to believe by the departing Human Resources Manager that he was going to be replaced as Sales Manager.  Plaintiff was told it would be a "smart move" or words to that effect for him to transfer from his position as Sales Manager to the position of Human Resources  [HR] Manager.

23.    Even though he had no background in human resources, plaintiff opted to transfer to the HR Manager position, effective July 1, 2000, having been advised that he would likely be out of a job if he did not do so.

24.    After he began performing the HR function in or about July 2000, plaintiff was informed by his predecessor that he should not have employees fill out an enrollment form for the LTD policy because defendant Crystal Rock no longer provided such coverage.

25.    Before plaintiff became HR Manager but, on information and belief, after he was

diagnosed with Parkinson's disease, defendants terminated the LTD Plan but failed to inform the covered employees, including plaintiff, of this change in benefits.

26.     On information and belief, defendants terminated the LTD Plan when Crystal Rock was negotiating to merge with Vermont Pure and, because of its desire to keep the workforce intact while the merger was taking place, did not inform the employees either that the LTD coverage would be or had been terminated.  No written or verbal announcements were made to notify plan participants that the LTD Plan was being or had been terminated.

27.     At no time did defendants inform the employees that the LTD Plan could be or had been terminated.

28.     When plaintiff learned that defendants had terminated the LTD Plan, he was no longer able to obtain LTD coverage for himself because of his Parkinson's diagnosis.  Although he has been able to purchase an increase in benefits under the private LTD coverage that he previously obtained, he has not been able to purchase an increase that is equivalent to the amount of the benefits provided under the LTD Plan.

29.     When plaintiff purchased a private LTD policy, he did not obtain adequate coverage because he relied on the information provided to him about the LTD coverage by the company, including the fact that defendants did not inform the plan participants either that their LTD coverage could be terminated or, if so, under what circumstances.

30.     Defendants acted in bad faith to conceal the termination of the LTD policy from the plan participants, especially plaintiff who had been diagnosed with a disabling disease,

6

because defendants were in the process of negotiating a merger and did not want to risk alienating or losing any employees.

31.    Plaintiff was substantially harmed by defendants' actions in wrongfully terminating the LTD Plan without notice to the plan participants that it could be cancelled and/or without notice that it would be or had been cancelled.

32.    In October 2000, defendant Crystal Rock merged with Vermont Pure to form defendant Vermont Pure Holdings.

33.    After plaintiff's Parkinson's diagnosis, management increasingly expressed dissatisfaction with plaintiff and communicated to him in various ways that they wanted him to leave the company.

34.    For example, as a result of the merger, plaintiff's job responsibilities as HR Manager increased dramatically.  Despite this fact, plaintiff was not given additional staff or other assistance to enable him to meet his responsibilities.

35.    On several occasions, plaintiff made requests for additional staff and/or suggested specific restructuring to alleviate the burden, but none of the requested changes or accommodations were made and, as a result, it was impossible for plaintiff to complete his responsibilities in normal working hours and he was forced to work nights and weekends and to enlist his wife to assist him with his responsibilities.

36.    Peter Baker, the President of Vermont Pure, and David Jurasek, the Controller and plaintiff's then immediate supervisor, were both aware that he was overwhelmed by the

7

amount of work assigned to him.

37.    Despite the enormous work load imposed on him, plaintiff continued to function as a dedicated employee and had no intention of leaving Crystal Rock.

38.    The level of hostility toward plaintiff continued to increase and, ultimately, in or about November 2001, Peter Baker proposed to plaintiff, who was then 49 years old, that he should retire.

39.    Mr. Baker informed plaintiff that "maybe he could make [his] dreams come true" or words to that effect, suggesting that he was considering offering plaintiff a severance package that would allow plaintiff to retire to Florida.

40.    It was widely known among employees and management at the company that plaintiff hoped to retire to Florida sometime in the future.

41.    Plaintiff informed Mr. Baker that he had no intention of retiring or resigning his employment with Crystal Rock at that time.

42.    Plaintiff intended to continue working at Crystal Rock for as long as his health permitted, which he expected to be at least until 2010.

43.    At about the same time that Mr. Baker suggested he retire, plaintiff was subjected to a number of adverse and humiliating actions.

44.    For example, despite the fact that plaintiff had received an $8,000 annual bonus for several years prior to 2001, he was given only a $4,000 bonus in 2001 while other key managers received bonuses equal to or greater than the bonuses they had received in previous

8

years.

45.     In addition, David Jurasek screamed at plaintiff in a highly offensive and inappropriate manner concerning the fact that he had not paid a disputed $3,000 telephone bill before the end of the year.

46.     Peter Baker also raised his voice to plaintiff in the presence of other employees on several occasions.

47.     In January 2002, plaintiff became unable to withstand the adverse treatment he was receiving from upper management and informed Mr. Baker that he had "had it" or words to that effect and told Mr. Baker that he was willing to leave because he knew that Mr. Baker did not want him there anymore but that he needed to know what Mr. Baker was offering in terms of severance when he said that he could make plaintiff's "dreams come true" so that plaintiff could make his decision.

48.     In the discussions that followed, Peter Baker and David Jurasek proposed a severance package to plaintiff in the amount of one week of salary for every year of service and indicated that they could use Crystal Rock's "power" to obtain private health insurance for plaintiff because, they said, he would probably have trouble obtaining insurance in his condition.

49.     In this time period, defendants paid severance to all terminated management employees, including those who were terminated for cause, in an amount equal to at least one week of salary for every year of service.

50.     Plaintiff responded that defendants' offer was unfair because, *inter alia*,

9

defendants, not he, wanted him to retire at that time.

51.     The hostile treatment continued and, on or about August 2, 2002, plaintiff,
through his attorney, wrote to Vermont Pure's President, Peter Baker, to complain, *inter alia*,
about the discriminatory treatment plaintiff was experiencing.  The letter brought to defendants'
attention plaintiff's claims that defendants' treatment of plaintiff was unfair and constituted
discrimination in violation of the ADEA, ADA, and CFEPA.  The letter also complained that
defendants' cancellation of the LTD coverage without notice or warning violated ERISA.

52.     Despite the fact that the letter informed defendants of plaintiff's belief that he was
being subjected to unlawful discrimination in violation of the ADEA, ADA and CFEPA, and that
he was being wrongfully denied benefits in violation of ERISA, plaintiff was not interviewed
concerning the basis for his complaints.

53.     On or about September 6, 2002, plaintiff, through his attorney, wrote to
defendants' attorney to request, pursuant to ERISA, that he be provided with "a copy of every
summary plan description and notice issued concerning any modification and/or termination of
the [LTD] coverage provided by Crystal Rock Water Co. to its employees commencing in or
about 1985."

54.     On or about September 19, 2002, defendants' attorney wrote to plaintiff's
attorney to inform her that plaintiff's employment with defendants was being terminated.

55.     In the September 19, 2002 letter, defendants' attorney stated that defendants
would not provide plaintiff with any of the requested information concerning the LTD Plan,

10

including any summary plan description(s) or notice(s) of modification and/or termination of the Plan.

56.     Peter Baker spoke with plaintiff after plaintiff received the September 19, 2002 letter and informed him that, even though defendants had ostensibly terminated plaintiff for cause, he could continue working for defendants if he would rescind the August 2, 2002 letter in which he had complained about defendants' violations of federal and state law.

57.     Plaintiff informed defendants' President that he would not rescind the letter because it accurately reflected his perception of defendants' treatment of him.

58.     After he refused to rescind the letter, plaintiff's employment termination took effect at the end of September 2002.

59.     Defendants subjected plaintiff to a hostile and discriminatory work environment on the basis of his disability and/or age and retaliated against him by terminating his employment for complaining about the same.

60.     Furthermore, despite the fact that all terminated management level employees had been paid severance in accordance with defendants' Severance Plan in an amount at least equal to one week of salary for every year of service, defendants failed to pay plaintiff any severance after his employment was terminated.

61.     On or about November 1, 2002, plaintiff filed administrative complaints with the Equal Employment Opportunity Commission [EEOC] and Connecticut Commission on Human Rights and Opportunities [CHRO] alleging employment discrimination on the basis of

his disability and/or age and retaliation for complaining about the same.

62.    On or about June 19, 2003, plaintiff received a Notice of Right to Sue from the EEOC.

63.    On or about June 23, 2003, plaintiff received a Release of Jurisdiction letter from the CHRO.

## V.    CLAIMS FOR RELIEF

### A.    FIRST CLAIM FOR RELIEF

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the First Claim for Relief.

64.  Defendants Vermont Pure Holdings and/or Crystal Rock, as the LTD Plan sponsors and administrators, breached their fiduciary duty to plaintiff under 29 U.S.C. §1104 *et seq.* by, *inter alia*,

a.  modifying and/or terminating his LTD insurance coverage without warning or notice;

b.  modifying and/or terminating the LTD Plan without authority under the terms of the Plan;

c.  failing to communicate to plaintiff material facts affecting his interest which they knew or should have known he did not know and which he needed to know for his protection;

d.  failing to meet their statutory duty to provide a summary plan description

12

which clearly set forth the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."

**B.     SECOND CLAIM FOR RELIEF**

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Second Claim for Relief.

64.  Defendants Vermont Pure Holdings and/or Crystal Rock administered and/or terminated the LTD Plan in violation of ERISA, *inter alia*, by

a.  failing to provide a summary plan description which clearly set forth the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" in violation of 29 U.S.C. §§1021 and 1022;

b.  failing to make changes in writing to the LTD Plan in violation of 29 U.S.C. § 1102(a)(1);

c.  failing to provide a summary of material modifications to the LTD Plan written in a manner calculated to be understood by the average participant in violation of 29 U.S.C. § 1022(a);

d.  failing to provide a procedure for amending the LTD Plan in violation of 29 U.S.C. § 1102(b)(3);

e.  modifying and/or terminating the LTD Plan without authority under the terms of the Plan in violation of 29 U.S.C. § 1102(a)(1);

f.  failing to follow the amendment procedures, if any, in the LTD Plan for

13

modifying and/or terminating the Plan in violation of 29 U.S.C. § 1102(b)(3);

       g.  failing to notify plan participants of a material reduction in benefits by methods reasonably calculated to ensure receipt of the information in violation of 29 U.S.C. § 1024(1)(B).

**C.**    **THIRD CLAIM FOR RELIEF**

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Third Claim for Relief.

64.  Defendants Vermont Pure Holdings and Crystal Rock are estopped from denying plaintiff benefits under the LTD Plan because 1) they materially misrepresented the terms of the LTD Plan by failing to inform plaintiff that the LTD coverage could be terminated and, if so, under what circumstances; 2) plaintiff relied on these misrepresentations in determining the amount of  private LTD coverage to purchase; and 3) plaintiff has been damaged by the misrepresentations because he does not have and cannot now purchase adequate and/or equivalent LTD coverage.

**D.**    **FOURTH CLAIM FOR RELIEF**

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Fourth Claim for Relief.

64.  Defendants Vermont Pure Holdings and Crystal Rock terminated plaintiff's employment in violation of 29 U.S.C. §1140 in order, *inter alia*, to avoid providing plaintiff with the LTD coverage to which he was entitled, to interfere with and/or defeat his claim for

14

reinstatement of the LTD Plan and/or to interfere with his assertion of rights under ERISA.

### E.    FIFTH CLAIM FOR RELIEF

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Fifth Claim for Relief.

64.  Defendants Vermont Pure Holdings and Crystal Rock failed to pay plaintiff the severance benefits he was due under the Severance Plan upon the termination of his employment.

### F.    SIXTH CLAIM FOR RELIEF

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Sixth Claim for Relief.

64.  Defendants Vermont Pure Holdings and Crystal Rock refused to provide plaintiff with requested documents concerning the LTD Plan in violation of 29 U.S.C. §§ 1022, 1024 and 1132.

### G.    SEVENTH CLAIM FOR RELIEF

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Seventh Claim for Relief.

64.    Defendant Vermont Pure and defendant Crystal Rock's treatment of plaintiff constitutes employment discrimination on the basis of his disability in violation of 42 U.S.C. §12112.

### H.    EIGHTH CLAIM FOR RELIEF

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of

the Eighth Claim for Relief.

64.    Defendant Vermont Pure and defendant Crystal Rock's treatment of plaintiff constitutes employment discrimination on the basis of his age in violation of 29 U.S.C. §623.

I.    **NINTH CLAIM FOR RELIEF**

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Ninth Claim for Relief.

64.    Defendant Vermont Pure and defendant Crystal Rock's treatment of plaintiff constitutes employment discrimination on the basis of his disability and/or age in violation of C.G.S. §46a-60(a)(1).

J.    **TENTH CLAIM FOR RELIEF**

1 - 63.  Paragraphs 1 through 63 are hereby incorporated as paragraphs 1 through 63 of the Tenth Claim for Relief.

64.    Defendant Vermont Pure and defendant Crystal Rock's treatment of plaintiff constitutes retaliation in violation of 42 U.S.C. §12203, 29 U.S.C. §623(d) and/or C.G.S. §46a-60(a)(4).

## VI.    PRAYER FOR RELIEF

WHEREFORE, pursuant to 29 U.S.C. § 1132 (a)(1)(A) and/or (B), § 1132(a)(3), and/or § 1132(c)(1)(B) and § 1132(g), 42 U.S.C. §12117, 29 U.S.C. §626 and C.G.S. §46a-104, *inter alia*, the plaintiff claims:

1. Damages;

2. Compensatory damages;

3. Reinstatement of the LTD Plan for the benefit of defendants' employees;

4. Reinstatement of plaintiff's coverage under the LTD Plan;

5. Restitution;

6. Reinstatement of plaintiff's employment;

7. Back Pay;

8. Front Pay;

9. Payment of benefits due, together with interest, under the Severance Plan;

10. Pre- and post-judgment interest on all monetary awards;

11. Disgorgement of profits obtained in violation of ERISA;

12. Payment to plaintiff of $100 per day pursuant to 29 U.S.C. § 1132(c)(1)(B) from on or about September 19, 2002;

13. Punitive damages;

14. Attorney's fees and costs;

and such other and further relief as the court deems appropriate.

18

The Plaintiff, Brian Clark

By:_____
       Kathryn Emmett
       Emmett & Glander
       45 Franklin Street
       Stamford, CT  06901
       (203) 324-7744
       Federal Bar No. CT05605
       Kemmett@emmettandglander.com

Pursuant to Rule 38(c), Fed. R. Civ. P., plaintiff demands a trial by jury on all issues that are triable of right to a jury.

## CERTIFICATION

This is to certify that a copy of the foregoing was hand-delivered this 22nd day of April, 2004, to:

Daniel Green, Esq.
Robert R. Perry, Esq.
Jackson Lewis LLP
177 Broad Street, 8th Floor, P.O. Box 251
Stamford, CT 06904-0251

_____
Kathryn Emmett

19