UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN CLARK, | : | |
| | : | |
| Plaintiff, | : | NO.   3:02cv2278 (MRK) |
| | : | |
| v. | : | |
| | : | |
| VERMONT PURE HOLDINGS, LTD., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

In this case, Plaintiff Brian Clark ("Clark") sues his former employer Vermont Pure Holdings, Ltd. and its predecessor company Crystal Rock Spring Water Co. (collectively, "Vermont Pure") for violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 *et seq*. Defendants have moved to dismiss the first six counts of Plaintiff's complaint, all of which relate to ERISA.

A comment by the First Circuit aptly sums up this case: "ERISA issues can be enormously complicated, and this case, in theory, raises at least half a dozen abstruse issues." *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109 (1st Cir. 2002). Because the Court cannot conclude on the basis of the complaint alone that Plaintiff can prove no set of facts that would entitle him to relief, the Motion to Dismiss [doc. #31] is DENIED.[1] Once the facts of this

---

[1] Plaintiff's Motion to Strike Certain Documents Attached to Defendants' Motion to Dismiss [doc. #37] is DENIED as moot.

case are determined, many of the issues raised by Defendants may well be appropriate for disposition by summary judgment.

**I.**

The basic facts in this case, as drawn from Clark's amended complaint, are not in serious dispute. Clark first became an employee of Defendant Crystal Rock in 1973. Amend. Compl. [doc. #26], ¶ 14. In April 1985, Crystal Rock announced to its employees that it would be providing, at company expense, long-term disability coverage ("LTD") for its employees. *Id.* ¶ 15. The announcement stated that the plan would provide long term disability benefits in the amount of 60% of a disabled employee's salary up to a maximum of $5000 per month, beginning on the 180th day of the employee's absence from work due to disability and continuing until the employee could return to work or until age 65. *Id.*; *see also* Pl's Mem. in Opp'n to Mot. To Dismiss [doc. #39], Ex. 1. All existing employees were provided with this LTD coverage at the time the plan was adopted. Amend. Compl. [doc. #26], ¶ 15. According to Clark, Crystal Rock did not inform its employees that it could modify or terminate the LTD plan. *Id.* ¶ 16.

In December 1999, Clark was diagnosed with Parkinson's disease and soon thereafter informed the President of Crystal Rock of this diagnosis. *Id.* ¶ 18. At this time, Clark held the position of Sales Manager at Crystal Rock and had since 1992. *Id.* ¶ 19. In June 2000, Clark was advised to transfer from the Sales Manager position to a Human Resources Manager position, which he did, effective July 1, 2000. *Id.* ¶¶ 22, 23. In October 2000, Crystal Rock merged with Vermont Pure to become Vermont Pure Holdings, Ltd. *Id.*, ¶¶ 14, 32.

After taking over the Human Resources position, Clark discovered that Vermont Pure no longer provided LTD coverage for employees, a fact that had not been communicated to Crystal

Rock/Vermont Pure employees. *Id.* ¶¶ 24, 26, 27. Tensions soon developed between Clark and management and various management personnel suggested that he retire. *Id.* ¶¶ 33-47. In early 2002, the President and Controller of the company offered Clark a severance package amounting to one week of salary for every year of service and indicated they would attempt to obtain private health insurance for Clark as well. *Id.* ¶ 48. This was the standard severance package for those terminated for cause in this time period. *Id.* ¶ 49. Clark refused the offer, as he did not want to retire and did not feel the standard package was a fair inducement. *Id.* ¶ 50.

On August 2, 2002, Clark, through his attorney, wrote to Vermont Pure's President to complain about the treatment he was experiencing, which he asserted violated the ADEA, ADA, and CFEPA. Clark also claimed that the cancellation of the LTD coverage violated ERISA. *Id.* ¶ 51. Defendants did not respond to the letter. *Id.* ¶ 52. On September 6, 2002, Clark, through his attorney, sent another letter, this one to Vermont Pure's attorney, requesting, pursuant to ERISA, that he be provided with "a copy of every summary plan description and notice issued concerning any modification and/or termination of the [LTD] coverage provided by Crystal Rock Water Co. to its employees commencing in or about 1985." *Id.* ¶ 53. On September 19, 2002, Vermont Pure's attorney informed Clark's attorney that Clark's employment was being terminated and that Vermont Pure would not provide Clark with any of the requested information concerning the LTD plan. *Id.* ¶¶ 54, 55. The President of Vermont Pure offered to allow Clark to continue working for the company if he would rescind the August 2, 2002 letter, but Clark refused to do so. *Id.* ¶¶ 56, 57. Clark's employment was terminated at the end of September 2002, and he did not receive any severance pay. *Id.* ¶ 58, 60.

Clark alleges that because of his Parkinson's disease, he has not been able to obtain LTD

coverage for himself. *Id.* ¶¶ 28, 29. He also alleges that Defendants terminated the LTD plan during the negotiations for the merger of Crystal Rock and Vermont Pure, but Defendants intentionally did not inform employees of the termination of the LTD plan in order to keep the workforce intact as the two companies merged. *Id.* ¶¶ 26, 27, 30.

Clark filed administrative complaints with the EEOC and CHRO on November 1, 2002 and brought this lawsuit on December 20, 2002. *Id.* ¶ 61. The suit raises eleven claims for relief, including claims under ERISA, the ADA, the ADEA, the CFEPA, retaliation, and defamation. *Id.* ¶¶ 64-69. Vermont Pure has filed a motion to dismiss the first six counts, all relating to the claimed violations of ERISA. [doc. #31].

**II.**

The standard for assessing motions to dismiss is a familiar one. "On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Bolt Elec. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (quoting *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992)). "Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). Furthermore, as the Supreme Court emphasized recently in reversing a Rule 12(b)(6) dismissal of a plaintiff's complaint, the "simplified notice pleading standard [of the Federal Rules] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 512 (2002). Therefore, in deciding whether to dismiss for failure to state a claim, the Court merely decides whether "the claimant is entitled to offer evidence to support the claims." *Bernheim,* 79 F.3d at 321 (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

### A.   First Claim - Breach of Fiduciary Duty

Clark's first claim for relief alleges that Defendants breached their fiduciary duty under ERISA, 29 U.S.C. § 1104 *et seq*, by: "a: modifying and/or terminating his LTD insurance coverage without warning or notice; b: modifying and/or terminating the LTD plan without authority under the terms of the Plan; c: failing to communicate to plaintiff material facts affecting his interest which they knew or should have known he did not know and which he needed to know for his protection; and d: failing to meet their statutory duty to provide a summary plan description which clearly set forth the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Amend. Compl. [doc. #26], First Claim for Relief. Defendants assert that this first count fails as a matter of law for several independent reasons: ERISA does not provide the remedy Plaintiff seeks; Defendants' conduct was not actionable under ERISA; and Plaintiff has not suffered any damage as a result of the alleged breach. Mem. of Law in Supp. of Def's Mot. to Dismiss [doc. #32], at 6. The Court will consider each of these arguments in turn.

Section 502 of ERISA authorizes civil suits for, among other things, "appropriate equitable relief to redress such violations or to enforce any provision of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has interpreted this reference to equitable relief to refer to "those categories of relief that were typically available in equity (such as

injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). As the Court has explained, "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,'" which "are, of course, the classic form of legal relief." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting) and *Mertens*, 508 U.S. at 255). The Court thus determined that, except in cases of constructive trusts or equitable liens, relief that involves the payment of money is not equitable relief within the meaning of ERISA. *Great-West*, 534 U.S. at 211-15.

Defendants argue that Clark's request for reinstatement to the LTD plan will require Vermont Pure to pay money for him to be added to the plan, an impermissible legal remedy under *Great-West*, and that, as a consequence, his claim must be dismissed. Mem. of Law in Supp. of Def's Mot. to Dismiss [doc. #32] at 8-11. Clark responds that he is not seeking reinstatement to any specific long term disability plan provided by an insurance company for which Vermont Pure would have to pay money. Rather, he asserts that he is seeking purely equitable relief because he asks to be reinstated into the Crystal Rock LTD plan which was announced to employees in 1985, and which he was a part of for fifteen years.[2] Clark argues that reinstatement to the company's plan does not directly involve an outlay of funds, and asserts that it constitutes appropriate equitable relief. Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #39] at 10. In fact, counsel for Vermont Pure conceded at argument that Vermont Pure currently provides an

---

[2]This argument was not immediately apparent from Clark's briefs, but was clarified at oral argument.

LTD plan for its employees.

At this stage of the case, before discovery has been completed, it is not clear to the Court exactly what the plan is to which Clark seeks reinstatement. From the pleadings thus far submitted, it seems conceivable that the reinstatement which Clark is seeking could constitute either permissible equitable or impermissible nonequitable relief depending on any number of factors. There is simply not enough information about the plan in the record at this time for the Court to determine whether the sought relief is appropriate under ERISA. Accordingly, the Court cannot grant Vermont Pure's motion to dismiss on this ground.

Defendants also argue that Clark's allegations in his first claim do not support a claim for breach of fiduciary duty because they were not obligated under ERISA to inform Clark that they had the right to amend or terminate the plan and that, in any event, amending or terminating an ERISA plan is not a fiduciary function and the LTD plan benefits were not vested. Mem. of Law in Supp. of Def's Mot. to Dismiss [doc. #32] at 12-14.

At this stage of the case, there are too many issues in dispute regarding the LTD plan for the Court to conclude that Clark has failed to state a claim based on these reasons. According to the Second Circuit, "'Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' 'If a [plan] document unambiguously indicates whether retiree . . . benefits are vested, the unambiguous language should be enforced.' Thus, even though [Defendant] is "generally free" to modify its life insurance plan, if [Defendant] promised vested benefits, those benefits will be enforced." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 82 (2d Cir. 2001) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) and *Am. Fed'n of Grain Millers, AFL-CIO v.*

*Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997)). Clark has alleged that Vermont Pure promised vested benefits, which is all Clark need do at this stage to survive a motion to dismiss, since if Clark's allegations are proven, they could well be sufficient to state a claim under ERISA.

  Clark does not disagree that amendment and modification of ERISA plans where those rights are reserved by the employer are not fiduciary functions and cannot serve as a ground for a breach of fiduciary duty claim. Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #39] at 16. However, Clark asserts that this is not the basis of his claim; rather, Clark argues, his claim is "based on the fact that defendants did not reserve the right to terminate the LTD Plan under ERISA, failed to notify the plan participants that the Plan could be amended or terminated in violation of ERISA's reporting and disclosure requirements, failed to notify the plan participants that the Plan had been terminated and failed to inform the plan participants of any conversion rights under the policy, all to plaintiff's detriment." *Id.* If proved, these allegations could serve as a basis for a breach of fiduciary duty claim. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 503-05 (1996). Accordingly, the Court cannot dismiss Clark's claim on this ground.

  Vermont Pure's argument that the LTD plan benefits were not vested and thus cannot serve as the basis for a breach of fiduciary duty claim fails for a similar reason. Clark asserts that "defendant failed to reserve the right to amend the LTD Plan in this case, and therefore, promised vested benefits to the plan participants and did not have the right to amend or terminate the plan." Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #39] at 18. *See Curtiss-Wright Corp.*, 514 U.S. at 82 (noting that "for a plan not to have [an amendment] procedure would risk rendering the plan forever unamendable under standard trust law principles"). Once again, at this stage of the case it

8

is impossible to say that Clark will be unable to prove this claim; it is sufficient that he has made claims upon which he could conceivably recover. *Swierkiewicz*, 534 U.S. at 512.

Finally, Defendants argue that the first claim should be dismissed because Clark suffered no injury as a result of the alleged breach. According to Defendants Clark is not yet disabled and would be in the same situation today even if the company had notified him of the plan's termination. Clark responds that he alleges injury arising from the fact that he relied to his detriment on the existence of the LTD coverage and did not purchase adequate independent coverage as a result of his reliance, coverage that he cannot now purchase because of his condition. Amend. Compl. [doc. #26], ¶¶ 28, 29. Since Clark has alleged injury from Defendants' conduct, the Court cannot dismiss his claim on this basis.

Accordingly, Defendants' motion to dismiss the first claim is denied.

### B.    Second Claim - Technical Violations of ERISA

Clark's second claim alleges a series of technical violations of ERISA. Defendants assert that this claim should be dismissed because such violations, absent extraordinary circumstances, cannot be remedied by any substantive relief this Court could award. As the First Circuit recently recognized: "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud." *Watson*, 298 F.3d at 113; *see also Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995) ("[S]ubstantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements. We have, however, recognized the possibility of a remedy where the plaintiff can demonstrate the presence of extraordinary circumstances."). Clark has made allegations of bad faith, Amend. Compl. [doc.

9

#26], ¶¶ 25, 26, 30, and he is entitled to an opportunity to prove those allegations. The motion to dismiss the second claim is denied.

        **C.**        **Third Claim - Estoppel**

Clark's third claim for relief asserts that Vermont Pure is estopped from denying plaintiff benefits under the LTD plan. Amend. Compl. [doc. #26], Third Claim for Relief. The parties agree that to state an estoppel claim, a plaintiff must allege: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996). Furthermore, "an ERISA plaintiff must 'adduce[] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Devlin v. Transportation Communs. Int'l Union*, 173 F.3d 94, 102 (2d Cir. 1999)). Vermont Pure asserts that Clark has failed to allege that there was a promise, that he suffered any injury, or that extraordinary circumstances are present.

As discussed above, Clark has alleged a promise and has alleged detrimental reliance on that promise. He also has alleged extraordinary circumstances "in that defendants made misrepresentations concerning the LTD coverage and acted in bad faith to conceal the termination of the LTD Plan in order to induce certain behavior on the part of their employees to benefit the company - i.e., in order to induce the employees, including plaintiff, to remain with the company so that they could negotiate a merger." Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #39] at 26. The Court agrees with Clark that these allegations could conceivably state a claim that the "surrounding circumstances are indeed beyond the ordinary." *Aramony*, 191 F.3d at 152.

Defendants' motion to dismiss the third claim is thus denied.

    **D.    Fourth Claim - Wrongful Termination**

Clark's fourth claim is that Vermont Pure "terminated plaintiff's employment in violation of 29 U.S.C. § 1140 in order, *inter alia*, to avoid providing plaintiff with the LTD coverage to which he was entitled, to interfere with and/or defeat his claim for reinstatement of the LTD and/or to interfere with his assertion of rights under ERISA." Amend. Compl. [doc. #26], Fourth Claim for Relief. "To state a claim under [§ 1140], a plaintiff must allege that adverse employment action was taken against him in retaliation for asserting his rights under ERISA or for the purpose of interfering with the attainment of those rights." *Degrooth v. General Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993). Defendants argue they could not have interfered with any of Clark's rights under ERISA because they had the right to terminate the LTD plan and that because Clark was never disabled, he did not qualify for benefits under the LTD plan. Mem. of Law in Supp. of Def's Mot. to Dismiss [doc. #32] at 21-22.

However, as the Supreme Court points out, 29 U.S.C. § 1140 "makes it unlawful to "discharge . . . a [plan] participant or beneficiary . . . for the purpose of interfering with the *attainment of any right* to which such participant may become entitled under the plan." *Inter-Modal Rail Employees. Ass'n v. Atchison, T. & S.F. Ry.*, 520 U.S. 510, 514 (1997) (emphasis in original). Plaintiff has alleged that the LTD plan was terminated specifically to prevent him (and other employees) from attaining vested rights under the plan. Amend. Compl. [doc. #26], Fourth Claim for Relief, ¶ 64. Plaintiff may well not be able to adduce evidence in support of these allegations. However, Plaintiff is entitled to the opportunity to try. Insofar as Clark has alleged that which is prohibited by 29 U.S.C. § 1140, the Court cannot dismiss his

claims at this stage.

### E.     Fifth Claim - Failure to Pay Severance Benefits

Clark's fifth claim is that Defendants "failed to pay plaintiff the severance benefits he was due under the Severance Plan upon the termination of his employment." Amend. Compl. [doc. #26], Fifth Claim for Relief. Defendants seek to dismiss this claim on the basis that Clark was offered and rejected such benefits. Mem. of Law in Supp. of Def's Mot. to Dismiss [doc. #32] at 22. However, Defendants fail to explain how this Court can possibly resolve a factual question of this nature — whether Clark was offered proper severance benefits — at this stage of the proceedings and based solely on the allegations of the complaint. The Court will not dismiss Clark's fifth claim.

### F.     Sixth Claim - Failure to Provide Documents

Clark's sixth and final ERISA claim alleges that Defendants "refused to provide plaintiff with requested documents concerning the LTD Plan in violation of 29 U.S.C. § 1022, 1024, and 1132." Amend. Compl. [doc. #26], Sixth Claim for Relief. Defendants argue that Clark lacks standing to bring this claim since under ERISA only "a participant or beneficiary" may bring suit for failure to provide certain plan documents. As the Supreme Court has held, "the term "participant" is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (quoting *Saladino v. I. L. G. W. U. Nat'l Ret. Fund*, 754 F. 2d 473, 476 (2d Cir. 1985) and *Kuntz v. Reese*, 785 F. 2d 1410, 1411 (9th Cir. 1986) (per curiam)). Defendants assert that Clark is not an employee, has no expectation of

12

returning to covered employment, and has no credible claim to benefits. Therefore, he is neither a participant nor a beneficiary and cannot bring this claim.

Clark counters that he has asserted a colorable claim that he must be reinstated to his employment and to coverage under the LTD plan. Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #39] at 34. As the court explained in *Kascewicz v. Citibank, N.A.*, 837 F. Supp. 1312, 1321 (S.D.N.Y. 1993), "the class of 'potential participants,' those who have 'colorable claims' to benefits, clearly encompasses a larger group than just those individuals ultimately determined to have rights under a plan. A court may properly award statutory penalties under § 502(c) even if it determines that the plaintiff does not qualify for plan benefits." Inasmuch as Clark has pleaded that he has a colorable claim to benefits and to reinstatement, the Court cannot conclude on the record at this point that he will be unable to demonstrate standing to pursue his claim for failure to provide plan documents. Defendants' motion to dismiss the sixth claim is, therefore, denied.

### III.

Defendants' Motion to Dismiss [doc. #31] is DENIED. The parties will proceed with this case in accordance with the schedule set forth in the Court's May 12, 2004 Scheduling Order [doc. #53].

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: August 11, 2004**.