UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN CLARK,

Plaintiff,

-against-

VERMONT PURE HOLDINGS, LTD.,
CRYSTAL ROCK SPRING WATER
COMPANY, CRYSTAL ROCK LONG
TERM DISABILITY PLAN and
CRYSTAL ROCK SEVERANCE
PLAN,

Defendants.

Civ. No: 3:02CV2278 (MRK)

February 16, 2005

DEFENDANTS' MEMORANDUM

# TABLE OF AUTHORITIES

## FEDERAL CASES

2004 U.S. Dist. LEXIS 24806 (D. Conn. 2004) ................................................................30

Adams v. Avondale Industries, 905 F.2d 943 (6th Cir. 1990)..........................................26

Aldridge v. Lily-Tulip, Inc. Sal. Retirement Plan, 40 F.3d 1202 (11th Cir. 1994) ..........26

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) ..........................................................7,14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................................6,7

Aquilio v. Police Benevolent Association, 857 F. Supp. 190 (N.D.N.Y. 1994)...............37

Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140 (2d Cir. 1999) ..........36

Beason v. United Technologies Corp., 213 F. Supp. 2d 103 (D. Conn. 2002)..................19

Becker v. Eastman Kodak, 120 F.3d 5 (2d Cir. 1997)......................................................28

Biggers v. Wittek Industries, Inc., 4 F.3d 291 (4th Cir. 1993) .........................................26

Black v. Bresee's Oneonta Department Store, 919 F. Supp. 597 (N.D.N.Y. 1996) ..........37

Bouboulis v. Transportation Workers Union, 2004 U.S. Dist. LEXIS 12906
    (SDNY 2004).............................................................................................................26

Boucher v. Williams, 13 F. Supp. 2d 84 (Dist. ME 1998).................................................35

Brennan v. Metropolitan Opera Association, 192 F.3d 310 (2d Cir. 1999) .....................18

Byrnie v. Town of Cromwell Public Sch., 73 F. Supp. 2d 204 (D. Conn. 1999)
    243 F.3d 93 (2d Cir. 2001).........................................................................................20

Callery v. U.S. Life Insurance Co., 392 F.3d 401 (10th Cir. 2004)........................31,32,33

Celotex Corp. v. Catrett, 477 U.S. 317 (1986), cert. denied, 484 U.S. 1066 (1988)..........6

Charles v. First UNUM Life Insurance Co., 2004 U.S. Dist. LEXIS 9307
    (W.D.N.Y. 2004) ........................................................................................................35

Choate v. Transport Logistics Corp., 234 F. Supp. 2d 125 (D. Conn. 2002) ...................18

Coan v. Kaufman, 333 F. Supp. 2d 14 (D. Conn. 2004)......................................30,31,32,33

Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000) ......................................................7

Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995) .......................................26,27

Dennis v. RSL Com U.S.A., 1998 U.S. Dist. LEXIS 10961 .............................................41

Devlin v. Empire Blue Cross, 274 F.3d 76 (2d Cir. 2001) .................................................35

Donovan v. Dillingham, 668 F.2d 1367 (11th Cir. 1982)....................................................41

Douglas v. DynMcDermott, 144 F.3d 364 (5th Cir. 1998) ...........................................22,23

Dunnigan v. Metropolitan Life Insurance Co., 2003 U.S. Dist. LEXIS 2
    (S.D.N.Y. 2003), 298 F.3d 102 (1st Cir. 2002) .............................................................33

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)..........................................................8

Ferrand v. Credit Lyonnais, 2003 U.S. Dist. LEXIS 17202 (S.D.N.Y. 2003),
    aff'd., 2004 U.S. App. LEXIS 19086 (2d Cir. 2004) .....................................................41

Firestone Tire & Rubber v. Bruch, 489 U.S. 101 (1989)....................................................39

Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) ......................................................41

Fortune v. Medical Associates of Woodhull, P.C, 803 F. Supp. 636 (E.D.N.Y.
    1992) ................................................................................................................................37

Galdieri-Ambrosini v. National Realty and Development, 136 F.3d 276 (2nd Cir.
    1998) ................................................................................................................................24

Gerosa v. Savasta, 329 F.3d 317 (2d Cir. 2003), cert. denied, 540 U.S. 967 &
    1074 (2003)................................................................................................................30,32

Giordano v. Gerber Scientific Products, Inc., No. 399CV00712, 2000 U.S. Dist.
    LEXIS 22178 (D. Conn. Nov. 14, 2000), aff'd, 24 Fed. Appx. 79, 82 (2d Cir.
    2001) ..........................................................................................................................18,19

Goeres v. Charles Schwab & Co., 2004 U.S. Dist. LEXIS 20358 (N.D. Cal. 2004) ........31

Graham v. Texasgulf, Inc., 662 F. Supp. 1451 (D. Conn. 1987)........................................23

Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)........29,30,32

Haeberle v. Board of Trustees, 624 F.2d 1132 (2d Cir.1980) ...........................................37

Hanson v. Cytec Industries, 2002 U.S. Dist. LEXIS 6086 ................................................11

Harris v. Forklift System, Inc., 510 U.S. 17 (1993)....................................................8,11,13

Hayes v. Compass Group, 343 F. Supp. 2d 112 (D. Conn. 2004), citing Dister v.
     Continental Group, Inc., 859 F.2d 1108 (2d Cir.1988)................................................38

Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ............................................................17

Hecht v. Colorboard Packaging Corp., 856 F. Supp. 184 (S.D.N.Y. 1994) .....................28

Herman v. Time Warner Inc., 56 F. Supp. 2d 411 (S.D.N.Y.1999) .................................40

Hines v. Mass. Mutual Life Insurance Co., 43 F.3d 207 (5th Cir. 1995) .........................33

Holtz v. Rockefeller & Co., 258 F.3d 62 (2d Cir. 2001) ...................................................12

Inter-Modal Rail Employees Association v. Atchison, Topeka and Santa Fe
     Railway Co., 520 U.S. 510 (1997)...............................................................................25

Jones v. John Morrell & Co., 354 F.3d 938 (8th Cir. 2004) .............................................11

Kascewicz v Citibank, N.A., 837 F. Supp. 1312 (S.D.N.Y. 1993)....................................39

Keiser v. CDC Investment Management Corp., 2004 U.S. Dist. LEXIS 4109
     (S.D.N.Y. 2004)...........................................................................................................36

Kishter v. Principal Life Insurance Co., 186 F. Supp. 2d 438 (S.D.N.Y. 2002) ..............32

Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480
     U.S. 932 (1987)..............................................................................................................6

Lacoparra v. Pergament Home Centers, Inc., 982 F. Supp. 213 (S.D.N.Y. 1997)...........39

Ladouceur v. Credit Lyonnaise, 2005 U.S. Dist. LEXIS 870 (S.D.N.Y. Jan. 19,
     2005) ........................................................................................................................36,37

Lee v. Burkhart, 991 F.2d 1004 (2d Cir. 1994) .................................................................37

Lizardo v. Denny's Inc., 270 F.3d 94 (2d Cir. 2001) ........................................................21

MacKay v. Rayonier, 75 F. Supp. 2d 22 (D. Conn. 1999) ................................................38

Manoharan v. Columbia  University College of Physicians & Surgeons, 842 F.2d 590 (2d Cir. 1988)................................................................................................23

Matthews v. Milton, 362 F.3d 1172 (9th Cir. 2004)..........................................................31

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ..............................................16

McLee v. Chrysler Corp., 38 F.3d 67 (2d Cir. 1994) ..........................................................7

McVeigh v. Philadelphia National Bank, 796 F. Supp. 173 (E.D. PA 1992), aff'd., 903 F. 3d 224 (3d Cir. 1993)...........................................................................................42

Millane v. Becton Dickinson & Co., 84 F. Supp. 2d 282 (D. Conn. 1999)......................19

Millsap v. McDonnell Douglas Corporation, 368 F.3d 1246 (10th Cir. 2004) ................29

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) ...................................8

Ost v. West Suburban Travelers Limousine, Inc., 88 F.3d 435 (7th Cir. 1996)...............21

Parke v. First Reliance Standard Life Insurance Company, 368 F.3d 999 .......................33

Perry  v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997)....................................................7

Raskin v. Wyatt Co., 125 F.3d 55 (2d Cir. 1997) ...............................................................7

Reeves v. Sanderson Plumbing Products, 530 U.S. 133 (2000) .......................................16

Rizzo-Puccio v. College Aux. Services, 71 F. Supp. 47 (N.D.N.Y. 1999) ......................13

Rosser v. Laborer's International Union of North America , 616 F.2d 221 (5th Cir 1980) ..........................................................................................................................23

Sampson v. Rubin, 2002 U.S. Dist. LEXIS 20877 (D. Mass. 2002)............................30,39

Sands v. Runyon, 28 F.3d 1323 (2d Cir. 1994) .................................................................13

Sarno v. Douglas Elliman, 183 F.3d 155 (2d Cir. 1999) ...............................................21,22

Schonholz v. Long Island Jewish Medical Ctr., 87 F.3d 72 (2d Cir.), cert. denied, 519 U.S. 1008 (1996)...................................................................................................36

Schultz v. Texaco Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001)........................................40

Scotto v. Almenas, 143 F.3d 105 (2d Cir. 1998) ..............................................................38

Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958 (8th Cir. 1999) .......................................13

Silverman v. Mutual Benefit Life, 941 F. Supp. 1327 (E.D.N.Y. 1996), aff'd., 138
    F. 3d 98 (2d Cir. 1998)..................................................................................................27

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001) ......................21

Soderberg v. Gunther International, No. 3:02CV2010 (PCD), 2004 U.S. Dist.
    LEXIS 292 (D. Conn. Jan. 5, 2004).............................................................................17

Talanda v. KFC National Management Co., 140 F.3d 1090 (7th Cir. 1998) ....................24

Tardif v. General Electric Co., 2000 U.S. Dist. LEXIS 21372 (D. Conn. 2000) .........25,28

Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995)...........................................................8

Torres v. Pisano, 116 F.3d 625 (2d Cir. 1997), cert. denied, 522 U.S. 997 (1997) ............8

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985) ...........................................16

Varity, 516 U.S. at 491-95 ..................................................................................................31

Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003) ....................................11

Weinreb v. Hospital for Joint Diseases, 285 F. Supp. 382 (S.D.N.Y. 2003)....................33

Whitfield v. Torch Operating Co., 935 F. Supp. 2d 822 (E.D. LA 1996) .........................26

Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994).......................................................16

## FEDERAL STATUTES

29 U.S.C. § 1002(21) ..........................................................................................................40

29 U.S.C. §§ 623(a)(1)........................................................................................................16

§§ 404, 502(a)(3), 29 U.S.C. §§ 1104, 1132(a)(3)..............................................................25

§ 502(a)(3), 29 U.S.C. § 1102(a)(3)....................................................................................29

§ 502(c), 29 U.S.C. § 1132(c) .............................................................................................38

§ 502(c), 29 U.S.C. § 1132(c) .............................................................................................40

Under Fed. R. Civ. P. 56(c) ..................................................................................................6

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................ 1

II.  SUMMARY OF FACTS AND ARGUMENT ............................................ 2

III.  ARGUMENT ....................................................................................... 6

   A.  Standard Of Review ...................................................................... 6

   B.  Clark's Discrimination Claims Should Be Dismissed ....................... 7

      1.  **Because The Conduct Complained Of Was Neither Severe Nor Pervasive, Summary Judgment Is Warranted On Clark's Hostile Work Environment Claims** ...................................................................... 9

      2.  **Because The Conduct Clark Complains Of Was Not Based On His Age, Or On Any Alleged Disability, Summary Judgment Is Warranted On His Hostile Work Environment Claims** .............................................. 14

      3.  **Clark Cannot Establish a Prima Facie Case of Age or Disability Discrimination And, Even If He Could, Defendants Had a Legitimate Business Reason for Terminating His Employment** ........................... 15

   C.  Clark's Retaliation Claims Should Be Dismissed ........................... 21

      1.  **Clark's Conduct As Human Resources Manager Was Not Protected.** 22

      2.  **Clark Could Have No Reasonable Good Faith Belief That Defendants Discriminated Against Him** ....................................................... 23

   D.  Summary Judgment Should Enter In Favor Of Defendants On Clark's ERISA Claims ............................................................................. 25

      1.  **Clark's Breach Of Fiduciary Duty Claim (First Claim For Relief) Should Be Dismissed** ................................................................. 25

      2.  **Clark's Second Claim For Relief Should Be Dismissed Because, Absent Egregious Circumstances Which Are Not Present Here, Technical ERISA Violations Do Not Give Rise To Substantive Remedies** ................... 33

      3.  **Clark's Estoppel Claims Fail Because There Is No Evidence To Support The Basic Elements Required To Sustain His Claims** ................... 35

      4.  **Defendants Are Entitled To Summary Judgment On Clark's Fourth Claim For Relief** ........................................................................ 37

      5.  **Clark's Sixth Claim For Relief, Based On Defendant's Refusal To Provide Documents Concerning The Terminated LTD Plan Should Be Dismissed** .................................................................................. 38

      6.  **Clark's First, Second, Third and Sixth Claims For Relief Should Be Dismissed As Against Vermont Pure** .............................................. 39

   E.  Summary Judgment Should Enter In Favor Of Defendants On Clark's Severance Plan Claim ................................................................... 40

      1.  **Crystal Rock Had No Severance Plan** ....................................... 40

IV.  CONCLUSION .................................................................................... 42

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| **BRIAN CLARK,**<br><br>                    **Plaintiff,**<br><br>    **-against-**<br><br>**VERMONT PURE HOLDINGS, LTD.,<br>CRYSTAL ROCK SPRING WATER<br>COMPANY, CRYSTAL ROCK LONG<br>TERM DISABILITY PLAN, and<br>CRYSTAL ROCK SEVERANCE<br>PLAN,**<br><br>                    **Defendants.** | **Civ. No: 3:02CV2278 (MRK)**<br><br><br><br>**February 16, 2005** |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.       PRELIMINARY STATEMENT**

Defendants, Vermont Pure Holdings, LTD. ("Vermont Pure"), Crystal Rock Spring Water Company ("Crystal Rock"), Crystal Rock Long Term Disability Plan ("LTD Plan") and Crystal Rock Severance Plan ("Severance Plan") submit this Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment on the ten Claims for Relief in the Third Amended Complaint ("Compl.") of plaintiff, Brian Clark ("Clark"). As is set forth in detail below, there is no genuine issue as to any material fact, and summary judgment should enter in favor of defendants.

1

## II.    SUMMARY OF FACTS AND ARGUMENT

Defendants' Local Rule 56(a)1 statement details the undisputed facts. The numbered paragraphs in defendants' 56(a)1 statement are referenced throughout this brief as ("F., ¶ ___.").

Clark worked for Crystal Rock Water Company for 29 years. He began his career as route salesman, and later received positions of increased responsibility, including sales manager and human resources manager. In spite of the favorable treatment Clark received from Crystal Rock, in an effort to extract a better retirement package, Clark made false claims of age and disability discrimination after he had decided to retire and move to Florida.

After extensive discovery, it is clear that there is no disputed issue of material fact and, therefore, defendants are entitled to judgment as a matter of law. The following is a brief summary of the undisputed facts, and the reasons why they entitle defendants to prevail, as a matter of law, on each of Clark's claims:

Clark started working for Crystal Rock in 1972. Clark admits that he faced challenges throughout his career at Crystal Rock, including well before he was in the age group protected against discrimination, and well before he was diagnosed with Parkinson's disease. Clark found his job stressful at times. He feels he was not adequately supported in 1992 when he moved into the sales manager's position, and his boss was not as positive as Clark would have liked him to be.

In 1999, Clark was diagnosed with Parkinson's disease. Clark concedes that everyone at Crystal Rock was supportive after his diagnosis. Effective

2

July 1, 2000, at Clark's request, he was given the job of human resources manager. Later that year, Clark received the largest bonus of his career.

Clark had long wanted to move to Florida, and spoke of that goal at Crystal Rock. In late 2001, Crystal Rock asked Clark if he would like to discuss the possibility of a package that might enable him to fulfill his dream of moving to Florida. Clark initially declined; but then in early 2002 Clark approached Crystal Rock to discuss the possibility of a retirement package.

Before Clark and Crystal Rock agreed on the terms of his severance, Clark made definite plans to move to Florida. Because Clark was dissatisfied with the package proposed by Crystal Rock, he hired an attorney, who in a demand letter to Crystal Rock made claims of disability and age discrimination in an effort to leverage a better deal. Crystal Rock refused to be blackmailed, and told Clark he would have to retract his unfounded charges in order to continue working at Crystal Rock. Clark refused to do so and was terminated. Consistent with his plan, Clark moved to Florida and started a business.

Clark's discrimination and retaliation claims (Seventh through Tenth Claims for Relief) fail, as a matter of law. Clark concedes he was not the victim of any form of harassment after his Parkinson's diagnosis, and he has no evidence that he was a victim of age discrimination. To the contrary, Clark's admissions and other evidence show that Clark was very well treated by Crystal Rock before and after his Parkinson's diagnosis. The minor incidents to which Clark points in an attempt to support his discrimination claim fall well short of constituting the material issue of

fact necessary to avoid summary judgment on his claims of age and disability discrimination.

For example, Clark claims he did not get support in the human resources position; however, he concedes he felt a similar lack of support years earlier when he became sales manager. In addition, Clark admits the lack of support in the human resources job resulted from the fact the company was stretched thin as it dealt with the merger pursuant to which Vermont Pure acquired Crystal Rock's stock. Clark also claims he was yelled at on two occasions; however, he concedes that the manager who yelled at him apologized, and that the yelling was not done at the behest of Crystal Rock's president. Clark further claims that his job performance was criticized; however, he admits that more than a year before his Parkinson's diagnosis he was happy to hear a positive remark about his performance as such remarks were so unusual, even during the time well before his diagnosis. In a desperate attempt to justify the charge of discrimination, Clark even claims that the move to human resource manager, which he requested, is evidence of discrimination, and that the bonuses he was paid also evidence discrimination, in spite of the fact he was paid a record bonus after his diagnosis with Parkinson's. The "evidence" to which Clark points simply does not, as a matter of law or logic, support any claim of discrimination.

Because Clark's discrimination claim was made in an effort to leverage a better retirement package after he had made plans to move to Florida, and not as a good-faith concern about treatment by Crystal Rock, Clark's retaliation claim similarly fails. Clark was terminated for a legitimate and non-discriminatory reason,

i.e., his conduct in making false allegations of discrimination, and his failure to retract those allegations. There is no evidence to the contrary; therefore, summary judgment on the retaliation claim is appropriate.

Clark also brought a variety of claims (First through Fourth Claims for Relief) related to the decision by Crystal Rock to terminate the LTD Plan. Clark's claims regarding the termination of the LTD Plan fail for two reasons: (1) Vermont Pure, which acquired Crystal Rock's stock after the LTD Plan was terminated, is an improper party to this claim; and (2) the plan was properly terminated according to its own terms.

The Employee Retirement Income Security Act ("ERISA") does impose any liability on Vermont Pure for events that occurred at Crystal Rock before its acquisition by Vermont Pure. Accordingly, Clark's claims regarding the termination of the LTD Plan should be dismissed against Vermont Pure. The claims regarding the termination of the LTD Plan also fail (regardless of the defendant) because Crystal Rock was authorized to terminate the LTD Plan by the express terms of the Plan and did so in accordance with those terms. Moreover, the conduct about which Clark complains did not involve fiduciary duties under ERISA. Clark's claims that Crystal Rock acted in bad faith or purposely concealed the fact that the Plan was being terminated are unsupported by any evidence. Further, ERISA does not provide the remedies Clark seeks (restitution and reinstatement in the non-existent LTD Plan) based on the undisputed facts here.

Clark conceded that Crystal Rock did not have a routine practice or policy of paying severance, and that he does not know of anyone at Crystal Rock who

ever received severance without first signing a release of claims against the company. Because Crystal Rock never had a severance plan, the Fifth Claim should be dismissed against the non-existent defendant, Crystal Rock Severance Plan.

The Sixth Claim for Relief, regarding the failure to provide LTD Plan documents, fails because Clark made the document requests solely for the purposes of litigation, and not as a result of any legitimate inquiry into his benefit rights.

## III.    ARGUMENT

### A.    Standard Of Review

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the record presented to the Court shows that there is no genuine issue as to any material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986), cert. denied, 484 U.S. 1066 (1988). "Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (citation omitted). Defendants' burden of establishing that there is no genuine issue of material fact in dispute is satisfied if defendants can point to an absence of evidence to support an essential element of Clark's claim. Celotex Corp., 477 U.S. at 322-23. In order to defeat summary judgment, Clark must present evidence that would be sufficient to support a jury verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 247-248 (emphasis in original).

The Second Circuit has stated that "absent a triable issue of fact as to discrimination, summary judgment for the defendant is appropriate." Raskin v. Wyatt Co., 125 F.3d 55, 64 (2d Cir. 1997) (affirming summary judgment for employer in ADEA case where employee failed to make sufficient showing of discrimination); see also McLee v. Chrysler Corp., 38 F.3d 67 (2d Cir. 1994).

There are no material issues in dispute in this matter that would preclude the entry of summary judgment in favor of defendants. Accordingly, Clark's claims should be dismissed.

**B.    Clark's Discrimination Claims Should Be Dismissed**

Clark claims that defendants subjected him "to a hostile and discriminatory work environment on the basis of his disability and/or age." (Compl., ¶ 59.) Clark claims that defendants subjected him "to a hostile and discriminatory work environment on the basis of his disability and/or age." (Compl., ¶ 59.) Clark's claims are based on a few isolated incidents that are typical of those that occur everyday in the workplace. The incidents provide no evidence of a hostile work environment. To sustain a hostile work environment claim, Clark must establish "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous or concerted to have altered the conditions of [his] working environment." Alfano v. Costello, 294 F. 3d 365, 374 (2d Cir. 2002) (quoting Cruz v. Coach Stores, Inc., 202 F. 3d 560, 570 (2d Cir. 2000); also see Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (analyzing hostile work

environment claim under Title VII). To determine whether a work environment is sufficiently hostile or abusive to support liability, courts examine all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "[I]n order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.5 (2d Cir. 1995). The alleged harassing conduct "must be extreme to amount to a change in terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Moreover, an "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. at 787 (emphasis added). To satisfy the objective component of the analysis, the conduct must be offensive or pervasive enough to create an environment that a reasonable person would find hostile or abusive. Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997), cert. denied, 522 U.S. 997 (1997). In addition, the plaintiff must actually perceive the employment environment to be abusive. Harris, 510 U.S. at 21-22. In evaluating claims of hostile work environment harassment, courts must keep in mind that the applicable statutes do not create a "general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (citation omitted; internal quotation marks omitted).

1.    **Because The Conduct Complained Of Was Neither Severe Nor Pervasive, Summary Judgment Is Warranted On Clark's Hostile Work Environment Claims**

Clark claims that defendants subjected him "to a hostile and discriminatory work environment on the basis of his disability and/or age." (Compl., ¶ 59.) Clark's claims are based on a few isolated incidents that are typical of those that occur everyday in the workplace. The incidents provide no evidence of a hostile work environment.

Rather than describing an extraordinarily severe single incident or a continuous, concerted pattern of discriminatory conduct, Clark's relies on the following isolated, minor incidents to support his hostile work environment claims: (1) when Clark transferred to Human Resources Manager, he had increased job responsibilities[1] (Compl., ¶¶ 34, 35; F., ¶ 18.); (2) Clark received an annual bonus of $4,000 in 2001 which was smaller than the bonus he had received in previous years (Compl., ¶ 44; F., ¶ 26.); (3) Jurasek, Crystal Rock's controller, yelled at Clark in front of other employees on one occasion, and also raised his voice to Clark on another occasion when they were alone in Crystal Rock's offices on a Saturday[2] (Compl., ¶ 45; F., ¶¶ 22, 23.); (4) on occasion, Crystal Rock's President, Peter Baker ("Baker"), raised his voice to Clark in the presence of other employees (Compl., ¶ 46 F., ¶ 24.) (There were also occasions when Clark raised his voice to Baker. (Baker Dep.; F., ¶ 24.)); and (5) Clark makes general allegations that management expressed

---

[1] In paragraphs 34 and 35 of the Complaint, Clark alleges that despite his requests, he was not given additional staff to help him fill his job responsibilities. At his deposition, Clark testified that he was given some additional assistance, and to the degree he didn't get more assistance, he assumed it was because the company's resources were stretched following the Crystal Rock-Vermont Pure merger. (Clark Dep.; F. ¶ 18.)

[2] Only the first incident in which Jurasek yelled at Clark is mentioned in the Complaint.

dissatisfaction with his performance. (Compl., ¶ 20, 33.)  Considered alone, or together, these incidents are insufficient to create a hostile work environment.

### a.    An Increased Workload Is Neither Discriminatory Nor Harassing

Clark encouraged Baker to allow him to become the human resources manager, because Clark felt that move would it would be in his own best interest. (Clark Dep.; F., ¶ 17.)  Clark knew that the merger was imminent when he accepted the human resources job. (Clark Dep.; F., ¶ 8.)  He had no substantive human resources experience (Compl., ¶ 23; F., ¶ 13.), and he must have known that he faced a challenge in his new position in the merged company.  The fact that Clark had to work hard in his new position was apparently nothing new to him: he had worked hard for at least 20 years before becoming human resources manager, and he found his previous sales manager position to be stressful. (Clark Dep.; F., ¶¶ 9,19.)  Clark was aware that he was not the only one facing a heavy workload following the merger.  He knew that everyone at Crystal Rock was quite busy. (Clark Dep.; F. ¶, 20.)  Clark asked for additional support to assist him in meeting his new responsibilities, and he received some assistance. (Clark Dep.; F., ¶ 18.)  Clark's claim of a hostile work environment based on his allegation he was not given sufficient support as the human resources manager should be rejected.  Clark felt he was not given sufficient support as early as 1992. (Clark Dep.; F., ¶¶ 9, 21.) The fact that he felt overburdened is not evidence of discrimination.

### b. The Decrease In Clark's Bonus Was Due To His Learning The Human Resource Function

Clark began his new human resources job on July 1, 2000. (Compl., ¶ 23; F., ¶ 13.) He had no background in the human resources field. (Compl., ¶ 23; F., ¶ 13.) The fact that his 2001 bonus was smaller than his bonus in previous years is not surprising: he was new in his position and was obviously still trying to learn his job. (Baker aff.; F., ¶ 14.) Thus, the fact that Clark received a $4,000 bonus in 2001 bonus is not evidence of discrimination.

### c. Raised Voices Do Not Render the Environment Hostile

Raised voices are a typical phenomenon in a working environment. The fact that Jurasek and Baker yelled while criticizing Clark's performance on a few isolated occasions (Clark Dep.; Baker Dep.; F., ¶¶ 22, 24.) is not evidence that Clark's workplace was "permeated with discriminatory intimidation, ridicule and insult." Harris v. Forklift Systems, Inc., 510 U.S. at 21; Jones v. John Morrell & Co., 354 F.3d 938 (8th Cir. 2004) (court affirmed entry of summary judgment in favor of employer on plaintiff's Title VII hostile work environment claim, where plaintiff alleged that foreman criticized her performance almost on a daily basis); Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003) (supervisor's comments that plaintiff had "a typical Hispanic macho attitude" and his statement that "Hispanics do good in the field," combined with supervisor's yelling at plaintiff in front of others held not sufficiently severe and pervasive to support hostile work environment

claim); <u>Hanson v. Cytec Industries</u>, 2002 U.S. Dist. LEXIS 6086[3] (D. Conn. 2002) (supervisor yelled at employee and told employee he would "talk to you any fucking way I want to, I'm your supervisor"; supervisor also failed to call employee for overtime assignment, assigned employee duties outside employee's job classification, and left employee an assignment in a different location on one occasion; court held these incidents failed, as a matter of law to support a hostile work environment claim).

> **d.    Management's Perceived Dissatisfaction With Clark's Performance Is Insufficient As a Matter of Law To Overcome Summary Judgment**

Clark's general allegations that management expressed dissatisfaction with his performance are not supported by the evidence. If Clark sensed hostility from Crystal Rock's management, it was based on his own perceptions and not on anything management said or did. Clark was never told that his job was in jeopardy or that his performance was unsatisfactory. Before his Parkinson's diagnosis, Clark felt "out of the loop" because he sensed that Baker had a close relationship with John Woermer.[4] (Clark Dep.; F., ¶¶ 10, 12.) Well before his Parkinson's diagnosis, Clark felt uncomfortable about the negative feedback he sensed about his job performance, and he was surprised when Baker complimented his performance while they attended a convention together in New Orleans. (Clark Dep.; F., ¶ 11.) None of this is evidence of a hostile work environment. <u>Holtz v. Rockefeller & Co.</u>, 258 F. 3d 62, 84 (2d Cir. 2001) (Second Circuit held that a plaintiff's allegations "that her supervisor

---

[3] Copies of all cases with LEXIS citations are supplied herewith.
[4] Woermer's employment at Crystal Rock was terminated for poor performance in November 2001. (Baker aff.; F. ¶ 14.)

and several co-workers formed a "little clique of Irish people and they would talk about being Irish a lot,' and that she was 'out of the loop' fell well short of the sort of 'materially adverse change in the terms and conditions of employment' that entitles a plaintiff to damages under Title VII.") (citation omitted).  Moreover, "[C]ourts do not possess the power to compel co-workers to like each other." Sands v. Runyon, 28 F. 3d 1323, 1331 (2d Cir. 1994) (internal quotation mark omitted).

Clark's claims should be dismissed because the alleged incidents fail, as a matter of law, to establish actionable harassment.  Analyzing the conduct Clark complains of according to the criteria recognized by the Supreme Court, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance, a reasonable person could not conclude that defendants' conduct was so extreme and pervasive as to create a hostile and abusive environment. See Harris v. Forklift Sys., 510 U.S. 17 (1993); Rizzo-Puccio v. College Aux. Servs., 71 F. Supp. 47 (N.D.N.Y. 1999) (holding hostile, rude or demeaning behavior by a supervisor which occurred "at least monthly" but did not include profanity, sexually explicit language, offensive comments about plaintiff's gender or appearance, or sexual gestures, and was never physically threatening, was not sufficient to constitute a hostile work environment).

Clark's hostile work environment allegations do not approach the level of conduct required to find violations of the ADA, the ADEA or CFEPA.  At most, he alleges less than a handful of "isolated incidents of offensive conduct" which are "ordinary tribulations of the workplace." Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d

13

958, 966 (8th Cir. 1999). Through his hostile work environment claim, Clark attempts to impose his own general civility code on the workplace. This is not the purpose of the laws on which Clark purports to rely.

> **2.      Because The Conduct Clark Complains Of Was Not Based On His Age, Or On Any Alleged Disability, Summary Judgment Is Warranted On His Hostile Work Environment Claims**

Clark's hostile work environment claims also fail because there is no evidence that any of the complained-of conduct was directed against him because of his age or any claimed disability. "Everyone can be characterized by sex, race, ethnicity, or disability (real or perceived); and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

There is no evidence that any of the conduct alleged in the complaint was directed against Clark based on age or disability. Clark's claim that he was given a smaller bonus in 2001 because of his age or disability rests only on his speculation. Contrary to his allegation of disability, when Baker and other Crystal Rock employees learned of Clark's Parkinson's diagnosis they reacted in a positive, supportive manner. Completely undermining his legal claims is Clark's own testimony: "I can't say I feel that anyone ever was hostile towards me because of my disability." (Clark Dep.; F., ¶ 16, 44.) Also contrary to his allegations is the fact that Clark received the largest bonus he ever received as a Crystal Rock employee in 2000 (Baker aff.; Clark Dep..; F., ¶¶ 16, 25), after he had notified Baker that he had

Parkinson's disease.  In short, the undisputed evidence completely contradicts Clark's broad-brush allegations of harassment and support dismissal of these baseless claims.

Jurasek yelled at Clark on two occasions: one involved a mistake Clark had made in failing to report an unpaid bill (Clark Dep.; F., ¶ 22.), and another involved a disagreement that Jurasek had with Clark over an expense Clark was incurring. (Clark Dep.; F., ¶ 23.) There is no evidence that Baker or Jurasek ever commented on Clark's age or alleged disability on the few occasions when they yelled at him, or at any other time.  Clark has no basis for concluding that Baker or Jurasek yelled at Clark on any occasion because of Clark's age or alleged disability.

Clark was transferred, at his request, to the human resources manager position effective July 1, 2000, after his Parkinson's diagnosis. (Compl., ¶ 23; F., ¶¶ 7, 16-17.).  There is no evidence to even suggest that the decision to make Clark Crystal Rock's human resources manager was influenced by his age or his disability. It is counter-intuitive to assume that Crystal Rock discriminated against Clark based on his age or disability by allowing him to assume this important position.

### 3. Clark Cannot Establish a Prima Facie Case of Age or Disability Discrimination And, Even If He Could, Defendants Had a Legitimate Business Reason for Terminating His Employment

As discussed above, there is no evidence that Clark was harassed because of his age or disability.  Nor is there any evidence that defendants discriminated against Clark.  Baker began discussions with Clark about a possible retirement package because Clark had made it clear that he wanted to retire to Florida and Baker thought the possibility of retiring would be attractive to Clark. (Baker aff.; F., ¶ 27, 28.)  When Clark told Baker he was not interested in retiring, the subject

wasn't discussed again until Clark renewed the discussion. (Clark Dep.; F., ¶ 28, 29.) Clark complains he was discriminated against when he wasn't offered a fair retirement package (Clark Dep.; Compl., ¶ 48, 49; F., ¶ 31.). Yet, he testified that he did not know of any individual at Crystal Rock who was offered a package equivalent to the one he was offered, or who received severance benefits from Crystal Rock without signing a release. (Clark Dep.; F., ¶¶ 64-65.)  In other words, he cannot point to anyone who was treated differently than he, rendering his discrimination claim fatally flawed.

The ADEA prohibits employers from discriminating against individuals who are at least 40 years of age. 29 U.S.C. §§ 623(a)(1), 631(a).  ADEA claims are analyzed under the familiar test established in McDonnell Douglas Corp. v. Green, 411 US 792, 802 (1973); Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)).

Under the McDonnell Douglas test, in order to establish a prima facie of age discrimination case Clark must show that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was subjected to an adverse employment decision; and (4) the circumstances give rise to an inference of discrimination. Woroski v. Nashua Corp., 31 F.3d at 108 (citation omitted).

If Clark establishes a prima facie case, the burden shifts to defendants to offer a legitimate, nondiscriminatory reason for their actions. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000).  Clark must then prove that defendants' reason was not their true reason, but merely a pretext for age discrimination. Id. at 143 (citing St. Mary's Honor Center v. Hicks., 509 U.S at 507-

508). To prevail on his claim of age discrimination, Clark must show that his age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). "[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." Id.

### a.    Clark's Age Was Not A Factor In His Termination

By early 2002, Clark decided that he wanted to leave Crystal Rock and to move to Florida. (Clark Dep.; F., ¶¶ 27, 30, 33-35, 38.) After consulting with his attorney, he made unfounded claims (never previously discussed) that defendants had discriminated against him, in the hopes of extracting a better retirement package from defendants. (Baker aff.; F., ¶¶ 39-42.) Defendants felt they could not retain Clark as human resources manager under such circumstances. In an effort to preserve Clark's employment, defendants asked him to retract the unfounded claims in his attorney's letter. (Clark Dep.; F., ¶ 45.)  When Clark refused to retract the claims, his employment was terminated. (Clark Dep.; F., ¶ 45.) Clark has no evidence, however, to support an inference of discrimination.

"Summary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only 'unsupported assertions,' 'conjecture or surmise,' or 'conclusory statements' to support an essential element of her case." Soderberg v. Gunther International, No. 3:02CV2010 (PCD), 2004 U.S. Dist. LEXIS 292, *11 (D. Conn. Jan. 5, 2004) (The court held that a reasonable fact finder could not conclude that a plaintiff was terminated because of her age where she did not witness any type of age discrimination during her employment but "could not think of any reason to explain her termination and eventually surmised that she must

17

have been terminated because of her age.") (quoting <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995)). "[T]he Second Circuit has recently and repeatedly affirmed grants of summary judgment in ADEA discharge cases in favor of the employer on the grounds that the record evidence was insufficient for a jury to find that the real reason behind the employee's termination was age." <u>Choate v. Transport Logistics Corp.</u>, 234 F. Supp. 2d 125, 128 (D. Conn. 2002) (holding that the plaintiff's allegation that he was asked about a hearing aid was not enough to defeat the employer's motion for summary judgment) (citing <u>Slattery v. Swiss Reins. Am. Corp.</u>, 248 F.3d 87 (2d Cir. 2001); <u>James v. New York Racing Assoc.</u>, 233 F.3d 149 (2d Cir. 2000); <u>Schnabel v. Abramson</u>, 232 F.3d 83 (2d Cir. 2000); <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164 (2d Cir. 2001)).

Clark cannot identify any age-based discrimination. <u>Brennan v. Metropolitan Opera Ass'n</u>, 192 F.3d 310, 318 (2d Cir. 1999) (applying Title VII hostile work environment analysis to age based animus). There is no evidence that defendants made any discriminatory comments about his age. Clark was told that his employment with Crystal Rock could continue if he retracted the statements in his attorney's letter. (Clark Dep.; F., ¶ 45.) Defendants even offered to re-employ Clark after he was terminated. (Clark Dep.; F., ¶ 46.) Clark relies on rank speculation that defendants' conduct might be due to his age.

The individuals who engaged in the conduct Clark describes, and who decided to terminate his employment, are all in the same protected age group as Clark. (Baker aff.; F., ¶ 43.) In the Second Circuit, "[w]here the decision-makers are also in the protected age group an inference may be drawn that there is no age-based

animus." Giordano v. Gerber Scientific Products, Inc., No. 399CV00712, 2000 U.S. Dist. LEXIS 22178, *20 (D. Conn. Nov. 14, 2000), aff'd, 24 Fed. Appx. 79, 82 (2d Cir. 2001); see also Millane v. Becton Dickinson & Co., 84 F. Supp. 2d 282, 287 (D. Conn. 1999) (there was no inference of age discrimination where one of the decision makers was a year younger than the plaintiff and both decision makers were in the protected class). Under Giordano, these undisputed facts undermine any reasonable inference of age discrimination. Because Clark's claim of age-based discrimination is based on mere speculation, and no evidence, it must be dismissed.

### b.     Clark Cannot Establish A Prima Facie Case Of Disability Discrimination

In analyzing discrimination claims under the ADA, Courts apply the same burden shifting analysis used in Title VII discrimination claims. Beason v. United Technologies Corp., 213 F. Supp. 2d 103, 107 (D. Conn. 2002). Discrimination claims under CFEPA are analyzed using this same method. Id. at 115.

To establish a prima facie case of disability discrimination, Clark must prove, by a preponderance of the evidence that: (1) defendants are subject to the ADA or CFEPA; (2) he was disabled within the meaning of the statutes; (3) he was otherwise qualified to perform the essential functions of the job; and (4) he suffered an adverse employment action because of his disability. Beason, 213 F. Supp. 2d at 108.

Clark cannot meet the fourth prong of this test.[5] There is no evidence that he suffered an adverse employment action because of his Parkinsons diagnosis. Clark experienced stress and felt uncomfortable about his job situation before his

---

[5] Defendants do not concede that Clark was disabled or perceived as disabled within the meaning of the ADA or CFEPA, but are not raising that issue in their motion for summary judgment.

Parkinson' disease had been diagnosed. (Clark Dep.; F., ¶¶ 9, 11, 12, 15, 19, 21.) Clark testified that Baker and Crystal Rock's employees were supportive and showed no hostility when he notified them of his diagnosis. (Clark Dep.; F., ¶¶ 16, 44.) Subsequent to being diagnosed, Clark received the largest bonus he ever received while a Crystal Rock employee (Baker aff.; F., ¶ 25.), and he was allowed to assume the important human resources manager position. (Clark Dep.; F., ¶¶ 7, 17.) He was terminated more than two and one-half years after his Parkinson's diagnosis, not because of his illness, but because he refused to retract the unfounded charges he had made. (Baker aff.; F., ¶¶ 42, 45.) Following Clark's termination, he moved to Florida. Clark Dep.; F., ¶ 49.).

There is no evidence that any of the other conduct Clark complains about was based on his alleged disability, and his disability discrimination claim should be dismissed.

### c. Defendants Discharged Clark For A Legitimate Nondiscriminatory Reason And There Is No Evidence Of Pretext

Defendants had a legitimate, nondiscriminatory reason for terminating Clark's employment. Management was not bound to retain Clark as human resources manager when it was felt that he was making unfounded claims, in an effort to negotiate a richer retirement package.

Clark has no evidence that defendants' reasons for their actions were pretextual. Clark's own feelings, based on no objective facts, are not evidence of pretext. See Byrnie v. Town of Cromwell Pub. Sch., 73 F. Supp. 2d 204, 214 (D. Conn. 1999) (finding that plaintiff's own opinions about his qualifications "fall short of establishing a dispute about the genuineness of the Selection Committee's

assessment of his qualifications") (citing <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1317 (10th Cir. 1999)) (holding that plaintiff's own opinions about her qualifications and the fairness of the interviewers' assessments of her was not evidence of pretext), <u>rev'd in part on other grounds</u>, 243 F.3d 93 (2d Cir. 2001)); <u>Ost v. West Suburban Travelers Limousine, Inc.</u>, 88 F.3d 435, 441 (7th Cir. 1996) (holding that "[i]t is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions"). Clark is unable to rebut defendants' legitimate reason with his subjective belief that he was discriminated against because he can think of no other reason for defendants' actions. <u>Lizardo v. Denny's Inc.</u>, 270 F.3d 94, 104 (2d Cir. 2001) (Summary judgment affirmed where plaintiffs did "little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient.")

For the reasons stated, Clark's discrimination claims should be dismissed.

### C.    Clark's Retaliation Claims Should Be Dismissed

Clark alleges that defendants retaliated against him by terminating his employment after he claimed (through his attorney's letter) that he had been discriminated against and subjected to a hostile working environment. (Compl., ¶ 59.)

"To establish a prima facie case of retaliation under the ADA, [Clark] must establish that (1) [he] was engaged in an activity protected by the ADA, (2) [defendants were] aware of that activity, (3) an employment action adverse to [Clark] occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." <u>Sarno v. Douglas Elliman</u>, 183 F.3d 155, 159 (2d