Cir. 1999) (citations omitted). The standard for retaliation claims under the ADEA is the same. <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F. 3d 87, 94 (2d Cir. 2001) (in analyzing retaliatory discharge claim under the ADEA, court applied the same criteria for a prima facie case as was described in <u>Sarno</u> ). Clark's CFEPA claims are analyzed using the same standards that apply to his federal discrimination claims. <u>Ericson v. City of Meriden,</u> 113 F. Supp. 3d 276, 283 ("Connecticut courts look to federal precedent in the employment discrimination arena for guidance in enforcing the state anti-discrimination statutes.") (citations omitted).

### 1.      Clark's Conduct As Human Resources Manager Was Not Protected

The Court need not view Clark's conduct in having his attorney write to Baker and make the unfounded claims that Clark was a victim of discrimination and retaliation with blinders on.  As human resources manager, Clark served as Crystal Rock's principal liaison with company employees. (Baker aff.; F., ¶ 42.) Defendants were not bound to retain Clark as Crystal Rock's human resources manager when they felt that he was making an unfounded accusation of discrimination in an effort to extract a richer retirement package. <u>Douglas v. DynMcDermott</u>, 144 F. 3d 364, 373 (5th Cir. 1998) ("Not all activities taken in opposition to an employers' perceived discriminatory practices . . . remain insulated from reprisal under Title VII's shield.  We have recognized that some conduct, even though engaged in with the most sincere of intentions, may be so inappropriate as to justify the curtailment of the statutorily-afforded safeguards.") (citations omitted).  In <u>Douglas</u> , the plaintiff served as in house counsel for the employer.  She disclosed to third parties interoffice complaints of discrimination against her, in violation of her

22

professional ethical duties. The court noted that "'there may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed.'" Id. at 374 (internal quotation marks omitted) (quoting Rosser v. Laborer's Int'l Union of North America , 616 F. 2d 221, 223 (5th Cir 1980)).

In Graham v. Texasgulf, Inc., 662 F. Supp. 1451 (D. Conn. 1987) the Court observed that when the plaintiff-employee learned of her prospective discharge, she severed ties with her colleagues, and refused to comply with her employer's reasonable demands regarding her needed cooperation to aid in office transition. Her employment was terminated earlier than had been planned, and an arrangement under which the plaintiff was to provide consulting services was not implemented. The plaintiff claimed she was terminated in retaliation for opposing the employer's discriminatory acts. In rejecting her claim, the Court recognized that the need to protect individuals asserting rights under discrimination laws must be balanced against "'an employer's legitimate demands for loyalty, cooperativeness and a generally productive work environment.'" Id. at 1462 (citations omitted).

Defendants were not bound to retain Clark as human resources manager after he made the unfounded claims in his attorney's letter, and refused to retract those claims.

### 2.    Clark Could Have No Reasonable Good Faith Belief That Defendants Discriminated Against Him

As discussed above, defendants' conduct, as a matter of law, did not violate the ADA, the ADEA or CFEPA. Since no reasonable person could have believed that statutes had been violated, Clark's conduct in complaining about

23

defendants' conduct, in his attorney's letter, was not protected conduct within the meaning of the retaliation provisions on which Clark relies. Manoharan v. Columbia University College of Physicians & Surgeons, 842 F. 2d 590, 593 (2d Cir. 1988) (plaintiff failed to establish prima facie retaliation case where he could not demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law") Clark made false claims of adverse treatment based on facts which could not have supported a reasonable, good faith belief that he had been discriminated against or harassed. His conduct was not protected, and Crystal Rock's terminating Clark's employment was not retaliatory. See, e.g., Galdieri-Ambrosini v. National Realty and Development, 136 F.3d 276, 292 (2nd Cir. 1998) (affirming the district court's entry of judgment as a matter of law, after a jury verdict in the plaintiff's favor on a Title VII retaliation claim, because the plaintiff's complaint was not about conduct that rose to the level of discrimination, and the plaintiff could not reasonably believe the complained-of practice was unlawful); Talanda v. KFC National Management Co., 140 F.3d 1090, 1097-98 (7th Cir. 1998) (affirming the district court's grant of summary judgment in favor of the defendant on an ADA retaliation claim because it was unreasonable for plaintiff to have believed that complained-of conduct violated the ADA); EEOC Compliance Manual, Section 8, EEOC Directives Transmittal No. 915.003, May 20, 1998, page 3 (stating that to be protected under the anti-retaliation statutes, manner of opposition to allegedly discriminatory practices must be reasonable, and that opposition in any event must be based on reasonable and good faith beliefs).

24

### D. Summary Judgment Should Enter In Favor Of Defendants On Clark's ERISA Claims

#### 1. Clark's Breach Of Fiduciary Duty Claim (First Claim For Relief) Should Be Dismissed

Clark alleges defendants breached their fiduciary duty under ERISA by: (1) modifying and/or terminating his LTD insurance coverage without warning or notice; (2) modifying and/or terminating the LTD plan without authority under the terms of the plan; (3) failing to communicate to plaintiff material facts affecting his interest which they knew or should have known he did not know and which he needed to know for his protection; and (4) failing to provide a summary plan description which clearly sets forth the circumstances which may result in disqualification, ineligibility or denial or loss of benefits. (Compl., ¶¶ A, 64a-d.)

To succeed on this claim, Clark must demonstrate: (1) a duty imposed on a fiduciary under ERISA; (2) a breach of that duty by the defendants; and (3) cognizable damages resulting from the breach. ERISA §§ 404, 502(a)(3), 29 U.S.C §§ 1104, 1132(a)(3); see also Tardif v. General Electric Co., 2000 U.S. Dist. LEXIS 21372 (D. Conn. 2000). Clark, however, cannot succeed on his claim because Crystal Rock was free to teminate its LTD Plan and did so in accordance with its terms. Summary judgment in favor of defendants is, therefore, appropriate.

##### a. Crystal Rock Was Free To Terminate Its LTD Plan

"Unless an employer contractually cedes its freedom, it is generally free under ERISA, for any reason at any time, to adopt, modify, or terminate its welfare plan." Inter-Modal Rail Employees Association v. Atchison, Topeka and

<u>Santa Fe Railway Co.</u>, 520 U.S. 510, 515 (1997).    Here, there is no evidence that Crystal Rock ceded any of its freedom.

The governing LTD Plan documents are the Policy and the Benefit Summary. (Loftus aff., ¶¶ 4-10.)  Both the Policy and the Benefit Summary provide that Crystal Rock may terminate the insurance. (Loftus aff.; F., ¶¶ 54, 55.)  These provisions clearly satisfy ERISA's amendment procedure requirement, as construed by the Supreme Court in <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 80 (1995)("the literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an amendment procedure").  By letter dated June 28, 2000, Crystal Rock advised the insurer, in accordance with the LTD Plan documents, that Crystal Rock was terminating the LTD insurance, effective as of July 31, 2000. (Loftus aff.; F., ¶ 57.)  Crystal Rock had the right to terminate the LTD Plan and Clark's claim that the termination was without authority or constituted a violation of ERISA Section 402(b)(3) must fail.

Clark claims that he had a vested right to continued coverage under the LTD Plan.[6]  His claim requires the Court to ignore the clear language in the LTD Plan

---

[6]  Clark claims that "defendant failed to reserve the right to amend the LTD Plan in this case, and therefore, promised vested benefits to the plan participants and did not have the right to amend or terminate the plan." (PL's Mem. In. Opp'n. To M. Dismiss at 18.) Even if the LTD Plan had not expressly provided that Crystal Rock could terminate the coverage, Clark's argument could not succeed, since the absence of a reservation of the right to amend a plan does not constitute a promise of vested benefits. <u>Bouboulis v. Transportation Workers Union</u>, 2004 U.S.Dist. LEXIS 12906 at * 16 (SDNY 2004) ("The absence of a reservation, however, cannot constitute a promise, nor can it turn language that is not a promise into a promise.")

In addition, even if the express language allowing termination in the LTD Plan documents was ignored, the lack of a mechanism for amending or terminating a welfare benefit plan does not, contrary to Clark's argument render a plan un-amendable or non-terminable. <u>Biggers v. Wittek Industries, Inc.</u>, 4 F.3d 291, 295-96 (4th Cir. 1993)("the power to revoke or amend an employee welfare benefit plan is inherently reserved to the employer under ERISA"); See <u>Adams v. Avondale Industries</u>, 905 F. 2d 943, 949 (6th Cir. 1990);(failure to comply with § 402(b)(3) does not invalidate an amendment absent bad faith or active concealment); <u>Aldridge v. Lily-Tulip, Inc. Sal. Ret. Plan</u>, 40 F. 3d 1202, 1211-12 (11th Cir. 1994); see also <u>Singleton v. San Jacinto Hospital</u>, 31 Employee Benefit

26

documents which authorized Crystal Rock's termination of the Plan, and it should be rejected.

**b.      Crystal Rock Breached No Fiduciary Duty**

There is no dispute in this case that an employer's amendment or modification of an ERISA plan involves no fiduciary function, when the right to amend or modify has been reserved. (Mem. M. Dismiss at 8.)  <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 78-81 (1995).

Clark bases his breach of fiduciary duty claim "on the fact that defendants did not reserve the right to terminate the LTD Plan under ERISA, failed to notify the plan participants that the Plan could be amended or terminated in violation of ERISA's reporting and disclosure requirements, failed to notify the plan participants that the plan had been terminated and failed to inform the plan participants of any conversion rights under the policy. . . ." (PL's Mem. In. Opp'n. To M. Dismiss at 16.)

Clark's first two claims fail since the LTD Plan documents clearly state the Plan could be terminated, and since Clark admits that he received a Summary Plan Description and other documents that were distributed at annual seminars regarding Crystal Rock's benefits programs. (Clark Dep.; F., ¶ 50.)

A claimant in a breach of fiduciary duty action cannot prevail absent a showing that, but for the alleged breach, he would have recovered the relief sought. <u>Silverman v. Mutual Benefit Life</u>, 941 F. Supp. 1327 (E.D.N.Y. 1996), <u>aff'd.</u>, 138 F. 3d 98 (2d Cir. 1998). A plaintiff seeking individualized relief for breach of fiduciary

---

Cases 1178 (S.D. Texas 2003); <u>Whitfield v. Torch Operating Co.</u>, 935 F. Supp. 2d 822 (E.D. LA 1996).

duty "must demonstrate that the alleged breach <u>caused damages recoverable under Section 502(a)(3)</u>." <u>Tardif v. General Electric</u>, 2000 US Dist. LEXIS 21372, *30 (D. Conn. 2000)(emphasis added).[7]

Clark's claim that defendants failed to give notification that the LTD Plan had been terminated, effective July 31, 2000, fails because Clark suffered no damages as a result of the alleged lack of notice. The LTD Plan paid benefits to covered employees who were unable to work due to disability. For an employee to be considered disabled under the Plan, he must be rendered unable to work while covered by the Policy. (Loftus aff.; F. ¶ 48.) An employee's coverage ends, <u>inter alia</u>, when the Policy terminates, or, if earlier, on the employee's last day of employment with Crystal Rock. (Loftus aff., F. ¶ 55.)

Clark's breach of fiduciary duty claim also fails, as a matter of law, unless he can sustain the burden of proving the "necessary connection" between the alleged breach and actual economic losses suffered. <u>Hecht v. Colorboard Packaging Corp.</u>, 856 F. Supp. 184, 190 (S.D.N.Y. 1994). Clark cannot do so.

Clark never would have recovered anything under the LTD Plan. It is undisputed that Clark was not disabled at any time during his employment by Crystal Rock. He worked full time until his employment at Crystal Rock ended, sought full time employment immediately thereafter, and now works full time in his restaurant. (Clark Dep.; F., ¶ 49.) Since the inability to work is a prerequisite for disability benefits under the LTD Plan (Loftus aff.; F., ¶ 48), the required causal link between the breach and the resultant damages is fatally lacking.

---

[7] <u>See also</u> <u>Becker v. Eastman Kodak</u>, 120 F. 3d 5, 10 (2d Cir. 1997) (although court found that defendant breached its ERISA fiduciary duty, case was remanded to district court to address "the question of causation"); Restatement (Second) of Trusts, § 212 (noting causation requirement).

28

Clark claims that if he had been aware that the LTD Plan could be modified or terminated, he would have purchased additional private insurance. (Compl., ¶¶ 28, 29.) His claim should be rejected, since based on what Clark was earning, and considering the private LTD insurance he did buy, Clark had as much private disability coverage as was available to him under applicable industry standards. (Katz report; F., ¶ 61.)

Finally, Clark's claim that defendants failed to notify plan participants of conversion rights fails because the LTD Plan had no conversion rights. (Loftus aff., F.; ¶ 62.) Thus, defendants are entitled to judgment as a matter of law.

### c.    The Remedies Clark Seeks Are Not Available Under ERISA[8]

#### i.    ERISA § 502(a)(3) Provides Only For Equitable Relief[9]

ERISA § 502(a)(3) limits Clark's remedies to "appropriate equitable relief." ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3).  The statute does not authorize Clark's claims for restitution (Compl., ¶ VI, 5.) and reinstatement of coverage (Compl., ¶¶ VI, 3,4.)  In Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court reaffirmed its prior holding that the term "equitable relief" in § 502(a)(3) means only "those categories of relief that were typically available in equity. . . ."  Id., at 210 (citation omitted).  The Court determined "that, except in cases of constructive trusts or equitable liens, relief that involves the payment of money is not equitable relief within the meaning of ERISA.

---

[8] The arguments in this section apply to Clark's first four Claims For Relief.

[9] It is not clear whether Clark seeks backpay for an alleged ERISA violation.  Such relief is unavailable, in any event.  Section 502(a)(3) of ERISA provides the exclusive remedies for a Section 510 violation.  The Tenth Circuit recently held that back pay is not "appropriate equitable relief" under Section 502.  Millsap v. McDonnell Douglas Corporation, 368 F.3d 1246 (10th Cir. 2004).

29

(Mem. M. Dismiss at 6.) (citing <u>Great-West</u> 534 U.S. at 211-15).

The effect of <u>Great West</u> is to restrict relief under § 502(a)(3) to traditional forms of equitable relief, "almost entirely foreclosing the possibility of receiving money damages for a breach of a fiduciary duty under ERISA." <u>Sampson v. Rubin</u>, 2002 U.S. Dist. LEXIS 20877, *25 (D. Mass. 2002). As a result, ERISA plaintiffs, such as Clark, consistently attempt to characterize the relief requested in 'equitable' terms. Second Circuit courts are instructed to "look to the real nature of the relief sought, not its label" in determining the propriety of a remedy under § 502(a)(3). <u>Gerosa v. Savasta</u>, 329 F. 3d 317, 321 (2d Cir. 2003)(citing <u>Great West</u>), <u>cert. denied</u>, 540 U.S. 967 & 1074 (2003).

### ii. Clark Cannot Be Reinstated In The Terminated LTD Plan

The LTD Plan was terminated by Crystal Rock, effective July 31, 2000. (Loftus aff.; F., ¶¶ 56, 57.) As this Court recently decided in a similar case, a claim to be reinstated in a terminated plan does not involve "appropriate equitable relief."

In <u>Coan v. Kaufman</u>, 333 F. Supp. 2d 14 (D. Conn. 2004), <u>reaffirmed on reconsideration</u>, 2004 U.S. Dist. LEXIS 24806 (D. Conn. 2004), the plaintiff sought to resuscitate a terminated plan and reinstate her participation therein. 333 F. Supp. 2d at 25. There, as here, the plaintiff sought to mask the true nature of the relief sought by couching it in equitable terms. 333 F. Supp. 2d at 26. This Court saw through this transparent effort to "accomplish indirectly that which <u>Great West</u> prevents" an ERISA plaintiff from accomplishing directly, and granted defendant's motion for summary judgment because the relief sought was "not equitable in form or

30

substance." Id. A similar result is mandated here. In Coan, this Court distinguished

the Supreme Court's decision in Varity Corp. v. Howe, 516 U.S. 489 (1996):

> The precise question before the Court [in Varity] with respect to ERISA § 502(a)(3) was whether the provision authorized the individualized equitable relief sought by plaintiffs. While the Supreme Court affirmed the lower court's judgment in favor of plaintiffs and endorsed the availability of individualized equitable relief under § 502(a)(3), the Court did not reinstate the plan-rather, the plaintiffs sought reinstatement as participants in an existing ERISA plan from which they had withdrawn based on misrepresentations. Thus, in contrast to this case, the plan into which the plaintiffs in Varity Corp. sought reinstatement was extant when plaintiffs filed their suit, as was the employer who administered the plan.

Coan, 333 F. Supp. 2d 114 at 26-27 (emphasis supplied).[10]

This Court similarly distinguished the decision in Matthews v. Milton,

362 F. 3d 1172 (9th Cir. 2004), noting that "in Matthews, rectifying the fiduciary's

breach merely resulted in restoring plaintiffs" into an existing plan, and not the

resurrection of a terminated plan. Coan, 333 F. Supp. 2d 114 at 27.

In sum, the case law establishes that while reinstatement of a plaintiff

into an existing plan may be a permissible equitable remedy under § 502(a)(3),

where, as here, "there is no plan into which plaintiff may be 'instated,'" the relief is

legal, and therefore unavailable under § 502(a)(3). Goeres v. Charles Schwab & Co.,

2004 U.S. Dist. LEXIS 20358, *14 (N.D. Cal. 2004). The requested reinstatement of

the terminated LTD Plan and\or Clark's coverage under the Plan is not appropriate

---

[10] The Supreme Court's decision in Varity is further distinguishable because in Varity the issue of whether the relief sought, namely reinstatement, was equitable (and therefore permissible under § 502(a)(3)) was conceded and not before the Court. Callery v. U.S. Life Insurance Co., 392 F. 3d 401, 406 (10th Cir. 2004)(describing this distinction as important). Varity is also distinguishable because in Varity, the Court it was unquestioned that the employer had engaged in "serious deception" to induce employees to switch employers, in order to eliminate financial strains on the employer, resulting in the employees' loss of benefits. Varity, 516 U.S. at 491-95.

31

equitable relief permitted under ERISA Section 502(a)(3) and Clark's claim should be dismissed.[11]

### iii.   Reliance Damages Are Not Appropriate Equitable Relief

As discussed above, Clark suffered no damages as a result of Crystal Rock's failure to notify him that the LTD Plan could be, or was terminated. Even assuming he had provable damages, they would not be recoverable under ERISA § 502(a)(3).

Clark alleges that Crystal Rock's conduct resulted in his not purchasing adequate long-term disability coverage. He claims he is left without sufficient coverage. (Compl., ¶¶ 28-29, 31.) The United States Court of Appeals for the Tenth Circuit recently rejected an almost identical claim. Callery v. United States Life Ins. Co., 392 F. 3d 401, 405-06 (10th Cir. 2004) (divorced former wife of decedent claimed that lack of notice that her beneficiary status under life insurance policy terminated on divorce resulted in her not purchasing alternative insurance on her former husband, who had died; Court rejected her claims of breach of fiduciary duty (Clark's First Claim for Relief) and violation of ERISA's notice requirements (Clark's Second Claim for Relief), stating her claim was not for "appropriate equitable relief" under ERISA § 502(a)(3)").

---

[11]  Clark has also couched his request for relief as one for "restitution." (Compl., ¶ VI, 5.) Restitution is legal, rather than equitable relief, and is unavailable under § 502(a)(3). Restitution is permissible § 502(a)(3) equitable relief only when it seeks "to restore to the plaintiff particular funds or property in the defendant's possession." Great West, 535 U.S. at 214. Here, Clark has not and cannot trace any specific fund or property to the defendants. Restitution is unavailable to him as "equitable relief" under ERISA § 502(a)(3). Coan, 333 F. Supp. 2d 114 at 25; see also, Gerosa, 329 F.3d at 317 (remedy seeking reimbursement of funds to plan for shortfall occasioned by defendant's conduct is not equitable relief under § 502(a)(3)); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 444 (S.D.N.Y. 2002).

Clark alleges that the lack of notice of the LTD Plan's potential termination resulted in his failure to purchase insurance coverage privately, and that as a result of an intervening event (his Parkinson's diagnosis) he is now unable to purchase adequate coverage. (Compl., ¶ 28.) As <u>Callery</u> illustrates, Clark's is seeking "reliance damages" which are not available under ERISA. <u>Id.</u>

> **2.    Clark's Second Claim For Relief Should Be Dismissed Because, Absent Egregious Circumstances Which Are Not Present Here, Technical ERISA Violations Do Not Give Rise To Substantive Remedies**

Clark's Second Claim for Relief alleges that defendants committed a number of technical ERISA violations in connection with the maintenance and termination of the LTD Plan.[12] (Compl., ¶¶ B, 64a-g.) It is well-established that such technical violations will not support a breach of fiduciary duty claim absent exceptional circumstances such as fraud, active concealment or bad faith. <u>Dunnigan v. Metropolitan Life Ins. Co.</u>, 2003 U.S. Dist. LEXIS 2, *52 (S.D.N.Y. 2003), <u>citing</u> <u>Watson v. Deaconess Waltham Hosp.</u>, 298 F. 3d 102, 113 (1st Cir. 2002); <u>Hines v. Mass. Mutual Life Ins. Co.</u>, 43 F. 3d 207, 211 (5th Cir. 1995)(upholding dismissal of breach of fiduciary duty claim for failure to notify participant of change in medical policy). The requisite exceptional circumstances are lacking in this case.

---

Clark's claim for disgorgement of profits (Compl., ¶ VI, 11.) should also be dismissed since Clark cannot show that defendants reaped any benefit or profit (for example, by withholding benefits owed to Clark) as a result of the alleged breaches of fiduciary duty. Clark makes no claim he is entitled to benefits under the LTD Plan, or that, as a result of their alleged breaches of fiduciary duty, defendants earned profits on funds they were not entitled to possess. As such, defendants earned no profits which can now be disgorged. Compare <u>Parke v. First Reliance Standard Life Insurance Company</u>, 368 F.3d 999, 1007-1009 (plaintiff held entitled to recover interest on § 1132(a)(3)(B) claim where life insurance company delayed payment of benefits it owed).

[12] As noted above Clark's claim that defendants failed to provide a summary plan description is contradicted by his testimony. (Clark Dep.; F., ¶ 50.) Even if Clark's testimony is disregarded, the failure to distribute a summary plan description does not, per se, constitute a breach of fiduciary duty. <u>Weinreb v. Hospital for Joint Diseases</u>, 285 F. Supp. 382, 388 (S.D.N.Y. 2003) (granting summary judgment where "plaintiff has pointed to no authority that a failure to provide a summary plan description is a breach per se").

33

This Court denied defendants' motion to dismiss based upon allegations that defendants actively and in bad faith concealed the termination of the LTD Plan "because of its desire to keep the workforce intact" during impending merger talks. (Mem. M. Dismiss at 9-10.) The record developed in discovery reveals no bad faith or active concealment on defendants' part.

Jurasek, the controller of Crystal Rock, testified that the officers of the company, including Dunn (at that time Crystal Rock's manager of human resources) were operating under the mistaken belief that the LTD Plan only covered Crystal Rock's officers and controller. (Jurasek Dep.; F., ¶ 56.) The decision to terminate the LTD Plan was made when it was learned that the officers and controller would be reimbursed for the cost of private disability insurance, following the merger, and based on the mistaken assumption that Crystal Rock's non-management employees were not covered under the LTD Plan. (Jurasek aff.; F., ¶ 56.)  Jurasek testified:

> I went to Mike Dunn, told Mike Dunn, "We don't need this anymore, we're going to be reimbursed for the coverage, go ahead and cancel it," and he cancelled it. We were all under the assumption that it was just covering the officers and the controller, we had no idea that it covered the rank and file.  It was never our intention to cancel a policy that was for all of the employees.

(Jurasek Dep. at 100-102; F., ¶ 56.)[13]

The LTD Plan was terminated by mistake.  There is no evidence that defendants acted in bad faith or took measures to conceal the termination of the Plan. Because there are no issues of disputed fact regarding an affirmative misstatement,

---

[13]  The deposition testimony of Dunn, Crystal Rock's human resource manager prior to Clark, also refutes any argument that defendants intentionally concealed the LTD Plan termination for nefarious purposes. Dunn denied being instructed to conceal the termination of the LTD Plan, testifying that "I don't recall anybody saying anything like that, and I can't imagine that would have taken place." (Dunn. Dep.; F., ¶ 59.)

34

fraud, active concealment or any other conduct required to sustain Clark's breach of fiduciary duty claim, summary judgment is appropriate. <u>Boucher v. Williams</u>, 13 F. Supp. 2d 84, 100 (Dist. ME 1998)("The Court is unable to find a case imposing fiduciary liability on a welfare benefits plan administrator solely because it failed to comply with ERISA's notice requirements where there was not some evidence of intentional concealment or affirmative misstatement.")

3.    **Clark's Estoppel Claims Fail Because There Is No Evidence To Support The Basic Elements Required To Sustain His Claims**

Clark's Third Claim for Relief asserts that "Defendants . . . are estopped from denying plaintiff benefits under the LTD plan because . . . they materially misrepresented the terms of the LTD plan by failing to advise plaintiff that the LTD coverage could be terminated, and, if so, under what circumstances." (Compl., ¶ C, 64.)  To establish this claim, Clark must show: (1) that defendants made a promise to Clark; (2) upon which he relied; (3) to his detriment; and (4) that an injustice would occur if the promise were not enforced. <u>Devlin v. Empire Blue Cross</u>, 274 F. 3d 76, 85 (2d Cir. 2001).

As discussed above, there is no evidence that defendants made any promise to maintain the LTD Plan for any period; in fact, defendants distributed documents which clearly stated that the plan could be terminated.  Also as discussed above, the element of detrimental reliance is missing:  Clark cannot demonstrate that he could have secured additional insurance coverage had he been notified of the Plan's termination, and he cannot show detrimental reliance. <u>See Charles v. First UNUM Life Ins. Co.</u>, 2004 U.S. Dist. LEXIS 9307 (W.D.N.Y. 2004)(dismissing

35

estoppel claims where plaintiff's husband had been diagnosed with cancer prior to the alleged misrepresentation).

**a.    The Requisite Extraordinary Circumstances Are Missing**

"There is an exacting standard for promissory estoppel claims involving ERISA claims." <u>Ladouceur v. Credit Lyonnaise</u>, 2005 U.S. Dist. LEXIS 870, * 7 (S.D.N.Y. Jan. 19, 2005). In addition to the above elements, Clark must demonstrate "extraordinary circumstances" to assert an ERISA promissory estoppel claim. <u>Schonholz v. Long Island Jewish Med. Ctr.</u>, 87 F.3d 72, 78 (2d Cir.), <u>cert. denied</u>, 519 U.S. 1008 (1996). In order to minimize "the danger that commonplace communications from employer to employee will routinely give rise to employees' rights beyond those contained in formal benefit plans," such actions by an employer must be "beyond the ordinary." <u>Aramony v. United Way Replacement Benefit Plan</u>, 191 F. 3d 140, 151-152(2d Cir. 1999). As the United States District Court for the Southern District of New York recently stated:

> In the heartland of cases analyzing ERISA promissory estoppel, courts find extraordinary circumstances only where an employer engages in intentional inducement or deception of an employee with respect to benefits in order to persuade that employee to take some action that inures to the employer's benefit.

<u>Keiser v. CDC Investment Management Corp.</u>, 2004 U.S. Dist. LEXIS 4109, * 5-6 (S.D.N.Y. 2004).

In denying defendants' motion to dismiss this claim, the Court found this requirement satisfied by allegations of bad faith and active concealment of the LTD Plan termination, intended to "induce the employees, including plaintiff, to remain with the company so that they could negotiate a merger." (Mem. M. Dismiss at 10.) Once again, there is no evidence to support Clark's allegations. As discussed

36

above, the record reveals that the LTD Plan was terminated as a result of an error and

not because of any ulterior or sinister motive on the part of defendants. (Jurasek Dep.;

Dunn Dep., F., ¶¶ 56, 59.)[14]  Clark's Third Claim for Relief fails accordingly.[15]

### 4.    Defendants Are Entitled To Summary Judgment On Clark's Fourth Claim For Relief

The Fourth Claim for Relief alleges that defendants violated ERISA's

anti-retaliation provision, ERISA Section 510, by terminating his employment to

"avoid providing plaintiff with the LTD coverage to which he was entitled, to

interfere with and\or defeat his claim for reinstatement of the LTD Plan and/or to

interfere with the assertion of his rights under ERISA." (Compl., ¶ D. 64.)  There is

no evidence that Clark was terminated in September 2002 (Compl., ¶ 58.) to avoid his

being covered under a plan that was terminated, in accordance with its terms,

effective July 31, 2000. (Loftus aff., F., ¶ 57.)

---

[14]  Even if it is assumed that Defendants purposely concealed the termination of the LTD Plan, so as not to anger employees, Clark's estoppel claim should be dismissed.  Inducing a current employee to remain working for his employer, or its successor, does not "give rise to the level of extraordinary circumstances required to proceed on a promissory estoppel claim under ERISA." Ladouceur, 2005 U.S. Dist. LEXIS 870, * 8.

[15]  Per Clark's counsel, he is pursuing recovery under both equitable and promissory estoppel theories. (Plaintiff's Supplemental Memorandum In Opposition To Defendants' Motion to Dismiss, p. 1)  To survive the instant motion with respect to his equitable estoppel claim, Clark must prove that a genuine issue of material fact exists with respect to (1) a material misrepresentation; (2) reliance; (3) damages. Lee v. Burkhart, 991 F. 2d 1004, 1009-10 (2d Cir. 1994).  Clark bears the burden of proving each of these elements. Haeberle v. Board of Trustees, 624 F.2d 1132, 1139 (2d Cir.1980), citing 1 Williston on Contracts, § 139 at 600 (3d Ed.1957).  Because Clark cannot sustain his burden, and no such factual issues exist, the claim fails as a matter of law.  Under well-established Second Circuit precedent, an affirmative misrepresentation is required to satisfy the first element of a claim based on equitable estoppel. Lee, supra, 991 F. 2d at 1010 (court found that plaintiff did not sufficiently assert an equitable estoppel claim because he did not allege an affirmative misrepresentation by the defendant); Aquilio v. Police Benevolent Association, 857 F. Supp. 190, 210 (N.D.N.Y. 1994)(granting summary judgment on equitable estoppel claims "due to lack of affirmative misrepresentation."); Black v. Bresee's Oneonta Dept. Store, 919 F. Supp. 597, 607-608 (N.D.N.Y. 1996)(same).

Here, Clark cannot point to any written or oral representation made by any Defendant entitling him to lifetime coverage under the LTD Plan. Accordingly, this case is readily distinguishable from cases where written representations created an issue of material fact sufficient to preclude summary judgment. See, e.g., Fortune v. Medical Associates of Woodhull, P.C., 803 F. Supp. 636, 643 (E.D.N.Y. 1992).  Further, the alleged failure to inform him "that the LTD coverage could be terminated" does not constitute an affirmative misrepresentation.  Thus, any equitable estoppel claim fails fundamentally and is subject to dismissal as a matter of law.

37

To prevail on his Section 510 claim, Clark must show that defendants' conduct, in taking adverse employment action against him, was "at least in part motivated by the specific intent to engage in activity prohibited by § 510" and that the resultant <u>loss of benefits</u> was a motivating factor, not merely a consequence, of his termination. <u>Hayes v. Compass Group</u>, 343 F. Supp. 2d 112, 121 (D. Conn. 2004), <u>citing</u> <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1111 (2d Cir.1988) (emphasis added). There is no evidence that Crystal Rock's management was motivated by a desire to deny Clark benefits or coverage when the LTD Plan was terminated, and his Fourth Claim for relief should be dismissed.[16] Further, there was no possibility of him losing benefits as the LTD plan was properly extinguished two years prior to September 2002. Accordingly, defendants are entitled to judgment as a matter of law.

### 5.     Clark's Sixth Claim For Relief, Based On Defendant's Refusal To Provide Documents Concerning The Terminated LTD Plan Should Be Dismissed

Plaintiff's Sixth Claim for Relief asks this Court to exercise its discretion under ERISA § 502(c), 29 U.S.C. § 1132(c), and to award damages for defendants' alleged failure to provide documents with regard to the LTD Plan that

---

[16] In denying defendants' motion to dismiss this claim, this Court noted that "Plaintiff has alleged that the LTD Plan was terminated specifically to prevent him (and other employees) from attaining vested rights under the plan" and that, while "Plaintiff may well not be able to adduce evidence in support of these allegations," he "is entitled to try." (Mem. M. Dismiss at 11.) Clark cannot produce such evidence and summary judgment must be granted. The claim fails because Clark cannot put forth any proof beyond "conclusory allegations or unsubstantiated speculation." <u>Scotto v. Almenas</u>, 143 F. 3d 105,114 (2d Cir. 1998). As detailed above, the LTD Plan was terminated by mistake, not with the intent to deprive Clark of any rights under ERISA. Further, Clark did not have any vested rights under the LTD Plan, and defendants had the express right, under the LTD Plan's terms, to terminate the Plan. As Clark has "utterly failed to come forward with any specific facts showing that a genuine issue of material fact exists that deprivation of his ERISA benefits was the real motivation behind" his firing, summary judgment is appropriate. <u>MacKay v. Rayonier</u>, 75 F. Supp. 2d 22, 29 (D. Conn. 1999).

was properly terminated, in accordance with the Plan's provisions, more than two years before the request for documents was made.[17]

The purpose of ERISA's disclosure requirements is to allow participants to make informed choices about their benefit options, not to protect prospective litigants. Sampson, 2002 U.S. Dist. LEXIS 20877 at *32 (plaintiff's § 1132(c) claim rejected where plaintiff could not show prejudice as plan beneficiary, and sought documents only in connection with litigation).  When Clark requested these documents, he knew that the LTD Plan had been terminated for two years; "the primary, if not sole, reason he requested the plan information was to prepare his law suit." Id. Clark cannot be said to have been prejudiced in any way by defendants' alleged refusal to produce documents relating to the terminated plan, and his Sixth Claim for Relief should be dismissed.[18]

### 6.    Clark's First, Second, Third and Sixth Claims For Relief Should Be Dismissed As Against Vermont Pure

As discussed above, Clark's first, second, third and sixth claims seek redress under ERISA for alleged breaches of fiduciary duty and various other ERISA violations.  Vermont Pure is not a proper party to these claims and summary judgment in its favor is therefore mandated.

The breach of fiduciary duty claim (First Claim for Relief) cannot succeed against Vermont Pure because Vermont Pure was not a fiduciary under

---

16.  The two primary factors considered in awarding sanctions under § 502(c) of ERISA are prejudice to the claimant and bad faith on the part of the plan administrator.  Lacoparra v. Pergament Home Centers, Inc. 982 F. Supp. 213, 229 (S.D.N.Y. 1997).  Neither factor supports an award of penalties here.

18  In denying Defendants motion to dismiss this claim, the Court cited Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 117 (1989) and Kascewicz v Citibank, N.A., 837 F. Supp. 1312, 1321 (S.D.N.Y. 1993)  Both cases involved plans that were still in existence when the request for documents was made, and they do not support Clark's Sixth Claim for Relief.

Crystal Rock's LTD Plan See Herman v. Time Warner Inc., 56 F.Supp.2d 411, 416 (S.D.N.Y.1999). All of the conduct alleged in Clark's First Claim for Relief took place prior to the merger (Loftus aff.; F., ¶¶ 3, 57.) and Vermont Pure cannot be held accountable. Under ERISA, a person is a "fiduciary" with respect to a plan to the extent he exercises discretionary authority or discretionary control respecting the assets or administration of such plan. 29 U.S.C. § 1002(21)(A) (emphasis added); See, Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 451 (S.D.N.Y. 2001). There is no evidence that Vermont Pure had any relationship with Crystal Rock's LTD Plan (Vermont Pure did not acquire Crystal Rock's stock until months after the LTD Plan was terminated, Loftus aff.; F 3, 57); therefore, summary judgment in favor of Vermont Pure is required. Id.

Clark's Second and Third Claims for Relief (alleging technical ERISA violations and estoppel, respectively) similarly fail. All of the alleged conduct supporting these claims occurred prior to the merger, and therefore no action lies against Vermont Pure.

Clark's Sixth Claim for Relief seeks statutory damages for failure to provide requested documents under ERISA § 502(c), 29 U.S.C. § 1132(c). Under the express terms of this section, only a plan administrator can be found liable. Since there is no evidence that Vermont Pure was the administrator of the Crystal Rock LTD Plan, summary judgment is appropriate.

E.     **Summary Judgment Should Enter In Favor Of Defendants On Clark's Severance Plan Claim**

1.     **Crystal Rock Had No Severance Plan**

40

Clark's Fifth Claim for Relief seeks benefits under the Severance Plan, alleged to be an employee benefit plan governed by ERISA. (Compl., ¶ 11.) Crystal Rock did not have a severance plan. (Dunn Dep., F., ¶ 63.) Defendants' employee handbook does not contain, or in any way reference, a severance plan or policy. (Baker aff.; F., ¶ 63.) The record is similarly bereft of severance plan documents, or any mention of fiduciaries, administrators, procedures or funding. In sum, none of the indicia of an ERISA plan are present.[19]

The deposition testimony demonstrates that Crystal Rock occasionally paid severance when an employee left the company, in exchange for the employee releasing all claims against the company. (Dunn Dep.; Clark Dep.; F., ¶ 64.) Where the only evidence presented is that severance has been awarded in individual cases, without demonstrating what the benefits were, how they were calculated and how the benefits were administered, there is no evidence that such benefits were administered through an ERISA plan. Donovan v. Dillingham, 668 F. 2d 1367, 1373 (11th Cir. 1982) ("A decision to extend benefits is not the establishment of a plan or program.)

Because ERISA covers plans, not benefits Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987) to survive summary judgment on his claim for severance plan benefits Clark "must provide some evidentiary basis, beyond conjecture, for establishing the existence of an ERISA plan, not just occasional payments on a case-by-case basis." Ferrand v. Credit Lyonnais, 2003 U.S Dist.

---

[19] While an ERISA plan may exist without such writing, their absence "weighs against the finding of an ERISA employee benefit plan." Dennis v. RSL Com U.S.A., 1998 U.S. Dist. LEXIS 10961, at *11.

41

LEXIS 17202, *48-49 (S.D.N.Y. 2003), aff'd., 2004 U.S. App. LEXIS 19086 (2d

Cir. 2004). Because he cannot do so, the Fifth Claim for Relief must be dismissed.[20]

## IV.   CONCLUSION

For the foregoing reasons, defendants respectfully request that the

Court grant their motion for summary judgment and dismiss the Complaint, in its

entirety.

Respectfully submitted,

DEFENDANTS, VERMONT PURE
HOLDINGS, LTD., CRYSTAL ROCK
SPRING WATER COMPANY,
CRYSTAL ROCK LONG TERM
DISABILITY PLAN, and CRYSTAL
ROCK SEVERANCE PLAN

By _____
A. Robert Fischer (CT 01295)
Fischera@JacksonLewis.com
Daniel Green (CT 08746)
Greend@JacksonLewis.com
Robert R. Perry (CT 22698)
Perryr@JacksonLewis.com
**JACKSON LEWIS LLP**
177 Broad Street
P.O. Box 251
Stamford, CT 06904-0251
Phone: (203) 961-0404
Facsimile: (203) 324-4704
THEIR ATTORNEYS

---

[20]   Assuming, arguendo, there were a Severance Plan, Clark's claim would still fail. Clark cannot show that he signed a release of claims against Crystal Rock, a condition precedent to receiving benefits. (Dunn Dep.; F., ¶ 62.) Since he cannot sustain this burden, summary judgment is mandated. See McVeigh v. Philadelphia National Bank, 796 F. Supp. 173 (E.D. PA 1992)(dismissing claims for benefits under alleged unwritten pension plan, where payments had been made to certain retirees and not to others, because claimant failed to show that he was either eligible to participate in or did in fact participate in the alleged plan), aff'd., 903 F. 3d 224 (3d Cir. 1993). Accordingly, the Fifth Claim for Relief fails as a matter of law and should be dismissed.

42

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, this date, postage prepaid, to: Kathryn Emmett, Esq., Emmett & Glander, 45 Franklin Street, Stamford, CT 06901.

Daniel Green

43