services were no longer needed."). The defendant claimed that plaintiff's performance was unsatisfactory, but the evidence supported that her performance was acceptable to management until a few days after the merger and that "any post-merger deficiencies were a consequence of her receiving a less than adequate opportunity during the transition period to become adept at her new and more complex job responsibilities." Id. Plaintiff also presented evidence that her supervisor asked her to resign on at least two occasions, stating that she was "too old . . . and did not fit the image [the company] wished to project," and that her supervisor met with a substantially younger employee to discuss replacing her weeks before she actually resigned. Id.[47]

Also, in Calhoun v. ACME Cleveland Corporation, 798 F.2d 559 (1st Cir.1986), the court upheld judgment in favor of the plaintiff on an ADEA constructive discharge claim where the plaintiff presented evidence that, after forty-two years of employment, management "entered into a course of action designed to force him into early retirement" because of his age. Calhoun at 560. In particular, management inquired three times in seven months whether the plaintiff was interested in early retirement and when he refused to leave voluntarily, demoted and reprimanded him, excluded him from a training seminar, and then threatened to dramatically increase his working hours, resulting in the plaintiff's involuntary resignation from the company. Id. at 561-62. The defendant took the position that management innocently "asked [the plaintiff] whether he wished to take early retirement" and that he then voluntarily retired, breaking down management's course of adverse treatment into isolated incidents and claiming that each individually was insufficient to establish constructive discharge, but the court rejected

---

[47] Like in Acrey, Crystal Rock management offered plaintiff's position to a substantially younger employee immediately after he inquired about a possible retirement package, but before any departure terms were agreed upon or plaintiff's employment was terminated by the company. See n.24, *supra*.

the defendant's argument finding the events viewed as a whole sufficient "for a jury to find that a reasonable person in [the plaintiff's] shoes would have felt that his services were no longer desired." See id. at 562-53 ("The fallacy in this 'divide and conquer' approach is that these events must be viewed as part of a single behavior pattern by [the employer]."). See also e.g., Holdren v. General Motors Corp., 1998 WL 990997, *4-5 (D.Kan. 1998) (summary judgment denied on age discrimination claim where manager made comments indicating that he wanted to "get rid of" older workers, inquired about the plaintiff's retirement plans on two occasions and when the plaintiff responded that he did not intend to retire, placed him on a performance improvement plan and then demoted him and took away his company car).

### d.     Pretext

The evidence also contradicts defendants' proffered non-discriminatory explanation for plaintiff's discharge – that he could not be trusted to continue in the HR position because he had made false claims of discrimination in an effort to obtain money from defendants – and, thus, provides further support for plaintiff's claim that defendants held a discriminatory motive in taking adverse action against him including when they terminated his employment. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."); Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 382-83 (2d Cir.2001) (even though plaintiff offered only "slight evidence" of discrimination beyond her prima facie case, jury was entitled to infer discrimination based on evidence tending to show that employer's proffered non-

31

discriminatory explanation was false); McInnis v. Alamo Community College District, 207 F.3d 276, 283 (5th Cir.2000) (summary judgment in favor of employer on ADA claim reversed where management's proffered non-discriminatory explanations for plaintiff's termination were inconsistent and not supported by the record evidence).

Defendants' explanation for plaintiff's discharge is inconsistent with their conduct and, based on the evidence, not credible.

- Plaintiff's complaints were not false. In September 2002, defendants were well aware that plaintiff had been experiencing hostility from management and that management had suggested to him that he should retire, even though he was then only 50 years old. Defendants were also aware that plaintiff had not been subjected to any such negativity before his tremors had become noticeable.

- After Crystal Rock management received plaintiff's complaint describing what he perceived as discriminatory treatment, they failed to reassure plaintiff that his perception was incorrect, to speak with plaintiff about his concerns, or to perform any independent investigation whatsoever to assess the validity of plaintiff's claims. Rather, consistent with plaintiff's belief that they were trying to force him out because of his disability and/or age, Crystal Rock management immediately informed plaintiff that he had made a "big mistake," suggesting that he would be sorry for making the complaint, and then abruptly terminated his employment.

- Defendants had no reason to believe and do not proffer any evidence to support that plaintiff, in fact, made false claims of discrimination in an effort to get money from the company. Crystal Rock management testified at deposition that plaintiff had been loyal, very dedicated, and "probably the best employee [they] had over the years," and that he never gave them any reason to question his truthfulness over the many years they had known him. As stated, defendants did not perform any independent investigation of plaintiff's claims to determine whether they had any validity, failed to speak with plaintiff to ascertain the basis for his claims, and, rather, immediately took the groundless position that they were false.

- The letter terminating plaintiff's employment inaccurately represents, *inter alia*, that the company "conducted a comprehensive investigation into [plaintiff's claims]" and that, "[d]espite repeated requests, plaintiff [] failed to document, in any manner, his claim of adverse treatment." Ex. 24.

- Furthermore, management's "position" that plaintiff could not be trusted to continue in the

32

HR function due to his alleged dishonesty is contradicted by the fact that Peter Baker informed plaintiff that he could continue working if he would simply retract his claims. See Ex. 25. In fact, Crystal Rock's counsel testified at deposition that management's plan in delivering the termination letter was *not* to terminate plaintiff's employment in accordance with the letter, but rather to get plaintiff to retract his claims. See Ex. 4 (Berry) at 42-45 (Crystal Rock management decided to deliver the termination letter and then ask plaintiff to recant certain claims and if he was willing then they would try to keep him in his job or to agree on a severance package); Ex. 11 (Miller) at 282-97 ("The plan was to put something in writing very strongly which says that [plaintiff] has materially misrepresented a lot in his letter" and the termination letter was written "in part" because "we wanted to bring [plaintiff] to the negotiating table with realistic expectations" and to try to resolve the situation without the involvement of lawyers).[48]

In Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir.1995), the court, under similar circumstances, reversed summary judgment in favor of the employer on the plaintiff's age discrimination claim finding sufficient evidence that the employer's proffered reason for plaintiff's discharge was pretextual. The plaintiff in Sempier presented evidence that his employer had reduced his responsibilities as CAO over time, hired younger employees to take over his functions, advised him that he should take a newly implemented early retirement program because he had "lost credibility" with management, and, when he refused to retire, told him he had "no choice but to retire or be forced out. See Sempier at 726-33. Sempier began severance negotiations with management, but they were unable to reach an agreement, and when management became aware that the plaintiff had retained an attorney, they responded, as here, by abruptly terminating his employment. See id. at 726. The court found that the plaintiff had established a prima facie case of age discrimination and sufficient evidence that the employer's stated reasons for his dismissal, amounting to inadequate performance, were pretextual. Id.

---

[48] The evidence supporting that defendants' proffered explanation for plaintiff's discharge is a pretext for discrimination also supports plaintiff's claim that he was terminated in retaliation for making a good faith, reasonable complaint that he was being discriminated against by defendants, as set forth in Section III.C.3. *infra*.

at 731-32 (the jury "could conclude that [management's] failure to fault [the plaintiff's] performance for twenty years prior the negotiations leading to his discharge makes suspect its *post hoc* assertions of poor performance" and might reasonably determine from the evidence that management "offered [the plaintiff] early retirement as an effort to remove him because of his age and not because of poor performance.").[49]

The evidence establishes that defendants discriminated against plaintiff on the basis of his disability, age and/or on the combined basis of both his disability and age and that their stated reason for plaintiff's discharge is false and a pretext for discrimination. Therefore, summary judgment may not be granted on plaintiff's federal and state law discrimination claims.

### 3. The remainder of defendants' arguments do not entitle them to summary judgment

#### a. Plaintiff is not required to establish "severe or pervasive" harassment by defendants

Defendants also argue that plaintiff cannot establish that the hostility directed at him was sufficiently severe or pervasive to constitute a hostile work environment. See Def.Mem. at 9. Proof of a hostile work environment is simply one method of proving discriminatory treatment, however, and is not required in this case. See e.g., Keller v. Board of Educ. of the City of Albuquerque, 182 F.Supp.2d 1148, 1158 (D.N.M. 2001) ("There are a variety of methods a plaintiff may use to meet the fourth prong of a prima facie case. . . 'One of those ways in a discriminatory discharge case is simply by showing that

---

[49] In fact, after defendants terminated plaintiff's employment on the alleged basis that he had made false claims of discrimination in this case, upper management began compiling negative information relating to plaintiff's performance in an apparent effort to try to support that his performance was inadequate in order to provide another justification for his termination. See Ex. 28. Plaintiff disputes the validity of the criticisms of his performance and states that they constitute further evidence that defendants did not believe their stated reason for his discharge and were, therefore, "dissembling to cover up a discriminatory purpose." Reeves at 147. Cf. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455-56 (11th Cir.1988) (evidence that employer solicited coworkers for negative statements concerning plaintiff after she filed EEOC charge, *inter alia*, constituted adverse action).

the job was not eliminated. The firing of a qualified [protected individual] raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training and replacement.'") (quoting Ortiz v. Norton, 254 F.3d 889 (10th Cir.2001); Perry v. Woodward, 199 F3d 1126, 1140 (10th Cir.), cert. denied, 529 U.S. 1110 (2000)) (additional quotations and citation omitted).

In making this argument, defendants attempt to provide legitimate explanations for the fact that management subjected plaintiff to a dramatically increased and overwhelming workload in the HR position post-merger without other than occasional assistance, cut plaintiff's bonus in half while continuing to pay other key managers the same or higher bonuses without any providing any explanation whatsoever to plaintiff and even though plaintiff was informed of the amounts paid to others, yelled at plaintiff in an offensive and unwarranted manner in the workplace, and treated plaintiff with general hostility and excluded him from merger planning. See Def.Mem. at 10-13. At most, the reason or reasons management took these and other adverse actions against plaintiff constitute disputed issues of fact. Compare Def.Mem. at 9-12 with Plaintiff's Statement of Facts, generally, and Local Rule 56(a)(2) Statement, ¶¶ 18, 22-23, 25-26.

Furthermore, defendants do not provide any credible non-discriminatory explanation for the entire course of adverse treatment directed against plaintiff, culminating in the termination of his employment. See Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir.2000) ("In determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such

35

discrimination, would be entitled to view the evidence as a whole."); Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir.1999) ("As a jury is entitled to review the evidence as a whole, courts must not view the evidence in piecemeal fashion in determining whether there is a trial-worthy issue."); Calhoun at 562-63 (rejecting employer's "divide and conquer" approach to adverse treatment and finding events, when "viewed as part of a single behavior patter by [management]," supported discriminatory discharge in violation of ADEA).

### b. The evidence establishes discrimination *because* of plaintiff's disability and/or age

Defendants argue that there is no evidence that management's adverse treatment was directed at plaintiff *because of* his disability or age, again citing to disputed issues of fact – *e.g.*, that plaintiff purportedly transferred to the HR position on his own initiative – and denying that certain adverse actions constitute circumstantial evidence of discrimination without providing any credible non-discriminatory explanation for the actions – *e.g.*, "Clark's claim that he was given a smaller bonus in 2001 because of his age or disability rests only on speculation" and "Clark has no basis for concluding that Baker or Jurasek yelled at Clark on any occasion because of Clark's age or alleged disability." Compare Def.Mem. at 14-15 with Plaintiff's Statement of Facts, generally, and Local Rule 56(a)(2) Statement, ¶¶ 22-23, 25-26.

Defendants' argument is apparently based on the incorrect premise that plaintiff is required to proffer direct evidence of discriminatory intent in order prove his claims. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 76 (2d Cir.2001) ("direct evidence of discrimination -- a "'smoking gun' . . . attesting to discriminatory intent," – is typically unavailable" and, therefore, plaintiffs ordinarily prove their case by way of circumstantial evidence) (citation omitted); Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 135 (2d 2000) ("plaintiffs in discrimination suits often must rely on the cumulative weight of

36

circumstantial evidence, since an employer is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file.").

Furthermore, contrary to defendants' argument, it is reasonable to infer from the overwhelming evidence in this case, as set forth in Section III.B.2 *supra*, that defendants discriminated against plaintiff on the basis of his disability and/or age. In particular, Peter Baker's suggestion that plaintiff retire at the age of 49, admitted to have been made because of plaintiff's diagnosis and age, when considered in the context of the remainder of the adverse treatment constitutes strong probative evidence of discriminatory animus. See Seltzer v. Dresdner Kleinwort Wassertstein, 356 F.Supp.2d 288, 295 (S.D.N.Y. 2005) ("In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process. . . . Additionally, the Second Circuit has emphasized that '[a]lthough evidence of one stray comment by itself is usually not sufficient proof to show [] discrimination, that stray comment may bear a more ominous significance when considered within the totality of the evidence.'") (Quoting Carlton at 136; additional citations and quotations omitted). See also e.g., Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 135-36 (2d Cir.2000) (suggestion that plaintiff retire constituted evidence of discriminatory intent); Calhoun v. ACME Cleveland Corporation, 798 F.2d 559, 561-62 (1st Cir.1986) (management's inquiries about plaintiff's interest in retirement constituted evidence of discriminatory intent); Holdren v. General Motors Corp., 1998 WL 990997, *4-5 (D.Kan. 1998) (same); Braverman v. Penobscot Shoe Company, 859 F.Supp.

37

596 (D.Maine 1994) (management's inquiries about plaintiff's interest in retirement and suggestion that he retire after he discussed plans for radiation treatment constituted evidence of both age and disability discrimination).

### c. Defendants are not entitled to same-group inference

Finally, defendants claim that plaintiff cannot establish a prima facie case of discrimination because the individuals who made the decision to terminate plaintiff's employment were in the same protected class as plaintiff under the ADEA – *i.e.*, over 40 – when they terminated his employment and, therefore, an inference exists that they did not act with discriminatory intent in taking adverse action against plaintiff. See Def.Mem. 18-19.[50] Contrary to defendants' argument, the fact that the decision-makers who took adverse action against plaintiff were in their early 40's at the time does not entitle defendants to an inference that they did not act with discriminatory intent in this case.

The United States Supreme Court has explicitly rejected any presumption that members of a protected class will not discriminate against members of the same protected class in race and sex discrimination cases brought under Title VII. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78-79 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.") (quoting Castaneda v. Partida, 430 U.S. 482, 499 (1977)). The Court's reasoning

---

[50] Defendants suggest that the Second Circuit has established an inference against discrimination when the decision-maker is in the same protected age group as the plaintiff, but do not cite any Second Circuit legal support. See Def.Mem. at 18-19. Connecticut courts have recognized an inference in some cases, as cited by defendants. See Giordano v. Gerber Scientific Products, Inc., 2000 WL 1838337, *7 (D.Conn., Burns, J., Nov. 14, 2000) ("Where the decision-makers are also in the protected age group an inference may be drawn that there is no age-based animus."), *aff'd*, 24 Fed. Appx. 79, 82 (2d Cir.2001) (summarily affirming district court's ruling on age discrimination claim without considering whether inference was appropriate); Millane v. Becton Dickinson & Company, 84 F.Supp.2d 282, 287 (D.Conn. 1999).

38

applies with equal force to claims of age discrimination. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir.2003) (district court erred in invoking "same-group inference" as basis for granting summary judgment in age discrimination case based on reasoning in Oncale); Kadas v. MCI Systemhouse Corp., 255 F.3d 359, 361 (7th Cir.2001) (rejecting same-group inference in age discrimination cases finding "relative ages of the terminating and terminated employee relatively unimportant" based, *inter alia*, on fact that "it is altogether common and natural for older people . . . to exempt themselves from what they believe to be the characteristic decline of energy and ability with age; . . . to want to surround themselves with younger people; . . .and [], to be oblivious to the prejudices they hold especially perhaps prejudices against the group to which they belong.").[51]

Here, plaintiff was replaced by an employee in her 30's and the individuals who took adverse action against plaintiff were substantially younger, in their early 40's rather than their late 40's like plaintiff, and, furthermore, were aware that plaintiff had Parkinson's disease – a disabling condition which includes symptoms such as visible tremors and a mask-like expression – which may have made him appear or be perceived as older than he actually was at the time. The combined impact of plaintiff's age and disability, rather than his age alone, may have formed management's discriminatory opinion that plaintiff was or would not continue to be a valuable employee. See Goosby v. Johnson & Johnson

---

[51] Furthermore, for the same reasons that an individual need not show that his *replacement* is outside the protected age group in order to prove a prima facie case of discrimination, an individual should not be required to establish that the *decision-maker* in outside the protected age group in order to establish that the decision-maker held a discriminatory animus. See O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 312-13 (1996) ("the fact that [plaintiff's] replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class"). See also Olmstead v. Zimring, 527 U.S. 581, 598 n.10 (1999) (dissent "incorrect as a matter of precedent and logic" in being "driven by the notion," *inter alia*, "that 'a plaintiff cannot prove discrimination by demonstrating that one member of a particular protected group has been favored over another member of that same group'") (citing O'Connor at 312; Oncale at 76).

Medical, Inc., 228 F.3d 313 (3d Cir.2000) (recognizing that employee could establish that she was discriminated against on the basis of both her gender and race where employer did not discriminate on the basis of gender alone); Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1032 (5th Cir.1980) ("[D]iscrimination against black females can exist even in the absence of discrimination against black men or white women."). In fact, defendants' discriminatory attitude toward plaintiff on the basis of *both* his disability and age is evidenced by Peter Baker's suggestion to plaintiff that he consider retiring at the age of 49 because of his Parkinson's disease and age. Thus, defendants' argument that they are entitled to a same-group inference should be rejected in this case.

In sum, substantial evidence supports plaintiff's claim that he was discriminated against on the basis of disability and/or age and, therefore, defendants are not entitled to summary judgment on plaintiff's federal and state law discrimination claims.

### C.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS

Defendants move for summary judgment on plaintiff's retaliation claims on the basis that plaintiff was not engaged in "protected activity" when he complained about management's discriminatory treatment because "no reasonable person could have believed that [antidiscrimination] statutes had been violated." Defendants also argue that plaintiff was defendants' HR manager and, therefore, was not "protected" because they were "not bound to retain [him] . . . when they felt he was making an unfounded accusation of discrimination in an effort to extract a richer retirement package." Def.Mem. at 23-24. As set forth below, defendants' arguments lack merit.

40

1.   **Standards**

Both the ADA and ADEA prohibit employers from discriminating against an employee because such individual has opposed any act or practice made unlawful by the respective statutes. See 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d).[52] In order to establish a claim of retaliation, a plaintiff must show:

> (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.

Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003). See also Lovejoy-Wilson v. Noco Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir.2001); Sumner v. United States Postal Service, 899 F.2d 203, 208-9 (2d Cir.1990).[53]

   a.   **Protected activity**

Informal complaints to superiors, including by letter from counsel, about perceived unlawful discriminatory and/or retaliatory conduct constitute protected activity. See e.g., Regional Economic Community Action Program v. City of Middletown, 294 F.3d 35, 54 (2d Cir.2002) (letter by plaintiff's counsel challenging defendant's activity as unlawful discrimination constituted protected activity); Sumner at 209 (informal complaints of discriminatory employment practices protected); O'Neal v. Ferguson Construction Company, 237 F.3d 1248, 1255 (10th Cir.2001) (letter from plaintiff's attorney complaining about perceived unlawful retaliation constituted protected activity).

---

[52] Plaintiff also asserts a claim for retaliation in violation of the CFEPA. As set forth at n.43 *supra*, Connecticut courts look to federal precedent in reviewing claims brought under the CFEPA, including for retaliation pursuant to C.G.S. § 46a-60(4).

[53] Defendants do not contest that their termination of plaintiff's employment satisfies the second element. See Def.Mem. at 21-24. Therefore, only the first and third elements are at issue.

41

A plaintiff "need not establish that the conduct he opposed was in fact a violation of [the antidiscrimination statutes]" in order to establish protected activity. See Manoharan v. Columbia University College, 842 F.2d 590, 593 (2d Cir.1988). Rather, a plaintiff need only demonstrate that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Id. (citations and quotations omitted). See also Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir.2000) ("An employee is privileged to report workplace discrimination, whether that discrimination be actual or reasonably perceived."); Sumner at 209 ("a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed.").

"In addition, the way in which an employee expresses [his or] her opposition to the employer 'must be reasonable, as determined on a case by case basis, by balancing the purpose of [the anti-discrimination statutes], and the need to protect individuals asserting their rights thereunder, against an employer's legitimate demands for loyalty, cooperativeness and a generally productive work environment.'" Graham v. Texasgulf, Inc., 662 F.Supp. 1451, 1462 (D.Conn. 1987).

### 2.   Plaintiff was engaged in protected activity

Defendants' argument that plaintiff was not engaged in protected activity because "no reasonable person could have believed that [antidiscrimination] statutes had been violated" is without merit. The evidence in this case establishes that plaintiff, in good faith, reasonably believed that he was being discriminated against by Crystal Rock management in that they were trying to force him out of the company because of his disability and/or age. See e.g., Ex. 1 (B. Clark) at 207-10 ("I felt I was not able to satisfy my superiors in my job. I had had my bonus cut in half in November. I had had Peter constantly on me about problems with the phone system, and I had Dave Jurasek yelling at me, and I had

had Peter in November say to me, you know, What do you think about retiring? We came to Florida in January to celebrate my sister's birthday, and we visited my in-laws, and I was troubled, and I told this series of events that occurred, and my father-in-law – I told my father-in-law, and he said that – you know, he said simply that, I think they want you gone. And I had a hard time believing that, but I also shared with my brother and brother-in-law in that same weekend the story. I wasn't one to talk about work to anybody, but they knew I was pretty troubled by what was going on by the way I thought I was being treated . . ."). Furthermore, as set forth in Section III.B.2., there is overwhelming legal authority to support that plaintiff's claims were and are objectively valid. See Nappi v. Meridian Leasing Corp., 1995 WL 431183, *5 (N.D.Ill., July 17, 1995, Nordberg, J.) (court rejected employer's argument that plaintiff was not engaged in protected activity because "[he] could not have legitimately complained that he was discriminated against on the basis of age" where court had found sufficient evidence to support a reasonable inference of age discrimination).[54]

Defendants' claim that plaintiff's conduct was not protected because plaintiff was an HR manager and, therefore, management "[was] not bound to retain [him] . . . when they felt he was making an unfounded accusation of discrimination in an effort to extract a richer retirement package" is also invalid. See Def.Mem. at 22. Defendants do not cite and plaintiff is not aware of any support for the principle

---

[54] Defendants' claim that "no reasonable person could have believed that [antidiscrimination] statutes had been violated" is preposterous. Courts routinely find reasonableness and/or good faith even in cases where plaintiff based his complaint of discrimination on significantly less evidence of discrimination than that presented here, including at times based on a single comment. See e.g., Reed v. A.W. Lawrence & Co., Inc., 95 F.3d (upholding judgment for employee on retaliatory discharge claim and finding that plaintiff made good faith complaint of harassment based on single comment and other evidence supporting unfavorable treatment); Alexander v. Gerhardt Enterprises, Inc., 40 F.3d 187, 195-97 (7th Cir.1994) (upholding judgment for employee on retaliatory discharge claim and finding that complaint of perceived discrimination based on a single racial slur constituted protected activity).

43

that HR managers are not protected from retaliation for making good faith claims of discrimination to the same extent as other employees. Cf. Johnson v. University of Cincinnati, 215 F.3d 561, 577 (6th Cir.2000) ("Plaintiff's status as a high-level affirmative action official does not change the fact that his advocacy on behalf of women and minorities is protected activity or that he is a member of a protected class.").

In making this argument, defendants cite to inapposite cases involving employees who, unlike plaintiff here, engaged in unreasonable and/or unethical conduct in protesting perceived discrimination, and thus, provided their employers with an independent non-discriminatory basis for their dismissal. See Douglas v. DynMcDermott Petroleum Operations Company, 144 F.3d 364, 373 (5th Cir. 1998) (in-house counsel violated ethical rules of her profession when she informally disclosed confidential attorney-client information relating to inter-office complaints of discrimination to third parties and, therefore, employer was justified in terminating her employment because it "could no longer place full trust in her to keep confidences that she may acquire as its attorney"); Graham v. Texasgulf, Inc., 662 F.Supp. 1451, 1462 (D.Conn. 1987) (in-house counsel who protested the termination of her employment by refusing to comply with reasonable requests of employer and engaging in other disruptive behavior in the office that affected ability of law department to function was not engaged in "protected activity").

The evidence establishes that plaintiff acted reasonably in making his complaint to management that he believed he was being discriminated against on the basis of his disability and/or age. As required by defendants' personnel policies, plaintiff made the complaint by letter to Peter Baker, the President of the company. See Ex. 15, pp. 5, 9; Ex. 22. There is no evidence that he engaged in any unethical, disruptive or otherwise inappropriate behavior that would render his complaint unprotected and/or warrant the termination of his employment. See e.g., Regional Economic Community Action Program v.

44

City of Middletown, 294 F.3d 35, 54 (2d Cir.2002) (letter by plaintiff's counsel challenging defendant's activity constituted protected activity); O'Neal v. Ferguson Construction Company, 237 F.3d 1248, 1255 (10th Cir.2001) (letter from plaintiff's attorney complaining about perceived retaliation constituted protected activity).

Because at the very least a legitimate factual dispute exists concerning whether plaintiff made a "good faith, reasonable" claim of discrimination to defendants and, therefore, whether plaintiff was engaged in "protected activity," defendants are not entitled to summary judgment.

### 3. The evidence establishes that plaintiff was terminated because of his complaint to defendants

Finally, the evidence establishes the requisite "causal connection between the protected activity and the adverse employment action" – *i.e.*, that defendants terminated plaintiff's employment because he complained about perceived discriminatory treatment.

Title VII standards of proof apply to retaliation claims brought under the ADA and ADEA. See e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003) (*McDonnell Douglas* burden-shifting analysis applies to retaliation claims brought under Title VII and the ADEA); Rose v. New York City Board of Education, 257 F.3d 156, 161 (2d Cir.2001) (holding that plaintiff is "entitled to a burden-shifting instruction on the *Price Waterhouse* defense where the evidence is sufficient to allow a trier to find both forbidden and permissible motives" in discrimination case under ADEA and citing to Ostrowski v. Atlantic Mutual Insurance Companies, 968 F.2d 171, 180 (2d Cir.1992), an ADEA retaliation case); Ostrowski at 180 (2d Cir.1992) ("we have held that the *Price Waterhouse* framework applies to actions brought under the ADEA"). See also Stone v. City of Indianapolis Public Utilities Division, 281 F.3d 640 (7th Cir.), *cert. denied*, 537 U.S. 879 (2002) (plaintiff may prove unlawful retaliation under ADA and

45

Title VII through direct or circumstantial evidence). Thus, as under Title VII,

> [t]he causal connection between the protected activity and the adverse employment action can be established *indirectly* with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or *directly* through evidence of retaliatory animus.

Sumner at 209 (emphasis added) (citing DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965 (1987). See also Stone at 644 (a plaintiff may prove retaliation by one of two "distinct routes" – either through "direct evidence . . . that he engaged in protected activity . . . and as a result suffered the adverse employment action of which he complains" or through circumstantial evidence, using the *McDonnell Douglas* burden-shifting analysis, as adapted to the retaliation context).

There is direct proof of retaliatory animus in this case. Defendants *expressly* terminated plaintiff's employment because he filed an internal complaint of perceived discriminatory treatment. See Ex. 24. In addition, immediately after defendants received plaintiff's complaint, Peter Baker told plaintiff that he had made a "big mistake" and then shortly thereafter defendants terminated plaintiff's employment in response to his claims. These facts constitute direct evidence of retaliatory motive on defendants' part. See Rhoads v. FDIC, 257 F.3d 373 (4th Cir.), *cert. denied*, 535 U.S. 933 (2002) (summary judgment on retaliation claim reversed based, *inter alia*, on manager's statement to employee that she "would be sorry for consulting a lawyer" constituting direct evidence of retaliatory intent); Rubinstein v. Administrators of the Tulane Educational Fund, 218 F.3d 392, 402 (5th Cir. 2000) (court upheld jury verdict on retaliation claim finding direct evidence of retaliatory animus based on dean's deposition testimony that he denied plaintiff a raise "because [he] filed [a discrimination] suit, a step [the dean] apparently believes good colleagues do not take"); Fierros v. Texas Department of Health, 274 F.3d 187, 195 (5th Cir. 2001)

(summary judgment reversed on retaliation claim based on program director's statement to plaintiff that he was denied raise because he had filed internal discrimination complaint against director constituting direct evidence of retaliatory motive and also based on circumstantial evidence contradicting employer's alleged legitimate basis for issuing "counseling" to plaintiff, including that plaintiff had been "a highly-regarded employee . . . for over twenty years before she filed the discrimination charges.").

Under *Price Waterhouse*, where, as here, the plaintiff "can establish that a prohibited discriminatory factor played a 'motivating part' in the challenged employment decision, the defendant, in order to avoid liability has the burden of proving 'by a preponderance of the evidence that it would have made the same decision' even if it had not taken the discriminatory factor into account." Ostrowski at 180. See also Fierros at 192 (If "the plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the McDonnell Douglas framework does not apply. . . . In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'") (Citations and additional quotations omitted).

Defendants' alleged non-retaliatory reason for terminating plaintiff's employment – *i.e.*, that management believed plaintiff had made "an unfounded accusation of discrimination in an effort to extract a richer retirement package" and, therefore, that they were "not bound to retain [plaintiff] as Crystal Rock's human resources manager" [Def.Mem. at 22] – is not supported by the facts or the law. As set forth in Section III.C.2. *supra*, defendants cite no precedent supporting the principle that HR managers are not protected from retaliation for making good faith claims of discrimination to the same extent as other employees. Furthermore, as set forth in Section III.B.2., defendants had no basis in fact or law for drawing the alleged conclusion that plaintiff's claims had been made in bad faith. Finally, as set

47

forth in Section III.B.2.d., the evidence contradicts that defendants actually believed plaintiff's claims were made in bad faith. It is, in fact, apparent that defendants cannot prove that they would have terminated plaintiff even if he had not filed a complaint since Peter Baker told plaintiff they he could continue working for defendants if would withdraw his discrimination complaints.

Defendants cannot, in sum, carry their burden under a *Price Waterhouse* analysis of proving that plaintiff would have been terminated for a legitimate non-discriminatory reason even if he had not filed a complaint.[55] Therefore, defendants are not entitled to summary judgment on plaintiff's retaliation claims.

### D. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR VIOLATION OF ERISA

Defendants also move for summary judgment on plaintiff's ERISA claims. As indicated above, plaintiff has narrowed and clarified his ERISA claims based on information obtained in discovery. He is, therefore, pursuing his claims for breach of fiduciary duty (First Claim), wrongful termination (Fourth

---

[55] Even assuming *arguendo* that plaintiff's retaliation claim is reviewed under a *McDonnell Douglas/burden-shifting analysis*, the evidence is more than sufficient to establish a prima facie case of retaliation, that defendants' proffered non-retaliatory explanation for plaintiff's discharge is pretext and that defendants' true reason for terminating plaintiff's employment was unlawful retaliation. In addition to the above-cited cases, see e.g., Cifra v. General Electric Co., 252 F.3d 205, 217-18 (2d Cir.2001) (judgment reversed on retaliation claim based on evidence that employer discharged employee twenty days after learning that she had hired lawyer to pursue claims of discrimination on the basis of alleged performance problems); Gregory v. Daly, 243 F.3d 687, 701 (2d Cir.2001) (allegation that supervisor responded to plaintiff's complaint of discrimination "with the specific warning that she should 'get on board or quit'" and made "'sneering comments' about her lawsuit" supported inference of retaliatory animus); Sumner at 210-11 (district court erred in dismissing retaliation complaint after trial where plaintiff presented evidence supporting that defendant's stated reason for his discharge – insubordination – was pretextual and based on supervisor's testimony at trial that he thought plaintiff had a "war-like attitude" because he had complained about discriminatory work assignments supporting discriminatory animus); Foster v. Time Warner Entertainment Company, 250 F.3d 1189, 1196 (8th Cir.2001) (jury verdict on retaliation claim upheld where plaintiff rebutted employer's proffered non-retaliatory explanation for her discharge – *i.e.*, that she colluded with disabled employee in presenting false time sheets to employer); Brown v. Louisiana Lottery Corp., 240 F. Supp.2d 590 (M.D.La. 2002) (summary judgment denied on retaliation claim where employer claimed it discharged employee because she made false claims of sexual harassment but failed to conduct any independent investigation of employee's claims whatsoever before terminating her employment).