UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN CLARK,<br><br>            Plaintiff,<br><br>    -against-<br><br>VERMONT PURE HOLDINGS, LTD.,<br>CRYSTAL ROCK SPRING WATER<br>COMPANY, CRYSTAL ROCK LONG<br>TERM DISABILITY PLAN, and<br>CRYSTAL ROCK SEVERANCE<br>PLAN,<br><br>            Defendants. | Civ. No: 3:02CV2278 (MRK)<br><br><br><br><br><br>August 26, 2005 |

## DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants hereby reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

**I.    There Are  No Genuine Issues of Material Fact As To Plaintiff's Discrimination And Retaliation Claims**

Aside from asserting some self-serving and unsupported editorial, the Plaintiff does not dispute the Defendants' Statement of Material Facts in any material respect – as to his ERISA claims or his claims of harassment, discrimination and retaliation. A noticeable exception is the Plaintiff's baseless disagreement with Fact Paragraph 44 to the extent Defendants state the Plaintiff "never felt that Crystal Rock management treated him with hostility because of his Parkinson's" - a disagreement directly contradicted by his own admission that "Plaintiff does not dispute that, when he informed upper management of his diagnosis in November 1999, they were

initially supportive and that upper management never made any negative comments directly to him about his disabling condition."[1]

Significantly, the Plaintiff does not add any new claims of mistreatment to the relatively insignificant, isolated events referred to in the Defendants' Statement of Facts, none of which relate to his Parkinson's and all of which he concedes were related to performance issues. Moreover, the Plaintiff has offered no additional facts that might refute the Defendants' arguments concerning the absence of any legally cognizable "severe or pervasive" conduct.

A.    **Age/Disability Discrimination Claims**

The Plaintiff still has not provided the Court with any evidence of age or disability related animus.  He concedes that no discriminatory remarks were ever made, that he requested and received the Human Resources Manager position, and that he was not terminated until after his attorney sent an accusatory unsupported and bad faith letter to the Defendants.  It is well-settled that a plaintiff must introduce real evidence that could lead to a finding that discrimination occurred, rather than conjecture to defeat summary judgment. The Second Circuit has emphasized that:

> [C]ourts must . . . carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, "[a]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist]."

Bickerstaff v. Vassar College, 196 F. 3d 435, 448 (2d Cir. 1999) (citations omitted).

B.    **Retaliation Claim**

In opposing summary judgment as to his retaliation claim, the Plaintiff again focuses on his claimed belief in the merits of his attorney's letter, rather than on any evidence that his

---

[1] Plaintiff's Local Rule 56(a)(2) Statement, p. 19, ¶ 44.

complaint of alleged discrimination was made in good faith, which is a legal prerequisite to any finding that he engaged in protected activity. As the facts plainly reveal, even if the Plaintiff did in fact subjectively believe in these complaints – which Defendants seriously question – he could not have had an objectively reasonable good faith belief that he was subjected to age or disability discrimination. No complaints ever were made by Plaintiff. He points to no negative comments about his age or his Parkinson's disease. Indeed, following his Parkinson's diagnosis, Defendants were supportive and even awarded him stock options. Those who were involved in the decision to terminate his employment, as well as those who he claims were treating him badly, were of similar age or – in the case of Mr. Monte – significantly older. Monte Deposition, p. 50. Plaintiff's August complaint arose only after he decided that the generous offer of severance was insufficient to allow him to purchase a restaurant in Florida. It plainly was designed to extract enough remuneration from Defendants to fulfill that goal. Such a bad faith complaint cannot constitute protected activity under the law.

## II.    There Are No Genuine Issues Of Material Fact As To Plaintiff's ERISA Claims[2]

In opposition to Defendants' motion for summary judgment on his claims under ERISA, Plaintiff argues that the Defendants: (1) either did not terminate the LTD Plan or breached their fiduciary duties by terminating the Plan without authority; (2) terminated his  employment to prevent him from attaining his right to benefits under the LTD Plan; and (3) refused to provide Plaintiff with Plan documents. (Pl's Opp., p. 49.) Those arguments are entirely meritless.

---

[2] Since Plaintiff has abandoned and is not pursuing the Second, Third and Fifth Claims for relief. Plaintiff's July 1, 2005 Memorandum in Opposition to Defendants' Motion for Summary Judgment (hereinafter Pl.'s Opp., __"), pp.48-49. The remaining ERISA claims, therefore, are the First (breach of fiduciary duty), Fourth (wrongful termination) and Sixth (failure to provide documents) Claims for relief.

A.    **The LTD Plan Was Properly Terminated Effective July 31, 2000**

It is undisputed that Defendants terminated the LTD Policy, effective July 31, 2000.[3] The LTD Policy was the ERISA plan document. As such, the termination of the LTD Policy unquestionably constituted a termination of the LTD Plan.

ERISA requires that "each employee benefit plan be established and maintained pursuant to a written instrument." ERISA § 402(a) (1), 29 U.S.C. § 1102(a) (1). It is axiomatic where, as here, ERISA plan benefits are provided through the purchase of a group insurance policy, the terms "plan," "policy" and "contract" are used interchangeably. See, e.g., Masella v. Blue Cross, 936 F. 2d 98, 107 (2d Cir. 1991) (ERISA plan contracts are construed according to federal common law); Fischman v. Blue Cross, 775 F. Supp. 513, 515 (D. Conn. 1991) ("straightforward language in an ERISA policy must be given its natural meaning") (emphasis added). Courts within the Second Circuit have unanimously found that a group insurance policy is the written instrument required by ERISA; that is, that the plan is the policy. See, e.g., Ablow v. Canada Life Assurance Co., 2003 U.S. Dist. Lexis 24873, * 9 (Dist. CT 2003) (group insurance policy was ERISA-governed plan); Aquilio v. Policeman Benevolent Association, 857 F. Supp. 190, 200 (N.D.N.Y. 1994) (group insurance policy was ERISA plan document); Scalamandre v. Oxford Health Plans, 823 F. Supp. 1050, 1058-60 (E.D.N.Y. 1993) (lack of explicit discretion to "construe the insurance contract" insufficient to trigger deferential review under ERISA).[4]

---

[3] Loftus Aff., F., ¶¶ 54-55.

[4] Similarly, numerous Court of Appeals decisions unanimously demonstrate that an insurance policy is an ERISA plan document. See Wickman v. Northwestern National Life Ins. Co., 908 F. 2d 1077, 1082-85 (1st Cir. 1990) (construing the terms of an insurance policy as the terms of an ERISA plan); Gable v. Sweetheart Cup Co., 35 F. 3d 851, 856 (4th Cir. 1994)(policy was the written instrument of ERISA plan); Musto v. American General Corp., 861 F. 2d 897 (6th Cir. 1988)(same); Ruiz v. Continental Casualty Company, 400 F. 3d 986, 990-91 (7th Cir. 2005)(rejecting argument that an insurance policy sold to an ERISA plan was not itself the plan and holding that the policy was the ERISA plan document); Shaw v. Conn. Gen. Life Ins., 353 F. 3d 1276, 1282-83 (11th Cir. 2003)(upholding district court's determination that the underlying insurance policy was the only ERISA plan document).

4

**B.      The LTD Plan Was Terminated In Accordance With Its Express Terms**

Where, as here, the terms of the LTD Policy unambiguously reserved to Defendants the power to terminate it,[5] the termination of the Policy without the purchase of a successor policy[6] resulted in the termination of the LTD Plan. The LTD Policy specifically provides that "[t]he policyholder [Crystal Rock] may cancel the entire contract or may cancel certain participating employers and their employees at any time.  In either case, <u>the policyholder must send us written notice and include the date the insurance will end.</u>"[7]  Similarly, the LTD Booklet provided that coverage under the LTD Policy (and therefore under the LTD Plan) automatically terminates on the date the Policy terminates.[8]

It is undisputed that, by letter dated June 28, 2000, Defendants notified Paul Revere that the LTD Policy was being terminated effective July 31, 2000.  This complied in all respects with the above termination requirements.

Plaintiff argues that when the Defendants cancelled the LTD Policy in July 2000, they did not terminate the LTD Plan, but rather became self-insured for long-term disability benefits.[9] A similar argument was addressed and summarily dismissed by the court in <u>Center v. First International Life Ins. Co.</u>, 1997 U.S. Dist. LEXIS 3480 (Dist. MA 1997).  As in this case, the group policy in <u>Center</u> contained an unambiguous statement enabling the employer to reduce or terminate policy benefits.  Like Plaintiff, the <u>Center</u> plaintiff argued that the plan and the policy were separate and distinct.  The court in <u>Center</u> upheld the defendants' right to terminate the plan benefit on the basis of the reservation of rights contained in the policy, holding that where (as

---

[5] Loftus Aff., ¶¶ 4-10.
[6] This situation is thus readily distinguishable from the 1991 replacement of the group insurance policy issued by Mutual Benefit Life (which was effective from the inception of the LTD Plan in 1985 until succeeded by the Policy).
[7] Loftus Aff., ¶ 5; Policy, Tab A, section 7 (emphasis added).
[8] Loftus Aff. ¶ 7, 8, 10; Benefit Summary, Tab C, General Provisions, p. 11.
[9] Pl.'s Opp., p. 52.

here), the policy is the plan, "the employer's right to modify or terminate the policy is also the right to modify or terminate the plan." Id.[10]    The same result is mandated here.

C.    **The 1985 Announcement Was An Informal, Irrelevant Communication**

Plaintiff argues that the 1985 "On the Rocks" announcement of the LTD Plan is the ERISA plan document for ERISA purposes,[11] and that the announcement promises vested benefits to the Plaintiff under the LTD Plan. Because the announcement is neither a plan document nor a summary plan description, this argument fails as a matter of law. See, e.g., Moore v. Metropolitan Life Ins. Co., 856 F. 2d 488, 492 (2d Cir. 1988).

An ERISA plan exists where, if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151-52 (2d Cir. 1994) (quoting Donovan v. Dillingham, 688 F. 2d 1367, 1373 (11th Cir. 1982)). As stated by the Supreme Court, "[r]ules governing collection of premiums, definition of benefits, submission of claims and resolution of disagreements over entitlement to services are all the sorts of provisions that constitute a plan." Pegram v. Herdrich, 530 U.S. 211, 223 (2000). The 1985 announcement contains none of these elements. Accordingly, under controlling Second Circuit precedent the announcement cannot be the governing plan document. Grimo, supra, 34 F. 3d at 151; Klecher v. Metropolitan Life Ins. Co., 2003 U.S. Dist. LEXIS 9572, **23-24 (S.D.N.Y. 2003) (where a reasonable person could not have ascertained from a booklet

---

[10] Others courts have addressed and rejected similar arguments. See Musto, supra, 861 F. 2d 897 at 901-902 (the employer had the right to amend the plan where the modification clause at issue stated that "[t]his policy may be amended or changed at any time"(emphasis added)); Gable, supra, 35 F. 3d at 857 ("In light of the fact that the master policy unambiguously reserved the company's right to modify or terminate the plan, we have no need to consider plaintiff's extrinsic evidence in determining the extent of the company's rights and obligations under that plan."); see also Dague v. Gencorp, 875 F. Supp. 424, 430 (N.D. OH 1993)(granting defendant employer summary judgment where the policy contained a clear reservation of the employer's right to modify or terminate the plan).
[11] "In fact, contrary to defendants' argument, Crystal Rock's LTD Plan consists of the 1985 announcement describing the terms of the Plan to Crystal Rock employees." Pl.'s Opp. p. 55

the "procedures for receiving benefits," the booklet did not meet ERISA's definition of a plan and therefore could not be the governing plan document).

### D.    The 1985 Announcement Is Not A Summary Plan Description

Nor can the 1985 announcement be considered a summary plan description, or SPD. Section 102(b) of ERISA, 29 USC § 1022(b), enumerates twelve categories of information that must be included in an SPD, including the (i) the name and type of administration of the plan; (ii) the name and address of the administrator and agent for service of legal process; (iii) the plan's eligibility requirements; (iv) circumstances which can result in the denial or loss of benefits under the plan; and (v) the plan's procedures for presenting, disputing and appealing benefit claims. None of these items are found in the 1985 announcement.

Documents that do not rise to the level of specificity required for an SPD are informal communications that, absent an ambiguity in the SPD or full plan texts, are irrelevant in determining the parties' rights and obligations under an ERISA plan. Moore v. Metropolitan Life Ins. Co., 856 F. 2d 488, 492-93 (2d Cir. 1988). The 1985 announcement is similar to several informal communications that have been held not to be plan documents. See Moore, 856 F. 2d at 493 (filmstrips held not to be a plan document or an SPD because it they "did not purport to be a complete binding statement of plan terms);" see also Rubio v. Chock Full Of Nuts Corp., 245 F. 2d 413 (S.D.N.Y. 2003)(internal memo that did not indicate an express intention to an SPD and references another document rather than detailing the benefits provided was held not an SPD).

The supporting authority cited by Plaintiff is readily distinguishable. For example, in Feifer v. Prudential Ins., 306 F. 2d 1202 (2d Cir.), "the Court determined that the summary plan

at issue met the definition of a "summary plan description" under the ERISA statute." Klecher, 2003 U.S. Dist. LEXIS, *19 (distinguishing Feifer on this basis.)

### E.     The Plan Termination Cannot Support A Breach of Fiduciary Duty Claim

As a fallback from his "plan vs. policy" argument, Plaintiff next argues that "accepting arguendo that defendants terminated the Crystal Rock LTD Plan when the company mistakenly canceled the Unum/Paul Revere LTD policy, the termination was accidental and, thus, certainly not authorized under the Plan." Pl.'s Opp., p. 57.

Plaintiff acknowledges, however, that "where a company amends or terminates a welfare benefit plan, the only cognizable claim [for breach of fiduciary duty under ERISA] is that the company did not do so in a permissible manner." Pl.'s Opp., p. 58. As demonstrated above, the LTD Plan was the LTD Policy, and as such was properly was terminated in accordance with its express terms. Plaintiff's claim for breach of fiduciary duty, therefore, fails as a matter of law and summary judgment is mandated on the First Claim. Byrnes v. Empire Blue Cross and Blue Shield, 2000 U.S. Dist. LEXIS 15139 (S.D.N.Y. 2000) (granting summary judgment to employer on breach of fiduciary duty claim where, as here, employer reserved right to amend and did so in accordance with plan documents).

The sole case cited in support thereof[12] is readily distinguishable. In Biggers, the Court held that a draft plan amendment that was never adopted was not effective because it did not evidence a clear manifestation of intent to amend the plan. Id., at 296. Here, notwithstanding any misunderstanding regarding the scope of the policy, it remains undisputed that Defendants drafted, signed and delivered to the insurer a writing notifying them that Defendants were "terminating the long term disability policy that is currently in place with your company

---

[12] Biggers v. Wittek, 4 F. 3d 291 (4th Cir. 1993).

effective July 31, 2000."[13] This communication undeniably constituted a "clear manifestation of an intent to alter the policy." Id.

F.    **Summary Judgment Would Still Mandated Even If The LTD Plan Had Not Been Terminated, And Was Self-Insured As Asserted By Plaintiff**

It is undisputed that Plaintiff was not disabled at any time during his employment, sought full time employment immediately thereafter, and currently works full time at his restaurant.[14] It is undisputed that the inability to work is a condition precedent to any claim for disability benefits.[15] Summary judgment is therefore appropriate and the First Claim should be dismissed accordingly.

G.    **The Undisputed Facts Belie Any Wrongful Discharge Claim Under ERISA**

Plaintiff's Fourth Claim seeks relief for wrongful discharge under Section 510 of ERISA. An essential element of this claim, however, is Defendants' specific intent to deprive or interfere with Plaintiff's entitlement to benefits. Lawrence v. Aetna Life, 1998 U.S. Dist. LEXIS 15979 (D. Conn. 1998). It remains undisputed that the LTD Plan was terminated in July, 2000, long before the termination of Plaintiff's employment. Accordingly, at the time of his discharge, there was no LTD Plan that might support any alleged intent to deprive, and any Section 510 claim based upon an alleged intent to deprive Plaintiff of non-existent LTD benefits necessarily fails. Id., at *8 (dismissing Section 510 claim on the basis that "Plaintiff cannot demonstrate that Aetna had the specific intent to deprive her of benefits under the LTD plan because based on the LTD policy language and the extrinsic evidence produced at trial, plaintiff was not eligible for such benefits.")

---

[13] Loftus Aff.; June 28, 2000 Letter from Michael W. Dunn, Tab 3, Exhibit D.
[14] Clark Dep., F., ¶ 49.
[15] Loftus Aff., F. ¶ 48.

Accordingly, the sought-after "reinstatement in the LTD Plan,[16]" is not equitable relief."

To the contrary, this attempt to resuscitate the terminated LTD Plan is "not equitable in either

form or substance[17]" and is therefore unavailable under ERISA.[18]

## Conclusion

For all of the forgoing reasons and those discussed in Defendants' Memorandum

in Support of Motion for Summary Judgment, summary judgment is fully warranted as to all of

Plaintiff's claims in this action.

---

[16] Defendants' Mem. pp. 30-32.

[17] Coan v. Kaufman, 333 F. Supp. 2d 14, 26 (D. Conn. 2004), reaffirmed on reconsideration, 2004 U.S. Dist. LEXIS 24806 (D. Conn. 2004),

[18] Furthermore, contrary to Clark's suggestion at footnote 76 of his memorandum, the Eastern District of New York did not conclude in DePace v. Matsushita Elec. Corp. of America, 257 F. Supp. 2d 543 (E.D.N.Y. 2003), that the 10th Circuit's decision in Milsap v. McDonnell Douglas Corp., 368 F.3d 1246 (10th Cir. 2004), erroneously held that back-pay is not available as an equitable remedy available under § 510 of ERISA. The decision Clark cites for the proposition that back-pay is an equitable remedy is based largely upon the principle that restitution is appropriate to "restore the plaintiff to the position he formerly occupied 'either by the return of something which he formerly had or by the receipt of its equivalent in money.'" Russell v. Northrop Grumman Corp., 921 F. Supp. 143, 152 (E.D.N.Y. 1996) (internal citation omitted). However, the Second Circuit recently interpreted the Supreme Court's decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), to hold that, with the single exception for an accounting of profits, "a defendant must possess the funds at issue for the remedy of equitable restitution to lie against him. [internal citations omitted] . . . restitution is measured by a defendant's 'unjust gain, rather than [by a plaintiff's] loss.' [internal citations omitted]." Pereira v. Farace, 413 F.3d 330, 340 (2d Cir. 2005).

Respectfully submitted,

DEFENDANTS, VERMONT PURE HOLDINGS,
LTD., CRYSTAL ROCK SPRING WATER
COMPANY, CRYSTAL ROCK LONG TERM
DISABILITY PLAN, and CRYSTAL ROCK
SEVERANCE PLAN

By: _____

A. Robert Fischer (ct 01295)
Robert R. Perry (CT 22698)
JACKSON LEWIS LLP
177 Broad Street
Stamford, CT 06904-0251
Telephone: (203) 961-0404
Facsimile: (203) 324-4707
Email: fischera@jacksonlewis.com
Perryr@JacksonLewis.com

By: _____

Kenneth W. Gage (ct 12965)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email: kennethgage@paulhastings.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, this 26th day of August, 2005, postage prepaid, to: Kathryn Emmett, Esq., Emmett & Glander, 500 Summer Street, Suite 300, Stamford, CT 06901.

_____
A. Robert Fischer

11